☐ **ORIGINAL**

(Del. Rev. 12/98)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

FEB -1  PM 4:33

ALVIA   LACY
_____

_____
(Name of Plaintiff or Plaintiffs)

v.

NATIONAL RAILROAD PASSENGER
CORPORATION
_____
(Name of Defendant or Defendants)

CIVIL ACTION No. _____

0 6 -  6 8

## *COMPLAINT UNDER TITLE VII*

## *OF THE CIVIL RIGHTS ACT OF 1964*

1.    This action is brought pursuant to *Title VII of the Civil Rights Act of 1964*, as amended, for **employment discrimination**. Jurisdiction exists by virtue of 42 U.S.C. §2000e-5. Equitable and other relief are also sought under 42 U.S.C. §2000e-5(g).

2.    Plaintiff resides at   1306  JERVIS  SQ.
                                        (Street Address)
BELCAMP   HARFORD   MARYLAND      21017
(City)          (County)          (State)          (Zip Code)
(410) 272-4819
(Area Code) (Phone Number)

3.    Defendant resides at, or its business is located at   60 Massachusetts Avenue N.E.
                                                                        (Street Address)
WASHINGTON   DC      20002
(City)          (County)          (State)          (Zip Code)

4.    The discriminatory conduct occurred in connection with plaintiff's employment at, or application to be employed at, defendant's   NATIONAL RAILROAD PASSENGER CORPORATION   place of bussiness
                                                    (Defendant's Name)
located at   60 MASSACHUSETTS AVENUE, N.E. WASHINGTON, DC and 258 E. Scottland
                    (Street Address)
Drive, Bear DE
          (City)          (County)          (State)          (Zip Code)

5.    The alleged discriminatory acts occurred on _____1_____ , ____10____ , ___2003___ .
                                                   (Day)        (Month)        (Year)

6.    The alleged discriminatory practice  ⦿ is   ⦿ is not  continuing.

7.    Plaintiff filed charges with the Department of Labor of the State of Delaware,
DELAWARE DEPARTMENT OF LABOR
_____
 (Agency)          (Street Address)        (City)

_____ , regarding
 (County)           (State)              (Zip Code)
defendant's alleged discriminatory conduct on __ ___20___ , ___10___ , ___2004___ .
                                                  (Day)        (Month)        (Year)

8.    Plaintiff filed charges with the Equal Employment opportunity Commission of the United States
regarding defendant's alleged discriminatory conduct on: _____2_____ , ____11____ , ___2005___ .
                                                           (Day)          (Month)        (Year)

9.    The Equal Employment Opportunity Commission issued the attached Notice-of-Right-to-Sue letter
which was received by plaintiff on: _____2_____ , ____11____ , ___2005___ .
                                     (Day)          (Month)        (Year)

## *(NOTE:   ATTACH NOTICE-OF-RIGHT-TO-SUE LETTER TO THIS COMPLAINT.)*

10.    The alleged discriminatory acts, in this suit, concern:

A.    ⦿  Failure to employ plaintiff.

B.    ⦿  Termination of plaintiff's employment.

C.    ●  Failure to promote plaintiff.

D.    ●  Other acts (please specify below)

1. Plaintiff was terminated from the foreman training program.

2. Plaintiff did not receive the court ordered job relief in the

class action suite of McLaurn v. Amtrak .

3. Plaintiff has been forced to work in a hostile work environment,

in addition to being the subject of ongoing retaliation, harassment,

and discriminatory conduct.

11.    Defendant's conduct is discriminatory with respect to the following:

    A.    ● Plaintiff's race

    B.    ● Plaintiff's color

    C.    ● Plaintiff's sex

    D.    ○ Plaintiff's religion

    E.    ○ Plaintiff's national origin

12.    A copy of the charges filed with the Equal Employment Opportunity Commission is attached to this complaint and is submitted as a brief statement of the facts of plaintiff's claim.

13.    If relief is not granted, plaintiffs will be irreparably denied rights secured by Title VII of the 1964 CivilRights Act, as amended.

14.    Plaintiff's has no adequate remedy at law to redress the wrongs described above.

### THEREFORE, Plaintiff prays as follows: (Check appropriate letter(s))

    A.    ● That all fees, cost or security attendant to this litigation be hereby waived.

    B.    ● That the Court appoint legal counsel.

    C.    ● That the Court grant such relief as may be appropriate, including injunctive orders, damages, cost and attorney's fees.

**I declare under penalty of perjury that the foregoing is true and correct.**

Dated:  February 1, 2006

_(Signature of Plaintiff)_

_(Signature of additional Plaintiff)_

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELWARE

Alvia Lacy                          :
1306 Jervis Square
Belcamp, Maryland 21017             :
        Plaintiff

                                    :

            vs.                     :          Civil Action No:

                                    :

National Railroad Passenger         :
  Corporation (Amtrak)
60 Massachusetts Avenue, N.E.       :
Washington, DC  20002
        Defendant                   :

COMPLAINT UNDER TITLE VII OF THE CIVIL
RIGHTS ACT OF 1964

1) I have been subjected to discriminatory actions because of my
   race (black) and sex (female), in addition I was also retailated
   against because I filed charges against the defendant with the
   EEOC Previously.

2) I applied for several management positions and was not
   considered for any of them.  My education, background and;
   experience were more than enough to qualify me for each
   position.

3) I was also a plaintiff in the class action suit of
   McLaurn v. National Railroad Passenger Corporation,
   Civil Action No. 1:98CV2019 (EGS),  and did not
   receive the court ordered relief.

4) I have also been exposed to a hostile work environment,
   and harassment.

EEOC Form 161 (10/96)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: Ms. Alvia L. Lacy
1306 Servis Square
Belcamp, MD 21017

From: Equal Employment Opportunity Commission
Philadelphia District Office
The Bourse
21 S. Fifth Street, Suite 400
Philadelphia, PA 19106-2515

[  ] *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 120-2004-04805 | Legal Unit | (215) 440-2828 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[  ]  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[  ]  Your allegations did not involve a disability that is covered by the Americans with Disabilities Act.

[  ]  The Respondent employs less than the required number of employees or is not otherwise covered by the statues.

[  ]  We cannot investigate your charge because it was not filed within the time limit required by law.

[  ]  Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[  ]  While reasonable efforts were made to locate you, we were not able to do so.

[  ]  You had 30 days to accept a reasonable settlement offer that afford full relief for the harm you alleged.

[ X ]  The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

[  ]  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[  ]  Other *(briefly state)* _____

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you.  You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS** from your receipt of this Notice; otherwise, your right to sue based on this charge will be lost.  (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Marie M. Tomasso, District Director

*(Date Mailed)*

Enclosure(s)

cc:  Amtrak
     Andrew McCallum, EEO Manager (For Respondent)

SECTION  A


CHARGE  INFORMATION  QUESTIONNAIRE

SUBMITTED  TO  EEOC

# CHARGE INFORMATION QUESTIONNAIRE

Please immediately complete the entire form, including any attached questionnaires, and return the entire document to the U.S. Equal Employment Opportunity Commission ("EEOC"). Answer all questions as completely as possible. REMEMBER, a charge of employment discrimination must be filed within the time limits imposed by law, generally within 300 days of the alleged discrimination.

## PERSONAL BACKGROUND INFORMATION:

Name: Mr./Ms. __MS ALVIA LYNN LACY__

Address: __1306  JERVIS SQ.__

__BELCAMP, MD  21017__    Email Address: __N/A__

Phone Number: (day) __(302)834-2759__ (night) __(410) 272-4819__

Date of Birth: __11-27-56__ Soc. Sec. #: __-0127__ Race: __BLACK__

## RESPONDENT INFORMATION (Employer, union, employment agency against whom the charge is being filed)

Respondent Name __AMTRAK-NATIONAL RAILROAD PASSENGER CORPORATION__

Address (If employer, the location where you actually worked or sought employment - If you worked out of your home, state that, and give the full address of the company home office or headquarters; if union or employment agency, the address where you conducted business)

__60 MASSACHUSETTS   AVENUE,  NE   WASHINGTON, DC  20002__

City/State/Zip Code __WASHINGTON, DC__ /County _____

Approximate total number of employees __OVER 2000__

Type of business __NATIONAL RAILROAD PASSENGER SERVICE__

DATE OF HARM (last date any harm which you consider discriminatory happened): _____ (Must be completed.)
__ON GOING AND CONSTANT   10/04__

TYPE OF HARM (the kind of discrimination that happened to you, for example, discharge, denial of hire, harassment):

__DENIAL OF HIRE (PROMOTION), HARASSMENT, HOSTILE WORK ENVIRONMENT, AND NON SETTLEMENT OF CLAI RETALIATION IN ADDITION.__
BASIS Check the basis for your complaint (the reason you believe the action was taken against you).
(X)race          (X)color          ( )religion          (X)sex
( )national origin          ( )age          ( )disability          (x)retaliation

Identify yourself in terms of the basis or bases you checked, for example, "I am black" or "I am a disabled person."

__I AM A BLACK FEMALE__

If you checked "retaliation," have you ever previously filed a charge with EEOC or another civil rights agency or complained to your employer about discrimination? (X)yes ( )no

If yes, please explain: __I have filed at least three charges with EEOC, for discrimination__

__and retaliation practices against me.__

If none of the above bases applies, describe the reason you believe the action was taken against you:

__N/A__

10/02

## CHARGE INFORMATION QUESTIONNAIRE (p. 2)

**Please indicate whether you have signed a waiver (release) in connection with your employment situation:** (  ) Yes    ( X) No.

As the result of signing a waiver, have you received any consideration in addition to what you would have been entitled without signing the waiver? (  ) Yes   (  ) No.  If so, please specify what additional benefit you received:

_____ N/A _____

_____

**If you have signed a waiver and have a copy of it, please attach to this document.**

_____    _____
Signature                                           Date

**CONTACT PERSON:** Please provide the name of an individual at a different address who is in the local area and who would know how to reach you.

Name   Oneida Christy                        Relationship   Friend

Address   603  Edmund  Street

City   Aberdeen                    State   MD     Zip Code   21001

Area Code/Telephone Number   (410) 272-5442

## ADDITIONAL INFORMATION

1.   Choose one of the following:
     a) (  ) I want to file a charge.
     b) (  ) I DO NOT WANT to file a charge at this time.
     c) (X) I want to speak with an EEOC Representative before this is filed as a charge.

I can be contacted at (area code/telephone number)   My home telephone number is (410) 272-4819
The best days and times to contact me are   Sunday - Saturday anytime   Monday Friday 4 pm until 12 am

2.   Indicate which of the following applies:
     a)     (X) I have not filed a charge with any other agency concerning these same matters.
     b)     (X) I have filed a charge with the agency/agencies named below concerning these same matters:
            Name of Agency   In referencet to my charge of non settlement please see enclosed
            Date Filed   Information,
            Agency docket number
     c)     (  ) I am scheduled for an interview with the agency named below:
            Name of Agency
            Date of Scheduled Interview:
            Location of Interview
            Name of Interviewer
     d)     (  ) I have received a Questionnaire to be completed from the agency named below:
            Name of Agency
     e)     (  ) I mailed the Questionnaire back to the agency named above on or about:
            _____

Name: **ALVIA LYNN LACY**          Date: **10/20/04**

# SELECTION QUESTIONNAIRE
## (HIRING, PROMOTION, TRANSFER, ETC.)

1. Name of position you applied for: The positions are listed on the
   flowing page.

2. How did you learn of the vacancy? Position are listed on the internet,
   check the postings each week.

3. What were the requirements for the position? The requirements are listed c
   on the posting, and the "MUST HAVE" listings should be
   obtained by the applicant. I apply for the positions Iam
   qualified for.

4. How do you know what the requirements were? The requirements are listed

5. Describe how you met all of the known requirements:
   In each case I make sure I meat the "Must Have" requirements,
   I was told by human resources to always meet the Must Have
   listings

9/02

## SELECTION QUESTIONNAIRE (p. 2)

5.    When did you apply for the position?    <u>The dates are on the application.</u>
         <u>In addition, to the signature line.</u>

7.   Did you apply in writing or orally?   <u>Always, in writing, or fax.</u>

8.   What were the name and the title of the person to whom you addressed your application or, if done orally, to whom you indicated that you had an interest in the position in question?

     <u>Application is always   made to the Human Resources Department,</u>

     <u>located in Washington, DC, or Philadelphia, PA.</u>

9.   Were you interviewed for the position? If yes, how many times? For each time you were interviewed, identify by name and title the person(s) who interviewed you.

     <u>Within the last year I was interviewed on two occasions, one</u>

     <u>was with Mr. Taylor Cannon, and another with Ms. Sara Ray.</u>

     <u>Mr. Cannon and Ms. Ray are with Amtrak's Human Resources Dept.</u>

10.   Were you given any type of written or oral test? If yes, describe the type of test and the results, if known:

     <u>No test was given.</u>

11.   How and when were you notified that you were not selected for the position?

     <u>I did not receive any notification of being selected for</u>

     <u>either position.    Other positions are followed by a letter</u>

     <u>of denial.   (Review denial letters)</u>

12.   What reason(s) was/were given for not selecting you?

     <u>Someone who meet the needs, was selected.    (review denial letters)</u>

## SELECTION QUESTIONNAIRE (p. 3)

_____

_____

_____

13. What are the name and the title of the person who notified you that you had not been selected?

    The letter of denial always comes from the Human Resources

    department, the signature of the notification varies from

    letter to letter. (Review denial letters)

14. Was the person identified in #13 above the person who made the selection? _____. If not, identify (if known) the name and the title of the person who made the selection.

    This information I do not know.

_____

_____

_____

15. If you know, name the person who got the position you applied for.

    N/A

16. What are that person's sex _____, race _____, national origin _____, approximate age ____
    _____.

17. Did that person meet the stated requirements for the position?

    I do not know

8. If he/she did not meet the requirements, in what way did he/she not meet them?

    I can't answer this question.

_____

_____

_____

_____

_____

## SELECTION QUESTIONNAIRE (p. 4)

19.  Why do you believe that you should have been selected instead of the person who was selected?

I find it hard to believe I did not and have not meet the

requirements of any of the listed positions, or any positions

to which I applied for in the past 21, years,  In

addition if I was listed as a claimant in the job relief

process, why wasn't I promoted ?

20.  Why do you believe that you were not selected because of your race, sex, color, religion, national origin, age, disability or in retaliation for having opposed a practice made unlawful by one of the statutes administered by EEOC?

I believe I was not selected because of my race, sex, color,

and in retaliation for having opposed a practice and wrong

doings which are considered unlawful by one of the statues

administered by the EEOC.

declare under penalty of perjury that I have read the above statements and that they are true and correct.

10/20/04

ignature                                    Date

**120200404805N**     ALVIA LYNN   LACY
1306 JERVIS SQ.
BELCAMP, MD   21017
(410) 272-4819

I am a black female, I have been employed by Amtrak for 21 years.

I received my Bachelors Degree in Business, from the University

of Maryland in 1986.  From the time I was hired by Amtrak I have

applied for management positions on a regular basis.  The

outcome would always be the same, denial, denial and more

denials.  In  1998 I was excepted in the foreman training

program.  I was harassed on a regular basis each night I

reported to work.  At the time I was in the foreman training

program I had a charge of   discrimination filed in court.

After completing my 66th day in the program, I received a

release draft from Amtrak's Claims department. They were

requesting  I sign the release.  Following the advise of  a

attorney I decided not to sign the release.  When I reported to

work that evening I was expelled from the foreman training

program, and ordered back to the floor to work.  The events

truly left me distressed and anguished.  When I realized what

had been done to me, I filed a charge of retaliation against

Amtrak.  In September of 1999, I spoke to Mr. Warren Kapplen

he was with The Washington Lawyers Committee for Civil Rights

and Urban Affairs, located in Washington, DC.  He suggested I

become a participant in the McLaurin Class action suite against

Amtrak.  I received the information packet and completed the

requested information. Portions of the claim forms for settlement

are inclosed, from my submitted package.

**120200404805N    ALVIA LYNN LACY**

In December of 1999, I received a call from Ms Maia Caplan, she stated she was with the Law Firm of Sprenger & Lang, and she was handeling the Amtrak class action suite. Ms. Caplan went on to state I was awarded 300 points on my claim form information package. She asked me did I want my points in monetary award? I stated yes, she then went on to say the point value per dollar was not established at that time, however the judge would determine the value and the awards would be processed and distributed to all plaintiffs including myself. As time passed I heard nothing. For months I did not receive any form of communications from the Sprenger & Lang Law Office. In the early summer of 2001 I contacted the law office in an effort to determine the status of my claim. I was told by the receptionist "Ms Maia Caplan is no longer with the firm, and I should speak to Mr. Michael Lieder in reference to my claim. When I spoke to Mr. Lieder he stated I was not going to receive any monetary award. I asked Mr. Lieder why ? He said I was to receive job relief and he would ask the judge to award a monetary sum in December of 2001 for me. I believed him and did not question him. As time passed I heard nothing, I contacted Mr. Lieder again, he stated I was to contact Ms. Laura Thompson, she was handeling the Amtrak job relief claims. I contacted Ms. Thompson, she requested I send her my resume, and some copies of past positions to which I had applied. I forwarded the requested information to her office and waited.

**120200404805N    ALVIA LYNN LACY**

During this time I continued to apply for management positions on my own, I felt if Ms. Thompson was seeking job relief on my behalf, me applying for the open positions could only be a plus. Time passed and I heard nothing from Ms. Thompson, or Mr. Lieder. In January 2004 I contacted Mr. Kapplen in reference to my claim and the concerns of its status. A few days latter I received a call from Mr. Kapplen, stating Mr. Lieder was expecting my call and he would be able to help me. I contacted Mr. Lieder, and he told me to call Ms. Thompson. To make a long story short, after three months of countless telephone calls to both Ms. Thompson, and Mr. Lieder, Ms. Thompson told me the Decent Decree expired in December 2003, and I was not intiled to anything. I was so upset every time I thought about the process I cried, to this date it is still painful , because co-workers often ask me the status of my claim, and I feel so many people did not do their established responsibility. In addition, Mr. Lieder stated " all the job relief claimants were promoted with the exception of me". I was so upset I started crying, and asked why "no one said ok the only job relief participant remaining is Alvia Lacy"? His respond was silence. At that point I called Mr. Kapplen, he stated to me he reviewed the information I forwarded to him. He said Amtrak was wrong in requesting a dismissal of my retaliation charge, because the class action case did not cover any charges of retaliation. He Kapplen also stated he was

3

120200404805N

**ALVIA LYNN LACY**

disappointed in the outcome of my claim.

I have enclosed the letter which list me as a job relief claimant, and the first 2 pages of the request for dismissal submitted by Amtrak.

This information is submitted to the EEOC for investigation of my claim of Non Settlement in the McLaurin v. Amtrak class action suite.

4

Name: __ALVIA LYNN  LACY_____ Date: ___10/20/04_____

# HARASSMENT (SEXUAL, RACIAL, ETC.) QUESTIONNAIRE

Provide <u>specific</u> examples of all alleged verbal and or physical harassment. Be as exact as you can be in describing each act of harassment (e.g., the exact words that were said and/or the exact nature of any physical harassment). If more space is needed for any response, please use additional pages.

1.    For each act of alleged harassment, indicate the following:

    a)    Detailed description of the harassment, including dates:

The following incidents have occurred to me in the past year.

I was issued a letter in reference to my attendance, I stated on

one letter I had a Doctor's note, and the date should be an

excused absents. I was told there was no excused absents to be

issued.  I asked the supervisor how can this be when there is a

list of timekeeping codes, for such occurrences. I have been

issued  3  letters in the past year with the same status, each

time I challenge the letters, nothing changes.  My main concern

is when Human Resources inquires in reference to my work record
this incorrect information will be issued. (Cont. on page 5 # 3)

    b)    Name and title of person(s) doing the harassment and the working relationship of each person to you (e.g., immediate supervisor, co-worker):

Supervisors at the Bear, DE facility.

Review enclosed information.

9:02

## HARASSMENT QUESTIONNAIRE (p. 2)

2.  **If you were subjected to unwanted harassment, was your employment status in any way threatened if you did not go along with the harassment? For example, did the harasser tell you that you would be discharged, would receive a lower evaluation, would not receive a pay raise or promotion? If your answer is yes, provide specifics about what was told to you.**

On one occasion I requested Mr. Gill to assign a pipe-fitter to

work with me.  I waited one hour, and no one was assigned.  I

approached MR. Gill a second time, asking has he assigned

someone ?  His reply   was "shit what  you want me to do

your job, and you go home?" He then added I should have you

fired.  This took place in July 2004.

3.  **Did you inform the person doing the harassment that you objected to what was said or being done? If yes, what did you say? What was the response, if any?**

On countless occasions I have objected to what was said or

being done, and the response is always the same,"if you dont

like it quit. "

4.  **Does the employer have a (sexual) harassment policy that you are aware of? Is there a provision for reporting sexual or other harassment? If so, did you use that procedure? If you have a copy of this policy, please attach it to this document.**

Yes The company has a policy.  however I do not know what or

how it is stated.

## HARASSMENT QUESTIONNAIRE (p. 3)

5.   Did you report the harassment to any employer official or representative? (X)yes ( )no
     If yes, indicate the following:

   **a)**   Name of person  Mr. Walters,   and Mr. McDowell  and on
            occasions Mr. Gill, and My Union Rep. Mr. Carlton.

   **b)**   Job title   Mr. Walters, and Mr. McDowell are managers
            in addition Mr. Gill is a manager.

   **c)**   Which act or acts of harassment did you report?

            The incidents of the note left on my work station, a

            and the note left on my locker.  I also reported the

            incident of the co-worker telling me to F.O.A.D,.

            (Review listed information)

   **d)**   When did you report this harassment?

            The harassment was reported when it occurred.

   **e)**   Did you report this harassment orally or in writing?

            In each case  it was reported orally, and on one

            incident I called to report my concerns.  (Review listed

            information.

   **f)**   If in writing, do you have a copy of the complaint?  If so, please attach.

            N/A

   **g)**   What happened as a result of your complaint?  If you received a written
            response, please attach a copy.

            Review submitted information

## HARASSMENT QUESTIONNAIRE (p. 4)

6.  Other than as described in #4 above, did you tell any co-workers about any act or acts of harassment? If yes, provide the following information:

    a)  Name/address/phone number of co-worker(s)

        LaDoris Wiggs   (302) 425-4457

    _____

    _____

    b)  Indicate which act or acts of harassment you mentioned and the date you mentioned the acts.

        LaDoris Wiggs knows aboutn all the acts of harassment.

    _____

    _____

    c)  When did you tell the person or persons?

        I would not say anything for fear of retaliation,

        from the person, as you know there was an employee

        in the Willmington facility who went on a shooting

        spree, a few years ago.

7.  To the best of your knowledge, have any other current or former employees been subjected to similar harassment? If yes, provide the following for each such employee, adding extra pages if needed?

    a)  Name   N/A

    b)  Job title

    c)  Address/phone number

    _____

    _____

    _____

## HARASSMENT QUESTIONNAIRE (p. 5)

d)    Description of harassment received

Review listed information.

_____

_____

_____

_____

_____

_____

_____

e)    Name and job title of each person doing the harassment

Review Information

_____

_____

_____

f)    Approximate date(s) of harassment

On going and current

_____

g)    How are you aware that this other harassment occurred?

The only way is when you are questioned, or if you

are there when it takes place.

_____

_____

_____

## HARASSMENT QUESTIONNAIRE (p. 6)

7. If you were not directly harassed but were affected by the offensive conduct of a harasser toward another person, provide the name, postion or other identification of the person harassed and the harasser.

Review submitted information

8.   Were there any other witnesses to harassment? If so, provide the name and job title of each such witness, along with his/her telephone number and address if you know them, and indicate which incident(s) the individual witnessed.

Review submitted information

I declare under penalty of perjury that I have read the above statements and that they are true and correct.

10/20/04

**Signature**                                            **Date**

9/02

**Name:** ALVIA LACY                                                    **Date:** 10/20/04

NON SETTLEMENT OF CLASS ACTION CLAIM

# WITNESS QUESTIONNAIRE

Identify all witnesses who you believe have information which would support your allegations. For each witness identified, provide his/her name, address (if known), phone number (if known) or other means to contact the witness. In addition, indicate what type(s) of information you believe the witness can provide.

## WITNESS

**Name and Job Title:** Mr. Warren Kapplen Washington Lawyers' Committee for Civil

**Home Address:** Rights and Urban Affairs (202) 319-1000

**(if known)**

Mr. Michael Lieder Sprenger & Lang (202) 265-8010

Ms. Laura Thompson (612) 486-1820 Sprenger & Lang Law Firm

**Home Telephone:** (        )

This witness can provide the following information in support of my charge:

Mr. Kapplen, Mr. Lieder, and Ms. Thompson have complete knowledge

in reference to my claim in the McLaurin class action suite.

---

## WITNESS

HARASSMENT AND HOSTILE WORK ENVIRONMENT

**Name and Job Title:** LaDoris. Wiggs (302) 425-4457 - co-worker who has been

**Home Address:** employed with Amtrak for over eight years and has complete

**(if known)** knowledge of work related incidents of harassment and

hostility. Mrs. Wiggs was employed as a pipe-fitter with Amtrak.

**Home Telephone:** ( 302 )425-4457

This witness can provide the following information in support of my charge:

Mrs. Wiggs as stated above is a co-worker and has complete

knowledge of all work related incidents.

---

7                                                              **Use additional pages if needed**

Name: ALVIA LACY                          Date: 10/20/04

# WITNESS QUESTIONNAIRE

Identify all witnesses who you believe have information which would support your allegations.  For each witness identified, provide his/her name, address (if known), phone number (if known) or other means to contact the witness. In addition, indicate what type(s) of information you believe the witness can provide:

## WITNESS

**Name and Job Title:** MR MICHAEL SHERIDAN

**Home Address:** (if known)     1905 SHALLCROSS AVE, WILM, DE

**Home Telephone:** ( 302 ) 426-0803
**This witness can provide the following information in support of my charge:**

Mr. Sheridan was employed by Amtrak as a foreman, and presented the letter of harassment to me.  He has complete information of harassment and hostile work environment in relationship to my statements governing harassment & hostile work place.

## WITNESS

**Name and Job Title:** John B. Carlton, Car-repairman at the Bear, DE facility

**Home Address:** (if known)     and the Vice President of our local 2015 union.

**Home Telephone:** (     )
**This witness can provide the following information in support of my charge:**

Mr. Carlton has complete knowledge of the daily practices At the Bear, De facility.  He has confronted Mr. Butler on harassment unfair practices at the Bear, De facility.

n.                                          **Use additional pages if needed**

120200404805N

**NAME:** ALVIA LYNN LACY    **DATE:** 10/20/04

## REMEDY INFORMATION

1. If your charge alleges failure to hire or failure to promote, what was the salary or salary range of the job you applied for? $100,000    What was the salary of the position you held at the time you applied for the position in question? $ 38,000

2. If your charge alleges discharge or suspension without pay, what was the salary of the position you held at the time of discharge or suspension? $ 46,000 Foreman's rate

3. If your charge alleges demotion, what was the salary of the position you held before you were demoted? $ 46,000 . After you were demoted? $ 38,000 .

5. Other than loss of salary, what money have you lost as a result of the alleged discrimination (e.g., cost of looking for new job, cost of health insurance you had to buy, etc.)? Describe each type of loss and provide an approximate dollar value for each type of loss. (NOTE: You should save receipts or other proof of all such expenses.)

_____

_____

_____

_____

_____

_____

6. Other than monetary losses, what losses have you incurred as a result of the alleged discrimination (e.g., loss of seniority, no longer being part of a pension plan, loss of company car, had to seek psychiatric services)?

Loss of seniority on the foremans roster, in addition when I was

expelled from the foreman training program, I had to seek

psychiatric services, for I didnot want to return to the Bear

De facility, I was hurt, embarrassed, and did not want to face

my co-workers, or my family.

## REMEDY INFORMATION (p. 2)

7.  **What relief or remedy are you seeking in response to filing a charge with EEOC?**

In reference to the non-SETTLEMENT CLAIM I WOULD LIKE THE

300 points awarded in monetary value as requested.

In reference to the claim of Harassment and a hostile work

environment I would like for the persons involved to be held

responsible for their actions, coupled with monetary payment.

In reference to the non-PROMOTION, if this charge can't be

satisfied in the non settlement claim, a promotion and monetary

8.  **If your charge alleges discharge or failure to hire, have you obtained other employment since the date of the alleged discrimination?   If yes, please indicate the date of employment and the salary you earn with this new employer.  (If there has been more than one employer, please indicate all dates of employment and salary with each employer since your date of discharge or the date you were denied hire by the employer named in your charge.)**

 

 

**I declare under penalty of perjury that I have read the above statements and that they are true and correct.**

10/20/04

_____          _____
Signature                                          Date

**120200404805N**    ALVIA LYNN  LACY
1306 JERVIS SQ.
BELCAMP, MD  21017
(410) 272-4819

I am a black female, I have been employed by Amtrak for 21 years.

I received my Bachelors Degree in Business, from the University

of Maryland in 1986.  From the time I was hired by Amtrak I have

applied for management positions on a regular basis.  The

outcome would always be the same, denial, denial and more

denials.  In  1998 I was excepted in the foreman training

program.  I was harassed on a regular basis each night I

reported to work.  At the time I was in the foreman training

program I had a charge of   discrimination filed in court.

After completing my 66th day in the program, I received a

release draft from Amtrak's Claims department. They were

requesting  I sign the release.  Following the advise of  a

attorney I decided not to sign the release.  When I reported to

work that evening I was expelled from the foreman training

program, and ordered back to the floor to work.  The events

truly left me distressed and anguished.  When I realized what

had been done to me, I filed a charge of retaliation against

Amtrak.  In September of 1999, I spoke to Mr. Warren Kapplen

he was with The Washington Lawyers Committee for Civil Rights

and Urban Affairs, located in Washington, DC.  He suggested I

become a participant in the McLaurin Class action suite against

Amtrak.  I received the information packet and completed the

requested information. Portions of the claim forms for settlement

are inclosed, from my submitted package.

**120200404805N     ALVIA LYNN LACY**

In December of 1999, I received a call from Ms Maia Caplan, she stated she was with the Law Firm of Sprenger & Lang, and she was handeling the Amtrak class action suite. Ms. Caplan went on to state I was awarded 300 points on my claim form information package. She asked me did I want my points in monetary award? I stated yes, she then went on to say the point value per dollar was not established at that time, however the judge would determine the value and the awards would be processed and distributed to all plaintiffs including myself. As time passed I heard nothing. For months I did not receive any form of communications from the Sprenger & Lang Law Office. In the early summer of 2001 I contacted the law office in an effort to determine the status of my claim. I was told by the receptionist "Ms Maia Caplan is no longer with the firm, and I should speak to Mr. Michael Lieder in reference to my claim. When I spoke to Mr. Lieder he stated I was not going to receive any monetary award. I asked Mr. Lieder why ? He said I was to receive job relief and he would ask the judge to award a monetary sum in December of 2001 for me. I believed him and did not question him. As time passed I heard nothing, I contacted Mr. Lieder again, he stated I was to contact Ms. Laura Thompson, she was handling the Amtrak job relief claims. I contacted Ms. Thompson, she requested I send her my resume, and some copies of past positions to which I had applied. I forwarded the requested information to her office and waited.

120200404805N    ALVIA LYNN LACY

During this time I continued to apply for management positions on my own, I felt if Ms. Thompson was seeking job relief on my behalf, me applying for the open positions could only be a plus. Time passed and I heard nothing from Ms. Thompson, or Mr. Lieder. In January 2004 I contacted Mr. Kapplen in reference to my claim and the concerns of its status. A few days latter I received a call from Mr. Kapplen, stating Mr. Lieder was expecting my call and he would be able to help me. I contacted Mr. Lieder, and he told me to call Ms. Thompson. To make a long story short, after three months of countless telephone calls to both Ms. Thompson, and Mr. Lieder, Ms. Thompson told me the Decent Decree expired in December 2003, and I was not intiled to anything. I was so upset every time I thought about the process I cried, to this date it is still painful , because co-workers often ask me the status of my claim, and I feel so many people did not do their established responsibility. In addition, Mr. Lieder stated " all the job relief claimants were promoted with the exception of me". I was so upset I started crying, and asked why "no one said ok the only job relief participant remaining is Alvia Lacy"? His respond was silence . At that point I called Mr. Kapplen, he stated to me he reviewed the information I forwarded to him. He said Amtrak was wrong in requesting a dismissal of my retaliation charge, because the class action case did not cover any charges of retaliation. He Kapplen also stated he was

120200404805N

**ALVIA LYNN LACY**

disappointed in the outcome of my claim.

I have enclosed the letter which list me as a job relief
claimant, and the first 2 pages of the request for dismissal
submitted by Amtrak.

This information is submitted to the EEOC  for investigation
of my claim of Non Settlement in the McLaurin v. Amtrak class
action suite.

4

Name: _____    Date: _____

# WITNESS QUESTIONNAIRE

Identify all witnesses who you believe have information which would support your allegations. For each witness identified, provide his/her name, address (if known), phone number (if known) or other means to contact the witness. In addition, indicate what type(s) of information you believe the witness can provide.

## WITNESS

Name and Job Title: _____

Home Address: _____
(if known) _____
_____

Home Telephone: (_____) _____
This witness can provide the following information in support of my charge:

_____

_____

_____

_____

_____

## WITNESS

Name and Job Title: _____

Home Address: _____
(if known) _____
_____

Home Telephone: (_____) _____
This witness can provide the following information in support of my charge:

_____

_____

_____

_____

7                                                    Use additional pages if needed

POSITIONS I HAVE APPLIED FOR WITH AMTRAK, IN THE PAST
YEAR.  (10/03 – 10/04)

| | | |
|---|---|---|
| 11/03 | AMTRAK-PENN PHIL INVENTORY SVC. | #50172566 |
| 11/03 | AMTRAK-PENN-PHIL INVENTORY SVC. | #50172570 |
| 11/03 | AMTRAK-PENN-PHIL CONTRACTING AGT. | #50172580 |
| 11/03 | AMTRAK-PENN-PHIL SR. CONTRACTING AGT. | #50172572 |
| 11/03 | AMTRAK-PENN-PHIL SR. CONTRACTING M/W | #50172576 |
| 11/03 | AMTRAK-PENN-PHIL  REG. FLEET OFFICER | #50172496 |
| 11/03 | AMTRAK-PENN-PHIL  MANAGER AUTO | #50172497 |
| 11/03 | AMTRAK-DEL-BEAR REG. FLEET | #50153439 |
| 11/03 | AMTRAK-WAS-SR PRIN CONTRACT E/C | #50167654 |
| 11/03 | AMTRAK-DEL-WILM OFFICER TRANSPORTATION | #50173640 |
| 1/04 | AMTRAK-WILM- CREW MGMT. | #50124988 |
| 1/04 | AMTRAK-WASH-SUPERVISOR HSR. | #50175062 |
| 2/04 | AMTRAK-DEL-WILM- CREW MGMT. | #50171836 |
| 3/04 | AMTRAK-PENN-PHIL INVENTORY SVCS | #50172570 |
| 3/04 | AMTRAK-DEL-_SR MGR MATERIAL | #50175903 |
| 3/04 | AMTRAK-PENN- PROJECT ENG. | #50156915 |
| 3/04 | AMTRAK-WASH-HUMAN RES OFFICER | #50121016 |
| 3/04 | AMTRAK-WASH- GOVT. AF/SPEC. | #5007109 |
| 3/04 | AMTRAK-MD-BALT. ASST. ENG. TRACK | #50146685 |
| 7/04 | AMTRAK-WASH- MANAGER E/D | #50180873 |
| 6/04 | AMTRAK-WASH- OPERATION SUPER. | #50130938 |
| 9/04 | AMTRAK-WASH- MANAGER C/B | #50125481 |
| 9/04 | AMTRAK-WASH- OPERATION SUPER. | #50157903 |
| 9/04 | AMTRAK-PENN-PHIL- DOCUMENT CONTROL | #50182531 |
| 9/04 | AMTRAK-PENN-PHIL- ENG ROAD MAINT. | #50146328 |
| 9/04 | AMTRAK-PENN-PHIL FIELD ENV. SPEC. . | #50146672 |
| 12/03 | AMTRAK-WASH-QUALITY ASSURANCE INS. | #50166678 |
| 10/04 | AMTRAK-PENN-PHIL ADMIN SUPPORT SEP. | #50183697 |
| 10/04 | AMTRAK-DEL-WILM- OPER PRACTES | #50183713 |
| 10/04 | AMTRAK-WASH- ADMIN INVENTORY H/S | #50183771 |

## SELECTION QUESTIONNAIRE (p. 2)

5. When did you apply for the position? __The dates are on the application.__
__In addition, to the signature line.__

7. Did you apply in writing or orally? __Always, in writing, or fax.__

3. What were the name and the title of the person to whom you addressed your application or, if done orally, to whom you indicated that you had an interest in the position in question?

__Application is always  made to the Human Resources Department,__

__located in Washington, DC, or Philadelphia, PA.__

9. Were you interviewed for the position? If yes, how many times? For each time you were interviewed, identify by name and title the person(s) who interviewed you.

__Within the last year I was interviewed on two occasions, one__

__was with Mr. Taylor Cannon, and another With Ms. Sara Ray.__

__Mr. Cannon and Ms. Ray are with Amtrak's Human Resources Dept.__

10. Were you given any type of written or oral test? If yes, describe the type of test and the results, if known:

__No test was given.__

11. How and when were you notified that you were not selected for the position?

__I did not receive any notification of being selected for__

__either position.   Other positions are followed by a letter__

__of denial.   (Review denial letters)__

12. What reason(s) was/were given for not selecting you?

__Someone who meet the needs, was selected.   (review denial letters)__

## SELECTION QUESTIONNAIRE (p. 3)

13. What are the name and the title of the person who notified you that you had not been selected?

   The letter of denial always comes from the Human Resources

   department, the signature of the notification varies from

   letter to letter. (Review denial letters)

14. Was the person identified in #13 above the person who made the selection? _____. If not, identify (if known) the name and the title of the person who made the selection.

   This information I do not know.

5. If you know, name the person who got the position you applied for.

   N/A

6. What are that person's sex _____, race _____, national origin _____, approximate age ____
   _____.

7. Did that person meet the stated requirements for the position?

   I do not know

8. If he/she did not meet the requirements, in what way did he/she not meet them?

   I can't answer this question.

## SELECTION QUESTIONNAIRE (p. 4)

19.  Why do you believe that you should have been selected instead of the person who was selected?

I find it hard to believe I did not and have not meet the

requirements of any of the listed positions, or any positions

to which I have applied for in the past 21, years,  In

addition if I was listed as a claimant in the job relief

process, why wasn't I promoted ?

20.  Why do you believe that you were not selected because of your race, sex, color, religion, national origin, age, disability or in retaliation for having opposed a practice made unlawful by one of the statutes administered by EEOC?

I believe I was not selected because of my race, sex, color,

and in retaliation for having opposed a practice and wrong

doings which are considered unlawful by one of the statues

administered by the EEOC.

declare under penalty of perjury that I have read the above statements and that they are true and correct.

10/20/04

gnature                                          Date

ALVIA LACY

HARASSMENT AND    HOSTILE WORK ENVIRONMENT

I will start by listing incidents and occurrences which have taken place at the Bear, DE facility. The second section will contain incidents and occurrences that took place within the past year. I am trying my best to convey the **biatent** atmosphere of harassment and hostile work environment I have been exposed to for the past 16 years.

1) Foreman screamed at me and stated he could have me fired, this was in 1989. The foreman Mr. Carlton latter resigned from the position of foreman, and told me he was instructed by the management staff to harass me and overload my work duties.

2) A manager completed the employee evaluation form, which was full of false statements, and remained in my file for a undetermined time. I did interview for this position prior to the evaluation being sent to Bear, DE. The interviewer stated I was the most qualified applicant and the selection for the position would be me. He went on to state, once he received the evaluation form I would hear from him. time passed I heard nothing. When I called his office he stated  Because of the evaluation sheet I was not selected. I latter requested to review my employee file. Upon reviewing my file I was shocked, the evaluation was full of false statements. The forms were not signed and to this date I still don't know who completed the forms. One statement in the evaluation addressed my attendance record, listed were the dates  and time period when I had injured my back. ( The evaluation form is enclosed)

1

Time passed, and talk was going around the shop of a visit

from Mr. Tom Downs CEO of Amtrak.  I decided to present a

letter to him addressing some of my concerns.  (The letter is

enclosed for review) The day of his visit I gave the letter to

Mr. Downs for his review.  I latter received a **reply** .. to **my**

letter from Mr. Warington, I tried on several occasions to

reach Mr. McGowan, and Ms. Davidson and I was never successful.

(The letter is enclosed)  A few weeks latter Mr. Nesci,

requested me at the main office.  When I arrived He requested

I sit down and review my employee record.  I began to

review my file, and I noticed the papers were all typed and

very neat, in addition the employee evaluation form was not

in the file.  Mr. Nesci asked me "where is the form you

refered to" ?  I stated  "it is not in this file."  He then

said what did it look like, and what did it say ?" It was

clear the form had been removed,  Mr. Nesci did not know

my union representative Mr. Minista made a copy of the form

when I reviewed my file the first time.

3)  While working under the supervision of Mr. Sheridan, He

stated the management staff advised him to harass me, and

overload my work assignments.  (the letter from Mr. Sheridan

is enclosed)

4) Manager Mr. Miller and John Moore were inside a car at

the Bear, DE facility.  Employee Bill Benson, heard the

statement " we have got to get these niggers to do so work".

Mr. Miller did not know Mr. benson who is Black was listing to the statement. A few days latter Mr. Benson came to me, and told me what occurred, and asked what he should do ? I I said report the incident. Mr. Benson reported the incident and I was questioned during the investigation. No one was found quility and as matter of fact both Mr. Miller and Mr. Moore were promoted.

5) One morning while moving cars in the shop. I went inside the car to clear the car for movement. While on the car a co-worker began telling me about a set of bad wheels on a car on 28 track. While talking to him Bill Benson who is white, came to the car and screamed "get off your fat ass right now and get down here". I was upset, and told him once I completed the moves for the day I was going to report him. I did report the incident to my union rep, and Mr. Nesci. Nothing happened, not even an appology.

6) While working on the upgrade cars Foreman Pat Gallo who is white came on the car and shouted at me"hurry up and get this shit done on this car".

7) While assigned to the wreck line I was harassed on a daily basis, I was forced to attend welding classes, while white co-workers were allowed to skip the class, I was told I had to attend.

8) All my co-workers know I have a Bachelor of Science

3

ALVIA LACY

Degree in Business, and I am often teased about not

being promoted.  One afternoon a cartoon was taped to my

locker.  (The cartoon is enclosed for review)

9)  One afternoon while lining up to punch-out at the time

clock.  My co-worker Ms. LaDoris (who is black) walked up

and stood in front of me in line.  A co-worker Mr. Zigcraft

who is white stated "where I come from we _____ niggers

for stuff like that".  Everyone was shocked.  The incident

was reported.

10)  While training in the foreman program, I was harassed o

by Mr. John Moore, on a regular basis.  He stated I had to

arrive at my work location 20 minutes early. This was not

required by the other foreman.

11) A few years ago a co-worker Conie  McDowell complained

about employees leaving the job early.  a few days latter

she found her lunch-box, full of human waste.  The

company did nothing about the incident.

12) My co-worker Ladoris had a incident where the foreman

Mr. Washburn called her a "Jackass". LaDoris also had a

co-worker call her a "bitch".  The incident was reported.

13)  One day while working on 29 track, Pam Dye and

I were talking.  We were standing outside the car. Someone

banged on the window, inside the car when we turned to look

a co-worker had pulled his pants down and pressed his

behind against the window. The employee has since been

promoted.

4

ALVIA LYNN LACY

I have listed only a few incidents which have occurred at

the Bear, DE facility.  In each case one fact remains true

no one was held accountable for their inapproate actions.


I will now list a few incidents which have occurred to me

in the past year

1)  While on 24 track, a co-worker Mr. F. Koppel   became

angry of an employee who gave me a item from his

refrigerator.  I offered to pay for the item, and gave a

dollar bill to Mr. Koppel, he took  the dollar and set it

on fire.  Stating  " heres how I feel about your dollar

Alvia".  A few minutes latter he screamed to me " Alvia

do you know what F.O.A.D. means?" I said no.  He screamed to

me it "stands for Fuck Off And Die."  He then walked away.

I was scared to death. I went to Mr. Joe Walters and told

him about the incident.  My union representative was also

present and witnessed the incident, and Mike Farmer also

witnessed the incident.  To this date I try to avoid this

employee.  (the employee is a white male)

2)  A co-worker told Mr. Gill He couldn't work with me,

and I was a problem for him.  The co-worker is white.

3)   cont. from number 1. section a). I expressed to Mr.

Gill the policy was not being inforced fairly, based on the fact

some    hourly employees are not required to punch in and

others must.  I told him I was going to report the policy

5

ALVIA LACY

to the employee relations department.  After I made several

telephone calls I reached Ms. Everson Intake Coordinator,

with Amtrak.  I explained the situation to her.  She asked

if the police was being forced on race,sex, ect. ? (See

enclosed letter) I told her I didn't think so.  She went on

to ask me to name some employees who were not clocking in.

I stated Mike Skinner, and Carrie Bradford.  I informed her

they were white males, and union members.  She stated her

department could not address the issue unless it was

discrimination towards the protected race.  I then requested

her to just forward me a letter stating I contacted her

office and she could not address my concerns, a few days latter

I received the letter from her. The following week I went

to lunch break, when I returned the rat note was on my work

station.  I reported the incident to both Mr. McDowell and

Mr. Joe Walters.  In addition, I was told by a co-worker

that employees in the main were angry about being required

to punch in their timecards.  (the rat note is enclosed for review)

NATIONAL RAILROAD PASSENGER CORPORATION
60 Massachusetts Avenue, NE, Washington, DC 20002



May 4, 2004

Ms. Alvia Lacy
1306 Jervis Square
Belcamp, MD 21017

Dear Ms. Lacy:

On April 29, 2004, you contacted the Dispute Resolution Office of Amtrak's Business Diversity Department to file a complaint against Superintendent Thomas P. Butler and the Bear, DE mechanical operations. You alleged that Mr. Butler, "does what he wants to do" to run the Bear Shops. Specifically, you alleged that the attendance policy is not applied consistently. You stated that some hourly employees have to punch in and out at the time clock and others don't. You also stated that you almost received unfair verbal counseling because of your attendance, but corrections to your attendance record were made at your request. You also stated that you believed there is misuse by Bear employees of approved FMLA leave because management is not monitoring the process. You stated that you did not believe that Mr. Butler or other Bear, DE management personnel subjected you to unfair treatment because of your membership in any protected group (e.g., race, age, religion). Instead, you indicated that you believe that there is no professionalism or consistency in the management process at Bear, DE.

The DRO is responsible for investigating and addressing certain workplace concerns. The DRO handles complaints where an employee believes that he/she is being subjected to discrimination, harassment, or unfair treatment because of the person's race, sex, color, religion, national origin, age, disability, veteran status, sexual orientation or other personal characteristic protected by law. Although you alleged that Mr. Butler does not mange the Bear Shops in a uniform way, and that you have been unfairly disciplined because of your attendance, you have not alleged that your being mistreated is related to your membership in a protected group. Therefore, your complaint is not within the DRO's purview and the DRO cannot handle your complaint. As a result, the DRO will take no further action with respect to the issues that you raised.

Although your complaint is not the type of complaint that the DRO handles, Amtrak takes employees' complaints seriously. Therefore, I have forwarded information about your concerns to Chief Mechanical Officer Jonathan Klein for handling. You should expect Mr. Klein to look into your concerns and provide you with a response. If you have any questions about your complaint, please contact Mr. Klein directly at 736-6493. As to your allegations of possible misuse of approved FMLA leave by other employees, I have forwarded your concerns to the Director of Health Services, Malva Reid.

Sincerely,

Rahsaan Everson
Case Intake Coordinator

# Transport Workers Union of America
## A.F.L. - C.I.O.
## RAILROAD DIVISION . . .LOCAL 2015

*NOV 28-02*

MISS. B.BLAIR
DIVISION MANAGER LABOR RELATIONS
900 SECOND STREET NO. EAST
WASHINGTON, DC 20002

Dear miss Blair

    Please consider this letter the proper vehicle in which to progress a grievance dated *10-22-02*, filed on behalf of *MS. Alvin Lacy*. The grievance was denied by *Thomas P Butler* Amtrak Bear complex by letter dated *11-20-02*. Since the organization is not in agreement with the decision, please advise me of time and place so we can further progress this grievance.

Thanking you in advance.

Very truly yours

*James N Riley*

James N Riley
President, Local 2015
Wilm. Del.

C.C. *Thomas P. Butler*
*B. Narlton*
*Alvin Lacy*



## TRANSPORT WORKERS UNION OF AMERICA LOCAL 2015

DATE:        October 22, 2002
TO:          Tom Butler, Bear Facility Superintendent
FROM:        J. Bruce Carlton, Vice President Local 2015
RE:          Grievance


Date(s) Grievance(s) occurred:        7/26/02 - 10/17/02

Who was involved:    A. Lacey

Type of Grievance:    Violation of Rule 6

Where did the incident take place:    Bear Facility – Truck Shop

What are the specifics:        Ms. Lacey was awarded a job in the truck shop on 7/22/02 where she worked until 7/26/02. At that time she was moved from the truck shop to an airbrake inspector's job which she worked until 10/17/02. The job should have been advertised after 28 days and senior coach cleaner David Showater should have been stepped up for that position since there was a vacancy at that position. We ask that she receive minute for minute from the time of the infraction and he get the difference of coach cleaner and car repairman rate from the time of the infraction.

# WARNING

## There is a fat letter writing RAT watching you, punch your time card





DRAFT

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release ("Agreement") is made and entered into by and between Alvia L. Lacy and the National Railroad Passenger Corporation ("Amtrak") this ___ day of June, 1998

WHEREAS, Ms. Lacy is the Plaintiff and Amtrak is the Defendant in a civil action presently pending in the United States District Court for the Eastern District of _____, Case No. _____, entitled Alvia L. Lacy v. National Railroad Passenger Corporation (Amtrak);

WHEREAS, Ms. Lacy is the Plaintiff and Amtrak is the Defendant in a civil action presently pending in the United States District Court for the District of Maryland, Civil Action No. JFM 97-2031, entitled Alvia L. Lacy v. Amtrak;

WHEREAS, Ms. Lacy and Amtrak desire to settle fully and finally all disputes and differences between them, including but not limited to, the action described above and any other matters arising out of Ms. Lacy's Amtrak employment through the date of execution of this Agreement; and

WHEREAS, the parties wish to avoid the further burden and expense of litigation, without admission on either side as to the merits of the matter, and are prepared to settle their differences strictly as an accommodation;

6-04-1998 3:05PM    FROM PHILADELPHIA CLAIMS 215 3491006                    P.3
06/04/98  THU 13:21 FAX 202 906 7811        AMTRAK LAW DEPT.                    ☼002

NOW, THEREFORE, in consideration of the premises and mutual promises contained in this Agreement, it is agreed as follows:

1.    Ms. Lacy agrees to dismiss with prejudice his presently pending action against Amtrak before the United States District Court for the     District of _____, Case No. _____, entitled Alvia L. Lacy v. National Railroad Passenger Corporation (Amtrak). A Stipulation for Dismissal with Prejudice of Case No._____, entitled Alvia L. Lacy v. National Railroad Passenger Corporation (Amtrak), shall be filed by Ms. Lacy and her attorneys promptly following execution of this Agreement.

2.    Ms. Lacy agrees not to pursue any appeal of the judgment entered dismissing her claims with prejudice in her presently pending action against Amtrak before the United States District Court for the District of Maryland, Civil Action No. JFM 97-2031, entitled Alvia L. Lacy v. Amtrak.

3.    Ms. Lacy agrees not to file or pursue any other claim, or to initiate any investigation or audit against Amtrak arising from her Amtrak employment through the date of execution of this Agreement. Ms. Lacy further agrees not to join in any claim as an individual or as a member of a class in any state, federal, or municipal court case or agency proceeding relating to Amtrak, or to assist in any litigation or investigation against Amtrak in any way, except as may be required by law or requested by Amtrak, relating in any way to her Amtrak employment through the date of execution of this Agreement.

4. Amtrak agrees to pay Ms. Lacy the sum of _____ in full settlement of all

- 2 -

claims, known or unknown, that Ms. Lacy has or claims to have against Amtrak as of the date of

execution of this Agreement, including but not limited to those claims asserted in her lawsuit

before the United States District Court for the Eastern District of _____, Case No.

_____, entitled Alvia L. Lacy v. National Railroad Passenger Corporation (Amtrak), and

those claims asserted in her lawsuit before the United States District Court for the District of

Maryland, Case No. JFM 97-2031, entitled Alvia L. Lacy v. Amtrak  A check made payable to

Ms. Lacy and her attorneys, _____, in the amount of _____ ($.00)

will be issued to Ms. Lacy and her Counsel promptly upon receipt of a fully executed copy of this

Agreement and a fully executed, court-stamped Stipulation for Dismissal with Prejudice of Ms.

Lacy's presently pending action before the United States District Court for the Eastern District of

_____, Case No. _____, entitled Alvia L. Lacy v. National Railroad Passenger

Corporation (Amtrak).


   5.  Ms. Lacy agrees to assume all liability for federal, state, or local taxes, if any,

that are assessed in connection with the settlement payment referred to in Paragraph 4 of this

Agreement, and hereby indemnifies Amtrak from any liability whatsoever for such taxes.  Amtrak

has not made and does not make any representation or warranty with respect to the treatment of

said payment under the tax laws of the United States, the State of Maryland, or any other

jurisdiction that may arise by reason of the settlement payment referred to in this Agreement, and

Ms. Lacy has not relied on any such representation.

   6.  Amtrak agrees not to pursue any attempt to collect its costs of suit incurred

.6-04-1998 3:06PM    FROM PHILADELPHIA CLAIMS 215 3491006    P.5
08/04/98 THU 13:22 FAX 202 906 2821    AMTRAK LAW DEPT    @004

from Ms. Lacy in her lawsuit before the United States District Court for the District of Maryland,

Case No. JFM 97-2031, entitled Alvia L. Lacy y. Amtrak

7. This Agreement does not constitute an admission by any party of any violation

of law, or of any wrongdoing, and all parties expressly disclaim the commission of any such

wrongdoing.

8. Ms. Lacy, her heirs, successors and assignees, hereby release and forever

discharge Amtrak, its past and present directors, administrators, officers, employees, servants,

agents and representatives, heirs, successors in interest and assigns, from any and all liability,

claims and causes of action, debts, demands, expenses and costs (including attorneys' fees and

costs) of any kind or nature whatsoever, known or unknown, under any federal, state or municipal

statute or regulation, which Ms. Lacy now has or claims to have, or which she at any time had or

claimed to have, or which Ms. Lacy at any time hereafter may have or claim to have arising from

her Amtrak employment through the date of execution of this Agreement, including but not

limited to Ms. Lacy's claims in her civil action before the United States District Court for the

Eastern District of _____, Case No. _____, entitled Alvia L. Lacy v. National

Railroad Passenger Corporation (Amtrak), those claims asserted in her lawsuit before the United

States District Court for the District of Maryland, Case No. JFM 97-2031, entitled Alvia L. Lacy

v. Amtrak, all other employment discrimination claims, any claims of age discrimination that Ms.

Lacy may have under the Age Discrimination in Employment Act ("ADEA"), wrongful discharge,

breach of contract, personal injury and tort claims, and all liability for damages, costs, expenses

and compensation of any kind, nature or description now existing or which may hereafter arise

- 4 -

6-04-1998 3:07PM    FROM PHILADELPHIA CLAIMS 215 3491006                    P. 6
08/04/98  THU 13:23 FAX 202 906 2321        AMTRAK LAW DEPT.

from or out of Ms. Lacy's Amtrak employment through the date of execution of this Agreement. This Agreement does not waive or release any rights or claims that Ms. Lacy may have under the Age Discrimination in Employment Act which arise after the date of execution of this Agreement.

9. Ms. Lacy acknowledges having been strongly encouraged to consider this Agreement carefully and to consult with those in whom he has confidence, including legal counsel. Ms. Lacy further acknowledges that she did consult with an attorney of her own choosing whose signature appears below and that he received sufficient time and opportunity to carefully consider this Agreement.

10. Ms. Lacy represents and agrees that she will keep the terms, amount and fact of this Agreement completely confidential, and that she will not hereafter disclose any information concerning this Agreement to anyone, except to members of her immediate family, as may be necessary to enforce this Agreement, or as may be required by law. Ms. Lacy also agrees that she will not further discuss or publicize the allegations raised in connection with the claims she made in her civil action before the United States District Court for the Eastern District of

_____, in Case No. _____, entitled <u>Alvia L. Lacy v. National Railroad Passenger Corporation (Amtrak)</u>, or in her civil action before the United States District Court for the District of Maryland, Case No. JFM 97-2031, entitled <u>Alvia L. Lacy v. Amtrak</u>. This Agreement may not be used by either Ms. Lacy or Amtrak in any judicial or administrative proceeding, except in a proceeding for breach of the Agreement itself. In response to any questions about any of his claims against Amtrak, Ms. Lacy will only state that any dispute he had with Amtrak has been resolved to their mutual satisfaction. In the event of a breach of

- 5 -

.6-04-1998 3:07PM    FROM PHILADELPHIA CLAIMS 215 3491006                P. 7
05/04/98  JHU 15:25 FAX 202 906 4821        AAIRAA LAW DEPT.                    @1006

confidentiality by Ms. Lacy other than a de minimis breach, Ms. Lacy shall pay Amtrak the sum of Five Thousand Dollars ($5,000.00) in liquidated damages since the actual amount of damages resulting from such breach would be difficult, if not impossible, to quantify. Ms. Lacy further acknowledges that such a breach of confidentiality will cause Amtrak irreparable harm and entitle Amtrak to equitable relief in addition to liquidated damages.

11. This Agreement shall constitute the entire agreement between Ms. Lacy and Amtrak, resolving all matters arising out of Ms. Lacy's employment with Amtrak through the date of execution of this Agreement. Amtrak has not made any promises to Ms. Lacy other than those contained in this Agreement. This Agreement supersedes any prior agreements or understandings between Ms. Lacy and Amtrak.

12. By signing below, Ms. Lacy states that she has read the foregoing, and understands, accepts and agrees to each of the provisions herein.

Dated: June___, 1998             NATIONAL RAILROAD PASSENGER
                                 CORPORATION ("AMTRAK")

                          By: _____

IT IS UNDERSTOOD AND AGREED THAT THIS IS A FULL AND FINAL RELEASE AND THAT PAYMENT OF THE CONSIDERATION DESCRIBED IN THIS AGREEMENT IS NOT AN ADMISSION OF LIABILITY.

PLEASE READ THIS AGREEMENT CAREFULLY. THIS SETTLEMENT

- 6 -

AGREEMENT AND GENERAL RELEASE INCLUDES A RELEASE OF ALL KNOWN

AND UNKNOWN CLAIMS.

I ACKNOWLEDGE THAT I HAVE READ THIS AGREEMENT,

UNDERSTAND ITS TERMS AND ENTER INTO IT VOLUNTARILY.

Dated: June _____, 1998    _____

Alvia L. Lacy

APPROVED AS TO FORM

AND CONTENT:

Dated: June _____, 1998    _____

Plaintiff's counsel

- 7 -

National Railroad Passenger Corporation. 30th and Market Streets. Philadelphia. PA. 19104





February 24, 1997

Ms. Alvia L. Lacy
1306 Jervis Square
Belcamp, MD 21017

Dear Ms. Lacy:

I recently received a copy of the letter you gave to Mr. Downs during his visit to Bear, Delaware. First of all, thank you for writing. I understand you met with Mr. Vince A. Nesci, General Manager, Bear Complex, recently and reviewed your working file for the purpose of addressing the issues raised in your letter to Mr. Downs.

Mr. Nesci advised that you did not take exception to the contents of your working file, specifically with reference to your contention "false statements have been placed in my personnel file coupled with detrimental expressions." I understand Mr. Nesci also attempted to discuss your allegations that "several unfair, discriminating and non-professional business practices have occurred;" however, you chose not to discuss these issues with him. I am concerned about your allegations. Please feel free to openly discuss any such issues with either Mr. Nesci or Mr. R. F. McGowan, Vice President Equipment and Chief Mechanical Officer-NEC.

If you prefer to discuss this issue with our Equal Employment Office, you can contact Ms. Sheila Davidson at (ATS) 728-1493.

As for your desire to advance your career within Amtrak, I would encourage you to contact Maureen Phelan in our Philadelphia Human Resources Department at (ATS) 728-1108. She will be available to review your personnel file and to discuss your career goals.

Again, thank you for writing.

Sincerely,

George D. Warrington
President - Northeast Corridor

cc: Thomas M. Downs
    Sheila Davidson
    Maureen Phelan
    Vince A. Nesci

ALVIA LACY

BS. BUSINES ADMIN
MANAGEMENT

Please clearly ty

## A. PERSON

NAME: A.L

U. OF M. ~~COLLEGE~~
1986

EDUCATION DEG

## B. ATTENDANCE:

1.  DOES EMPLOYEE HAVE SATISFACTORY ATTENDANCE RECORD? _No_

2.  NO. OF DAYS MISSED IN PAST 12 MOS., EXCL. DISABILITY? _9 Days absent   10 days LATE or Left Early_

## C. SAFETY:

1.  HOW WOULD YOU DESCRIBE EMPLOYEE'S SAFETY RECORD?

    GOOD_____   SATISFACTORY_____   POOR _✓_

    WHY? _All injuries are preventable mas Lacy should have Been aware of her body Position and Could have avoided this injury_

2.  NOTE ANY LOST-TIME INJURIES OCCURRING DURING PAST 3 YEARS AND LIST DATES FOR EACH:

    _18 Aug 92 - 24 Lost time DAYS - Back Injury_

## D. DISCIPLINE:

1.  DOES EMPLOYEE HAVE ANY SUBSTANTIAL DISCIPLINE PROBLEMS? ~~Hlathicsy~~ _No_

    IF SO, PLEASE COMMENT ON ACTUAL DISCIPLINE ASSESSED IN PAST TWO YEARS: ~~STADA~~

    ~~Hld a Stayner for brailes - 24 MARCH 94~~

    (USE SECOND PAGE TO LIST ADDITIONAL INCIDENTS AND THEIR DISPOSITION)

PAGE 1 OF 2

COMPLETE NEXT PAGE

# EMPLOYEE PROFILE
# ENGINEERING DEPARTMENT

*Please clearly type or print all requested information.*

NAME: ___Lacy___

## E. EXPERIENCE/EXPERTISE:

1. NOTE ANY SPECIAL WORK EXPERIENCE OF THIS EMPLOYEE ___None that is Documented___

2. NOTE ANY TECHNICAL EXPERTISE OF THIS EMPLOYEE ___None Documented___

## F. EMPLOYMENT OF RELATIVES ISSUES (LIST ONLY THOSE KNOWN TO YOU)

NAME: _____          CURRENT POSITION: _____

RELATIONSHIP: _____      LOCATION: _____

NAME: _____          CURRENT POSITION: _____

RELATIONSHIP: _____      LOCATION: _____

## G. OTHER COMMENTS: (USE TO LIST EMPLOYEE ATTITUDE, JOB PERFORMANCE, SPECIAL ACHIEVEMENTS, ETC.)

Miss Lacy is an intelligent individual that has shown her desire to advance within the Corporation

At Present she holds the Position of a CAR Repair Journeyor IN my opinion her skill level is below AVERAGE But she has continually worked at improving that to that of

PAGE 2 OF 2

RETURN COMPLETED FORM TO:    *MICHELE S. MCGRAIL, ASST TO VP ENGINEERING*
*4TH FLOOR SOUTH TOWER, 30TH STREET STATION*
*30TH & MARKET STREETS, PHILADELPHIA, PA  19104*

SECTION B


1. LETTER FROM EEOC INVESTIGATOR

MR. MADDOX REQUESTING A WRITTEN RESPONSES


2. POSITION STATEMENT FROM RESPONDENT NRPC  (AMTRAK)


3. RESPONSE STATEMENTS OF ALVIA LACY, CHARGING PARTY



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Philadelphia District Office**

21 South 5th Street, Suite 400
Philadelphia, PA 19106-2515
(215)440-2600
FAX (215) 440-2604

July 28, 2005

Our Reference: Charge Number 120200404805
              Lacy v. Amtrak

Ms. Alvia L. Lacy
1306 Jervis Square
Belcamp, MD 21017

Dear Ms. Lacy:

I have been assigned your case and I want to share with you the result of the investigation thus far.

It appears that the investigation of your charge is near completion. However, it is generally necessary to review the evidence obtained in the investigation with the Charging Party before an investigation is considered complete. Such a review is needed to insure that all information necessary to the investigation has been obtained and that the Charging Party has the opportunity to submit new or contradictory evidence relevant to the investigation. The Commission then makes a decision whether additional investigation is still necessary.

During my investigation, I have gathered evidence which at this time forms the basis upon which the Commission will make a decision as to closure. In this instance, the evidence considered most important and relevant is as follows:

Section A:
1) **The attached Position Statement from the Respondent.**

**There does not appear to be enough evidence to substantiate your charge of discrimination, so please provide a written response to each point of the Respondent's position statement on or before August 11, 2005. Your response will be considered along with the evidence that has already been received in this office to further assist the EEOC in determining the merit of your case. If the evidence does not support your position, then your case will be closed with a "No Cause" recommendation.**

NATIONAL RAILROAD PASSENGER CORPORATION
30th Street Station, Philadelphia, PA 19104



July 6, 2005
Mr. Howard Gurmankin
Supervisory Investigator
21 South 5th Street
Suite 400
Philadelphia, PA 19106

**RE:    Alvia L. Lacy v Amtrak**
**Charge No: 120 2004 04805**

Dear Mr. Gurmankin:

On or about June 6, 2005, Amtrak employee Alvia L. Lacy ("Complainant") filed a charge of race and sex discrimination and retaliation with the Delaware Department of Labor against Respondent. The National Railroad Passenger Corporation ("Amtrak"). Specifically, complainant alleged that she has applied for approximately 30 positions and was not considered for any of them. She further alleges that she has been falsely issued letters of discipline regarding attendance. Complainant also stated that she had been exposed to harassment and hostile work environment for the past 16 years. Of course, Amtrak will address any relevant allegations. Amtrak will not address any allegations past the regulatory time limit nor will Amtrak address those allegations, which cannot be redressed by the EEOC.

Amtrak hired Complainant on August 3, 1983 as a Car Repairman. Complainant currently holds the position of Car Repairman.

**Allegation:**    I was retaliated against because I previously filed several charges against the Respondent with the EEOC.

**Response:**    Complainant filed a charge EEOC number 170A77756 in 2002. Complainant received a Dismissal and Notice of Rights on May 7, 2002. Complainant has not expressed any retaliation that has occurred in the past year.

**Allegation:**    I applied for approximately 30 positions and was not considered for any of them. My background and experience was more than enough to qualify me for every position.

**Response:**    From March 2004 until March 2005, Complainant did apply for 30 positions including Manager Train Operations, Engineer Road Main Svc, Director Legislative Suppt. Manager Office Services, Engineer Mechanical, Manager Reservations,  Asst Div Engineer ET (electrical traction), Trainmaster, Assist

Superintendent Station, Manager Club Acela & Station, Manager M&E Sales, Director Material Control, Senior Contracting Agent, and Director of Energy Manager. Complainant has absolutely no experience or background in any of the positions for which she has applied. *See exhibit #1* Complainant has been in car repair since joining Amtrak on August 3, 1983 to present. *See exhibit #2*

**Allegation:**    Mr. F. Koppel became angry at me and told me to F..k Off and Die.

**Response:**    Complainant did not allege that Mr. Koppel was angry with her because of her race or sex, but because she had an item that was taken out of his refrigerator. This allegation could not be verified. However, this type of response is certainly not condoned by the company and should be handled through the appropriate channels such as Employee Relations or through the employee's union representative. Complainant's senior manager has stated that there was never any report made to him that he remembers.

**Allegation:**    I have been falsely issued letters of discipline regarding my attendance.

**Response:**    Complainant has one counseling letter (not a letter of discipline) in her file between March 2003 and March 2004 and that letter is dated March 21, 2003. During the relevant time period a number of Caucasians were also given counseling letters for attendance. *See exhibit #3* As is plainly illustrated by exhibit number 3 no one is immune from absenteeism counseling letter. Race and sex do not play a part. For example, Exhibit number 3 lists all Caucasians who received a counseling letter, dispelling the allegation of race discrimination. Exhibit number 3 also consists of men and women, which dispels the allegation of discrimination because of her sex. (There are other minorities who have had counseling letters; exhibit number 3 is to show that other ethic groups also receive counseling letters)

**Allegation:**    A co-worker told Mr. Gill he couldn't work with me and I was a problem for him.

**Response:**    Mr. Gill does not recall a complaint from another co-worker involving the Complainant. He further stated that the Complainant is smart and a good worker.

**Summary:**

This is case is not one of race and sex discrimination or retaliation. Simply put, Complainant assessment of her qualifications for many of the positions applied for in the company is exaggerated. Complainant's background is largely irrelevant to the positions for which she applied. Her allegation that she received a discipline letter because of her race/sex is not substantiated by the facts. Finally, Complainant recounted an altercation between her and Mr. Koppel involving an item removed from a refrigerator. This concern should have been reported to the Employee Relations Department for the

appropriate action to be taken.    Amtrak requests that the Commission dismiss
Complainant's claims in its entirety.


Respectfully submitted,


Andrew McCallum
EEO Manager
Amtrak

August 7, 2005
Mr. Mark Maddox
Investigator
21 South  5th Street   Suite 400
Philadelphia,   PA   19106


**RE:    ALVIA L. LACY v AMTRAK**
**       Charge NO:  120 2004 04805**

Dear Mr. Maddox:


I Alvia L. Lacy African American, Female submit the following
written responses for your review in reference to my charge of
discrimination, retaliation, harassment and a hostile work
environment towards The National Railroad Passenger Corporation
("Amtrak").


In 1983, I Alvia L. Lacy African American, Female was hired by
Amtrak as a Trackman, in the Track Department.  In 1986 I
received my Bachelors Degree in Business Management from the
University of Maryland.  For the past twenty-two years I have
diligently applied for countless management positions.  My goal
was to advance into the field of business management within the
Amtrak Corporation.  In 1988, I transferred to the Mechanical
Department where I am currently employed as a Car Repairman, and
have held this position for over sixteen years.

currently holds the position of Car Repairman.

**Allegation:** I was retaliated against because I previously filed several charges against the Respondent with the EEOC.

**Response:** Complainant filed a charge EEOC number 170A77756 in 2002. Complainant received a Dismissal and Notice of Rights on May 7, 2002. Complainant has not expressed any retaliation that has occurred in the past year.

```
COMPLAINANT RESPONSE:    The EEOC charge Number 170A77756 in
2002 was dismissed, because I was a claimant in the
McLaurin v. Amtrak case.   See exhibit #1
In addition, I have filed other charges against Amtrak, and the
on going and constant practices of discrimination, harassment,
and non-promotion practices.   Upon review of exhibit #1, it is
noted that I am a job relief claimant, everyone listed has
been promoted with the exception, of myself.

Additional information from past charges are in exhibit #2,
please review.


In November of 2004, I submitted a completed packet
questionnaire and information to the EEOC.   This charge
covers the time frame of November 2003 - November 2004.
I have expressed retaliation for the year 2003-2004, as a
African American Female and employee of Amtrak. Such
practices are in direct violation of Title VII of the
Civil Rights Act of 1964, as amended.
```

EXHIBIT # 1

SPRENGER & LANG

A PROFESSIONAL LIMITED LIABILITY COMPANY
ATTORNEYS AT LAW

WRITER'S ADDRESS:

Maia Caplan
District of Columbia Office

1614 TWENTIETH STREET, N.W.
WASHINGTON, D.C. 20009-1001
(202) 265-8010
FAX (202) 332-6652

January 3, 2000

325 RIDGEWOOD AVENUE
MINNEAPOLIS, MINNESOTA 55403
(612) 871-8910
FAX (612) 871-9270

VIA FAX & HAND DELIVERY

Thomas E. Reinert, Jr., Esq.
Grace E. Speights, Esq.
Morgan, Lewis & Bockius
1800 M Street, N.W.
Washington, DC 20036-5869

[JAN 1 2 2000

Re:    *McLaurin v. Amtrak*

WILLIAM H. HERRMANN
ASSOCIATE GENERAL COUNSEL

Dear Tom and Grace:

This confirms our agreement to extend the counseling period until January 1 (3), 2000. There is one change from the list last sent to you. After further consultation, Leslie Dunning opted *not* to participate in the Job Relief process and to pursue exclusively instead her monetary claim.

Pursuant to the Consent Decree, we would have 10 additional days to forward individual claim summaries. I'm not certain whether that was Tom's intent, or whether he intended for the negotiation period to commence immediately on January 3. Because of this ambiguity, we forward the summaries today. We should, however, clarify intent here.

To recapitulate, the Job Relief claimants are:

Douglas Bell
Charles Granger
Michael Shane Latiff
Alvia Lynn Lacey
Lamonte E. Turner
Kathelyne Whilhite and
Donald Williams

Sincerely,

Maia Caplan

CC:    Bill Hermann, Esq.
Enclosures

EXHIBIT # 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LEON MCLAURIN, *ET AL.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 1:98CV2019 |
| v. | ) | (EGS) |
| | ) | |
| NATIONAL RAILROAD PASSENGER | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

CONSENT DECREE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ALVIA L. LACY,                                      *

     Plaintiff,                                   *

        v.                                        *          Civ. No. 99-3529

NATIONAL RAILROAD PASSENGER                         *
   CORPORATION,
                                 *

     Defendant.                                   *

    *    *    *    *    *    *    *    *    *    *    *    *

## NATIONAL RAILROAD PASSENGER CORPORATION'S
## BRIEF IN SUPPORT OF ITS SUPPLEMENTAL
## MOTION TO DISMISS ON GROUNDS OF
## CLASS ACTION SETTLEMENT

     Defendant National Railroad Passenger Corporation ("Amtrak") submits this brief in support of its Supplemental Motion to Dismiss.[1]

     In this action, Plaintiff claims that Amtrak violated the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e, et. seq. and 42 U.S.C.A. § 1981, by allegedly discriminating against her as retaliation because she pursued a race discrimination and race and sex harassment complaint against Amtrak. Plaintiff alleges that on June 4, 1998, Amtrak retaliated against her by expelling her from a foreman training position. Complaint, ¶ 8.

     This action should be dismissed because Plaintiff's claims are barred by the resolution of a class action suit against Amtrak encompassing Plaintiff's claims.

---

[1] Amtrak filed an initial Motion to Dismiss and/or Transfer on September 14, 1999, which is currently pending.

LAW OFFICES

## MILES & STOCKBRIDGE

A PROFESSIONAL CORPORATION

10 LIGHT STREET

BALTIMORE, MARYLAND 21202-1487

CAMBRIDGE, MD
COLUMBIA, MD
EASTON, MD
FREDERICK, MD

McLEAN, VA
ROCKVILLE, MD
TOWSON, MD
WASHINGTON, D.C.

TELEPHONE 410-727-6464
FAX 410-385-3700

ANTHONY W. KRAUS
410-385-3756

June 4, 1998

**VIA HAND DELIVERY**

Frank L. Monge
Clerk, United States District Court
 for the District of Maryland
United States Court House
101 West Lombard Street
Baltimore, Maryland 21202

> Re:  Lacy v. Amtrak
>      Civil Action No.: JFM 97-2031

Dear Mr. Monge:

I enclose for filing in the above-referenced case an original and two copies of defendant Amtrak's Bill of Costs and exhibit thereto, Memorandum of Grounds and Authorities in Support of Defendant's Bill of Costs, and Declaration of Counsel. If you have any questions concerning this submission, please contact me at the number indicated above.

Thank you for your ongoing assistance in this matter.

Sincerely,

Anthony W. Kraus

Anthony W. Kraus

AWK/cns
Enclosures
cc: Ms. Alvia L. Lacy
j:\awk\amtrak\lacy\monge3.ltr

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# NOTICE OF RIGHT TO SUE

*(Issued on request)*

| To: | From: |
|---|---|
| Alvia L. Lacy | Equal Employment Opportunity Commission |
| 1306 Jervis Square | Washington Field Office |
| Belcamp, MD   21017 | 1400 "L" Street, N.W., Suite 200 |
| | Washington, D.C.  20005 |

☐  *On behalf of a person aggrieved whose identity is CONFIDENTIAL (29 C.F.R. 1601.7(a))*

| Charge Number | EEOC Representative | Telephone Number |
|---|---|---|
| 100 97 0230 | Mazie F. Downs, Enforcement Supervisor | 202-275-7037 |

( See the additional information attached to this form )

**TO THE PERSON AGGRIEVED:**  This is your NOTICE OF RIGHT TO SUE. It is issued at your request. If you intend to sue the respondent(s) named in your  charge, YOU MUST DO SO WITHIN  NINETY (90) DAYS OF YOUR RECEIPT OF THIS NOTICE: OTHERWISE YOUR RIGHT TO SUE IS LOST.

☐  More than 180 days have expired since the filing of this charge.

☒  Less than 180 days have expired since the filing of this charge, but I have determined that the Commission will be unable to complete its process within 180 days from the filing of the charge.

☒  With the issuance of this NOTICE OF RIGHT TO SUE, the Commission is terminating its process with respect to this charge.

☐  It has been determined that the Commission will continue to investigate your charge.

☒  **ADEA:** While Title VII and the ADA require EEOC to issue this notice of right to sue before you can bring a lawsuit, lawsuit you may sue under the Age Discrimination in Employment Act (ADEA) any time 60 days after your charge

☐  Because EEOC is closing your case, your lawsuit under the ADEA must be brought within 90 days of your receipt of this notice. Otherwise, your right to sue is lost.

☐  EEOC is continuing its investigation. You will be notified when we have completed action and, if appropriate, our notice will include notice of right to sue under the ADEA.

☐  **EPA:** While Title VII and the ADA require EEOC to issue this Notice of Right to Sue before you can bring a lawsuit, lawsuit you already have the right to sue under the Equal Pay Act (EPA) (You are not required to complain to any enforcement agency before bringing an EPA suit in court). EPA suits must be brought within 2 years (3 years for willful violations) of the alleged EPA underpayment.

I certify that this notice was mailed on the date set out below.

On Behalf of the Commission

MAR 2 6 1997

_____
(Date Mailed)

Susan Buckingham Reilly, Director

Enclosures
  Information Sheet
  Copy of Charge

cc: Sheila B. Davidson
  Amtrak
  30th Street Station
  Philadelphia, PA  19104

2. **Allegation:**    I applied for approximately 30 positions and was not considered for any of them. My background and experience was more than enough to qualify me for every position.

**Response:**    From March 2004 until March 2005, Complainant did apply for 30 positions including Manager Train Operations, Engineer Road Main Svc, Director Legislative Suppt. Manager Office Services, Engineer Mechanical, Manager Reservations, Asst Div Engineer ET (electrical traction), Trainmaster, Assist Superintendent Station, Manager Club Acela & Station, Manager M&E Sales, Director Material Control, Senior Contracting Agent, and Director of Energy Manager. Complainant has absolutely no experience or background in any of the positions for which she has applied. *See exhibit #1* Complainant has been in car repair since joining Amtrak on August 3, 1983 to present. *See exhibit #2*

**COMPLAINANT RESPONSE:**    In 1986, I Alvia L. Lacy African American, Female received my Bachelors Degree in Business Management, I also began to apply for management positions within Amtrak.   I was told by Amtrak's Human Resources Supervisor "to be certain I posse the "Must Have" listed requirements for the given positions to which I apply".   I have always followed this practice. Amtrak, claims I have no experience or background in any of the positions for which I applied. In view of the fact I have a Bachelors Degree in Business, and 22 years of experience in the railroad industry should more than qualify me for the listed entry-level positions to which I applied and was denied.

In addition, I Alvia L. Lacy, African American, Female have listed the names of Amtrak employees who have been promoted to management positions without experience or background in the position of promotion.   Each employee, was however, a caucasian (white)  male. See exhibit # 3

Each listed employee was given the opportunity to advance with the corporation, an opportunity which was not nor has been  given  to me an African American Female, this practice of discrimination by Amtrak is in direct violation of Title VII of the Civil Rights Act of 1964, as amended.

EXHIBIT # 3

| EMPLOYEE NAME | POSITION HELD PRIOR TO PROMOTION | RACE | SEX | BACHELORS DEGREE |
|---|---|---|---|---|
| 1. Al Feeley | Car Repairman | White | Male | No |
| 2. Ron White | Car Repairman | White | Male | No |
| 3. Tom Favorosa | Car Repairman | White | Male | No |
| 4. Paul Fergerson | Car Repairman | White | Male | No |
| 5. Kevin Koppel | Car Repairman | White | Male | No |
| 6. Tom Froysland | Car Repairman | White | Male | No |
| 7. Russel Fox | Car Repairman | White | Male | No |
| 8. Berry Hudson | Car Repairman | White | Male | No |
| 9. J. Costello | Car Repairman | White | Male | No |
| 10. Steve Reader | Car Repairman | White | Male | No |
| 11. Mike Fell | Electrician | White | Male | No |
| 12. Harvy Poole | Electrician | White | Male | No |
| 13. Fred Dutton | Electrician | White | Male | No |
| 14. Jim McDoewll | Electrician | White | Male | No |
| 15. Robert Miller | Electrician | White | Male | No |
| 16. Chris Purcell | Electrician | White | Male | No |
| 17. Roy Moyer | Car Repairman | White | Male | No |
| 18. Frank Ross | Car Repairman | White | Male | No |
| 19. Pat Cerminara | Car Repairman | White | Male | No |
| 20. Tom Butler | Coach Cleaner/Laborer | White | Male | No |
| 21. John Mattson | Electrician | White | Male | No |

3.  **Allegation:**    Mr. F. Koppel became angry at me and told me to F..k Off and Die.

**Response:**    Complainant did not allege that Mr. Koppel was angry with her because of her race or sex, but because she had an item that was taken out of his refrigerator.  This allegation could not be verified.  However, this type of response is certainly not condoned by the company and should be handled through the appropriate channels such as Employee Relations or through the employee's union representative.  Complainant's senior manager has stated that there was never any report made to him that he remembers.

**COMPLAINANT RESPONSE:**    When this event took place, I Alvia L. Lacy African American Female and two caucasian employees were sitting together.  Mr. Koppel accused me without justification, as the person who took the item. He never once questioned the two white employees.  During the shouting rampage the statement was made "you took it because all black people steal". Mr. Koppel is a white male.

Amtrak states there was never any report made to the senior manager.  When in fact, the incident was reported to Mr. Joe Walters, and my union representative was also aware of the incident.

**4.**   **Allegation:**   I have been falsely issued letters of discipline regarding my attendance.

**Response:**   Complainant has one counseling letter (not a letter of discipline) in her file between March 2003 and March 2004 and that letter is dated March 21, 2003. During the relevant time period a number of Caucasians were also given counseling letters for attendance. *See exhibit #3* As is plainly illustrated by exhibit number 3 no one is immune from absenteeism counseling letter. Race and sex do not play a part. For example, Exhibit number 3 lists all Caucasians who received a counseling letter, dispelling the allegation of race discrimination. Exhibit number 3 also consists of men and women, which dispels the allegation of discrimination because of her sex. (There are other minorities who have had counseling letters; exhibit number 3 is to show that other ethic groups also receive counseling letters)

**COMPLAINANT RESPONSE:**   When I first registered my complaint in reference to the falsely issued letters of discipline regarding my attendance, I never ever said the issue was of race or sex. This is another incident where Amtrak has twisted the truth. My complaint from the beginning has been "Selected Employees" are allowed exception of punching in their time card. Therefore, those employees will never receive any letters of discipline, because they are not required to punch in. In addition, I have stated according to policy any employee who is a hourly wage employee, should be punching in, and this is not the case at the Bear, DE facility. Allowing an employee the opportunity to be excluded is unfair, and fraudulent.

I request the EEOC, review the time cards of employees at the Bear, DE facility during the time period of 2003, - 2004. In addition, I have included one of the many letters from my union Vice President J. B. Carlton, in reference to unwarranted letters. See exhibit # 4

For the record, any letters of counseling, and letters of discipline, serve as negative reviews when they are in an employees file.

EXHIBIT #   4



## TRANSPORT WORKERS UNION OF AMERICA LOCAL 2015

March 25, 2003


Roosevelt Gill, General Foreman
Amtrak
Bear Facility

### RE:    Ms. Alvia Lacey

Dear Mr. Gill:

This letter is in response to your memo dated March 21, 2003 to Ms. Lacey. It is our opinion that this memo was unwarranted. Ms. Lacey's attendance record does not show a pattern of tardiness nor absenteeism. On the days noted, there was inclement weather and considering that Ms. Lacey's commute is substantial, she should have been given the benefit of the doubt. Not to mention that on February 27, 2003 Employee Communications distributed a Special Employee Advisory outlining the policies and procedures for inclement weather attendance. Even though this was directed to management personnel, why should management employees place their safety and well being above fellow employees? Inclement weather does not only effect management but all employees. Ms. Lacey made more than "reasonable attempts " to come to work. We ask that you attach this appeal to your correspondence of March 21, 2003 to Ms. Lacey's File

If you have any questions, or wish to discuss this further, please do not hesitate to contact me.


Sincerely,


John B. Carlton, Vice President

cc:    James Riley, President

5.  **Allegation:**   A co-worker told Mr. Gill he couldn't work with me and I was a problem for him.

**Response:**   Mr. Gill does not recall a complaint from another co-worker involving the Complainant.  He further stated that the Complainant is smart and a good worker.

**COMPLAINANT RESPONSE:**    The co-worker made the statement in reference to him not being able to work with me is true.  I have included a letter of witness to the event from a co-worker who heard the employee make the statement. See exhibit # 5 from LaDoris Wiggs who was employed by Amtrak, at the time of the incident as a pipefitter.

The employee who stated he couldn't work with me and I was a problem is a white male, I Alvia L. Lacy am a African American Female.  The same employee called a African American Female co-worker a Bitch, and the incident was reported.

EXHIBIT # 5

August 4, 2005

To Whom it may concern, I heard and witnessed the co-worker J. White say he couldn't work with  Alvia  and she was a promlem for him.

LaDoris Wiggs
(614) 202-7690

**SUMMARY:**

This is a case of ongoing race, and sex discrimination, retaliation, and the exposure to a hostile work environment towards me, Alvia L. Lacy, an African American Female. I was listed as a African American job relief claimant in the McLaurin v. Amtrak class action suit, which was a sex and race discrimination suite, and Amtrak did not honor the agreement. See exhibit # 1

My assessment of my qualifications for the positions to which I applied, is not exaggerated, but very reasonable in view of my degree and years of experience. Had I been a white male, I would not be submitting this charge. In addition, the white employees who were promoted had no experience or formal education, prior to receiving their promotions they were given the opportunity only because they were white males. In reference to the incident with Mr. Koppel, the event was reported to the appropriate supervisor. I Alvia L. Lacy request the commission not to dismiss my charge, but to hold Amtrak responsible for the violation of my Rights under    Title VII of the Civil Rights Act of 1964, as amended.


Respectfully Submitted



Alvia L. Lacy
Complainant

SECTION   C


1. LETTER FROM EEOC INVESTIGATOR MR. MADDOX

DATED MAY 11 2005


2. LETTER FROM ALVIA LACY CHARGE, SIGNED & DATED MARCH 4 2005


3. DISMISSAL AND NOTICE OF RIGHTS LETTER DATED NOVEMBER 2 2005



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Philadelphia District Office**

21 South 5th Street, Suite 400
Philadelphia, PA 19106-2515
(215) 440-2600
TTY (215) 440-2610
FAX (215) 440-2604, 2632 & 2805

May 11, 2005

Our Reference: Lacy vs. Amtrak (120200404805)

Ms. Alvia Lynn Lacy
1306 Jervis Square
Belcamp, MD 21017

Dear Ms. Lacy:

Enclosed is your perfected charge, prepared by me as a result of information which you supplied to the EEOC.

Please review the charge, sign, date and return all copies to me within five (5) business days, or it will be assumed that you no longer wish to file a charge of discrimination. When the charge is received (signed and dated), a copy will be returned to you for your records; and a copy sent to the Respondent, as required by law.

Thank you for your cooperation. If you have any questions, you may reach me at the above address or by phone at (215) 440-2657 any time Monday through Friday, between 8:30 a.m. and 4:30 p.m.

Sincerely,

Mark Maddox
Investigator

May 12, 2005

U.S. Equal Employment Opportunity commission
Philadelphia District Office
Mr. Mark Maddox
Investigator
21 South 5th Street,  Suite 400
Philadelphia, PA  19106-2515

Dear Mr. Maddox:

I have enclosed the reviewed charge and signed it as instructed. In addition,
please note for the record  the following information. In my questionnaire I
listed my union representative Mr. Carlton as witness.  However, two weeks
ago we  voted for union representatives, somehow Mr. Carlton found out I was
not voting for him.  He then told a co-worker he "would not be helpful if the
EEOC contacted him for vital information".  This was very upsetting to me,
due to the fact Mr. Carlton has detailed information and insight on  the
events related to my charge.

Thank you for your assistance.  If additional information is needed please
contact me.

Sincerely,

Alvia L. Lacy

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 120-2004-04805 |

| Delaware Depart of Labor/Equal Employment Opportunity Office | | and EEOC |
|---|---|---|
| *State or local Agency, if any* | | |

| Name *(Indicate Mr., Ms., Mrs.)* | Home Phone No. *(Incl Area Code)* | Date of Birth |
|---|---|---|
| **Ms. Alvia L. Lacy** | **(410) 272-4819** | **11-27-1956** |

| Street Address | City, State and ZIP Code |
|---|---|
| **1306 Jervis Square Belcamp, MD 21017** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **AMTRAK** | **500 or More** | **(302) 834-2743** |

| Street Address | City, State and ZIP Code |
|---|---|
| **258 East Scotland Drive,  Bear, DE 19701** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☒ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN  ☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER *(Specify below.)* | Earliest **10-01-2004**  Latest **10-01-2004**  ☐ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

**I believe that I have been subjected to discriminatory actions because of my race (black) and sex (female), plus I was also retaliated against because I previously filed several charges against the Respondent with the EEOC. The following are examples of patterns involving both discriminatory and retaliatory practices which were used against me:**

**1) I applied for approximately 30 positions and was not considered for any of them. My background and experience were more than enough to qualify me for every position.**

**2) I have been falsely issued letters of discipline regarding my attendance, yet I have done nothing to deserve this treatment. I provided a Doctor's note for my absences, yet I was informed by my Supervisor that there were no excused absences for me to use.**

**Attached are a series of incidents that took place at the Respondent's facilities since I started working there. I realize that some incidents are time bared, but I want to show a clear pattern of discriminatory behavior and treatment.**

**I believe that I have been both discriminated against and retaliated against in violation of the Civil Rights Act of 1964, as amended (Title VII).**

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Mar 04, 2005** *Date*    *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year )* |

EEOC Form 161 (10/96)                    U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: Ms. Alvia L. Lacy
1306 Servis Square
Belcamp, MD 21017

From: Equal Employment Opportunity Commission
Philadelphia District Office
The Bourse
21 S. Fifth Street, Suite 400
Philadelphia, PA 19106-2515

[  ]  *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 120-2004-04805 | Legal Unit | (215) 440-2828 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[  ]  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[  ]  Your allegations did not involve a disability that is covered by the Americans with Disabilities Act.

[  ]  The Respondent employs less than the required number of employees or is not otherwise covered by the statues.

[  ]  We cannot investigate your charge because it was not filed within the time limit required by law.

[  ]  Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[  ]  While reasonable efforts were made to locate you, we were not able to do so.

[  ]  You had 30 days to accept a reasonable settlement offer that afford full relief for the harm you alleged.

[ X ]  The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

[  ]  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[  ]  Other *(briefly state)* _____

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you.  You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS from your receipt of this Notice**; otherwise, your right to sue based on this charge will be lost.  (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not **be collectible.**

On behalf of the Commission

Marie M. Tomasso                          November 2, 2005

Enclosure(s)              Marie M. Tomasso, District Director              *(Date Mailed)*

cc:    Amtrak
Andrew McCallum, EEO Manager (For Respondent)

SECTION   D

1. DOCUMENT LISTING ALVIA LACY AS A JOB RELIEF CLAIMANT

2. AFFIDAVIT OF CHRISTINE TURNLACER STATING ALVIA LACY
   AS A JOB RELIEF CLAIMANT

3. MEMORANDUM FROM MAIA CAPLAN, CLAYTON ATHEY

4. SECTIONS FROM THECONSENT DECREE OF MCLAURIN VS NATIONAL
   RAILROAD PASSENGER CORPORATION

## SPRENGER & LANG

A PROFESSIONAL LIMITED LIABILITY COMPANY
ATTORNEYS AT LAW

WRITER'S ADDRESS:

Maia Caplan
District of Columbia Office

1614 TWENTIETH STREET, N.W.
WASHINGTON, D.C. 20009-1001
(202) 265-8010
FAX (202) 332-6652

325 RIDGEWOOD AVENUE
MINNEAPOLIS, MINNESOTA 55403
(612) 871-8910
FAX (612) 871-9270

January 3, 2000

**VIA FAX & HAND DELIVERY**

Thomas E. Reinert, Jr., Esq.
Grace E. Speights, Esq.
Morgan, Lewis & Bockius
1800 M Street, N.W.
Washington, DC 20036-5869

[ JAN 1 2 2000

WILLIAM H. HERRMANN
ASSOCIATE GENERAL COUNSEL

Re:    *McLaurin v. Amtrak*

Dear Tom and Grace:

This confirms our agreement to extend the counseling period until January 1 (3), 2000. There is one change from the list last sent to you. After further consultation, Leslie Dunning opted *not* to participate in the Job Relief process and to pursue exclusively instead her monetary claim.

Pursuant to the Consent Decree, we would have 10 additional days to forward individual claim summaries. I'm not certain whether that was Tom's intent, or whether he intended for the negotiation period to commence immediately on January 3. Because of this ambiguity, we forward the summaries today. We should, however, clarify intent here.

To recapitulate, the Job Relief claimants are:

Douglas Bell
Charles Granger
Michael Shane Latiff
Alvia Lynn Lacey
Lamonte E. Turner
Kathelyne Whilhite and
Donald Williams

Sincerely,

Maia Caplan

CC:    Bill Hermann, Esq.
Enclosures

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ALVIA L. LACY                                    *

    Plaintiff                                    *

        v.                                       *          Civ. No. 99-3529

NATIONAL RAILROAD PASSENGER                      *
    CORPORATION
                                                 *
    Defendant
                                                 *

*    *    *    *    *    *    *    *    *    *    *    *

DISTRICT OF COLUMBIA:   ss.

AFFIDAVIT OF CHRISTINE TURNBLACER
IN SUPPORT OF
NATIONAL RAILROAD PASSENGER CORPORATION'S
MOTION TO DISMISS

Christine Turnblacer, being duly sworn, states and deposes as follows:

1.   I, Christine Turnblacer, am over 18 years of age. I make this affidavit in support

of the National Railroad Passenger Corporation's ("Amtrak") Motion to Dismiss.

2.   I am a Legal Assistant for the Labor and Employment Group, Law Department at

Amtrak. In that position, I am responsible for assisting the attorneys in the Law

Department regarding applicants seeking job relief pursuant to the provisions of

the court-approved Consent Decree issued in Leon McLaurin et. al. v. National

Railroad Passenger Corporation ("Amtrak"), Civil Action No. 98CV2019 (EGS),

United States District Court for the District of Columbia.

3.  Pursuant to notice received from Class Counsel dated January 3, 2000, attached

hereto as Exhibit 1, Alvia Lacy is seeking job relief for numerous positions

including the foreman training position at issue here.

Subscribed and
Sworn to before me this  3rd  day of March, 2000

Christine Turnblacer

Anita Martin
Notary Public
My Commission expires:  April 14, 2002

2

MEMORANDUM

| To: | Amtrak |
|-----|--------|
| From: | Maia Caplan; Clayton Athey |
| Date: | December 28, 1999 |
| Re: | Alvia Lynn Lacy |

Introduction

Ms. Lacy, a 43 year-old black female, seeks an entry-level Management position, or the position of Foreman I, from which she was demoted in 1988.

Facts

Ms. Lacy began working for Amtrak in August 1983 as a trackman. Principally, she worked in the Bear Delaware facility, where she was repeatedly subjected to discriminatory language and conduct including offensive cartoons and racial epithets, like "you people," "niggers," and "house niggers." (Ms. Lacy reported this hostile conduct to her General Manager Vince Nesci, but no remedial action was taken.)

Ms. Lacey unsuccessfully applied for several Management positions during the liability appeared. Sought-after job titles include Administrator Material Planning, Supervisor Customer Service, Service Manager NE Direct, Trainmaster, Administrative Assistant and Crew Management Representative.

Finally, after several complaints of race discrimination, in 1988 Ms. Lacy entered training for a Foreman I job at Amtrak's Bear, Delaware Maintenance Facility. However, on the 67th day of the 90 day training period, following additional prosecution of her prior claim by Ms. Lacy, Amtrak's John Moore discriminatorily expelled her from the training – effectively

demoting her from the Foreman I position.  Following this, she became again a Car Repair
Journeyman.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LEON MCLAURIN, *ET AL.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 1:98CV2019 |
| v. | ) | (EGS) |
| | ) | |
| NATIONAL RAILROAD PASSENGER | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

CONSENT DECREE

## I.    INTRODUCTION

This Consent Decree sets forth the full and final terms by which Named Plaintiffs, on behalf of themselves and members of the Class defined herein, and Defendant National Railroad Passenger Corporation ("Amtrak"), have settled and resolved all claims or potential claims between them relating to Management positions, including all claims of any alleged race discrimination against African American Management employees and African American applicants for Management positions, as those terms will be defined herein, through or as a result of any alleged discriminatory purpose, pattern or practice, or adverse impact of Amtrak's practices and policies with respect to hiring, compensation, training, performance appraisals, promotions, transfers, discipline, termination, the toleration of a hostile working environment, and other personnel practices or decisions. This Decree does not encompass claims relating to or arising from employment in non-Management positions, other than non-Management employee claims relating to application for promotion to Management positions, and Management employee claims relating to demotion to non-Management positions. Amtrak has voluntarily entered into this Consent Decree to address concerns raised by its diverse workforce, to avoid protracted and costly litigation, and to focus its corporate resources on serving Amtrak's customers and operating a first-class national rail passenger system.

## II.    NATURE OF THE CASE

On August 20, 1998, twelve Black Amtrak employees who are or have been employed in Management positions at Amtrak, or were rejected for employment in Management positions at times when they were not employed by Amtrak, or were rejected for employment in Management positions at times when they were employed by Amtrak in non-Management

positions, and one Caucasian Management employee who allegedly was retaliated against for opposing discrimination against African Americans, filed a Complaint in this Court. The Plaintiffs asserted claims against Amtrak for race discrimination in hiring, job assignments, promotions, performance appraisals, discipline, compensation, and training. The Complaint further alleged a pattern and practice of discrimination by Amtrak and tolerance of a racially hostile working environment. The Plaintiffs asserted claims on behalf of themselves and putatively on behalf of similarly situated current and former employees and rejected Internal and External Applicants for Management positions. On November 20, 1998, the Plaintiffs filed an Amended Complaint, which added sixteen additional Plaintiffs and putative Class representatives. The Plaintiffs' claims were brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") and 42 U.S.C. § 1981. Amtrak filed an answer to the Complaint denying the allegations and specifically denying any violation of law.

The Parties voluntarily entered into mediation in November 1998 in an effort to address, outside of the courtroom, the concerns raised by Plaintiffs and to avoid litigation costs. While formal discovery has not been completed, the Parties have taken sufficient discovery, and have voluntarily exchanged sufficient information, to assess the relative merits of the systemic claims of the Plaintiffs and the putative Class, and of Amtrak's defenses. After several months of mediation and negotiation, the Parties reached an agreement-in-principle on July 1, 1999, the terms of which are incorporated in and superseded by this Consent Decree.

2

implemented or begun to implement many of the items of equitable relief provided.  The

Decree and the agreements contained in it shall continue to be effective and binding on the

Parties and their agents and successors for a four-year period from the Injunctive Effective

Date, unless extended or terminated earlier pursuant to the terms of Parts IV.A.1 or IX.  The

releases and bars on claims shall survive the Decree.

### D.    **Persons Covered By Decree**

#### 1.    **Definition of Class**

Pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3), the Parties stipulate

to the certification of the following Class composed of all Named Plaintiffs and black persons

who, at any time between January 1, 1995 and September 30, 1999:

> Have been employed by Amtrak in positions, not on the Amtrak Management
> Committee, and not subject to a collective bargaining agreement ("CBA"),
> ("Management positions"); and/or have applied and been rejected by Amtrak
> for Management positions, including Internal Applicants and External
> Applicants.

#### 2.    **Opt Out**

If this Decree is approved by the Court, all persons within the Class are bound by its

terms, except that Class Members, other than Named Plaintiffs, who have elected to opt out of

the Class and the settlement described herein following and on Court approval.  Class

Members who elect to opt out must do so in writing no later than the date specified in the

notice provisions contained herein.  Elections to opt out must be submitted pursuant to the

procedure set forth in the Notice and must be approved by the Court.  If more than ten (10)

Class Members are permitted to opt out of this Decree, Amtrak may withdraw from this

9

**B .    CLAIMS FILING PROCEDURES FOR SETTLEMENT OF
CLAIMS OF PLAINTIFFS AND CLASS MEMBERS**

Following preliminary approval of the Decree, Class Counsel was obligated to mail a

Claim Form to every known Class Member at his/her last known address, if available.  Class

Counsel also has been obligated to make Claim Forms available to other Class Members at their

request.

The signed Claim Forms submitted in accordance with the procedures set forth on the

Claim Form to the Administrators by Class Members as defined in the Decree, Section III.A &

D, and, including named Plaintiffs, and postmarked or hand delivered by October 29, 1999, shall

be processed and reviewed by the Administrators.  The Administrators shall recommend

monetary awards from the Fund to the Court under seal, with a copy to outside counsel for

Amtrak.  Underlying Claim Forms prepared by Class Members may be provided to Amtrak only

if so ordered by the Court, or by consent of Class Counsel, to Amtrak's outside counsel.

In order to promote both fairness and efficiency, each Claim will be awarded points after

review and after such verification as the Administrators deem appropriate of the information

provided on the Claim Form.  Verification may include. among other things, checking the

relevant information on computerized databases maintained by the Administrators and

Claimants' tax returns.  The details of the point system to be applied shall be provided to

Amtrak, and are subject to Court approval on recommendation by Class Counsel after Claims are

received.  The point system shall be applied uniformly, will not be discretionary after approval

and may be amended only by Court Order.  The total points awarded to all Claimants will be

aggregated, and each Claimant's proportionate share of the total points will be determined.  The

46

Claimant shall then be allocated a commensurate proportion of the Claims Fund. Subject to Court approval, a Claimant may be required to obtain a minimum number of points to qualify for a monetary award. All monetary awards shall be subject to the review and approval of the Court before disbursement. All Class Members receiving awards will be required to keep the amount of the awards confidential from everyone except Class Counsel, or any attorney, tax or financial advisor representing them or members of their immediate family.

Points will be awarded to Plaintiffs and Class Members who qualify as Management employees, based on such factors as: (1) length of service with Amtrak; (2) strength of Claim and amount of damages from alleged denial of advancement opportunity (Claims based on initial assignment, promotion and transfer decisions); (3) strength of Claim and amount of damages from alleged denial of compensation (Claims based on disparities in pay); (4) strength of Claim and amount of damages from discipline imposed (Claims based on suspension or termination decisions); (5) strength of Claim and amount of damages from alleged racially offensive conduct or language; and (6) contributions to the prosecution of the litigation. Claimed losses resulting from alleged unfair performance appraisals, inadequate training, or disciplinary action less than suspension or termination will be treated as losses flowing from any resulting personnel actions such as lost promotions. Points will be awarded to applicants for Management positions based on such factors as: (1) pay grade of job sought; (2) demonstrated suitability and/or qualification for the job sought; (3) contribution to the prosecution of the litigation; and (4) strength of Claim. However, External Applicants shall in no circumstance receive more than ten thousand dollars ($10,000) from the Fund. The Administrators may award additional points to Claimants who

47

supply corroborating documentation for their losses.

Awards shall be made from the Claims Portion of each installment paid by Amtrak to the Fund. The awards made to Plaintiffs and Class members from the first installment shall be deemed 27% compensatory, 53% backpay, and 20% pre-judgment interest. The awards made to Plaintiffs and the Class Members from the second installment shall be deemed 25% compensatory, 50% backpay, and 25% pre-judgment interest. No award paid to any Plaintiff or Class Member pursuant to the Decree shall be taken into account in determining the amount of or eligibility for any pension, retirement, or other benefits from Amtrak.

However, any Class Member who released any of his/her Claims that would otherwise be covered by this Decree, or obtained a final judicial determination of any of his/her Claims that would otherwise be covered by this Decree, is not eligible to receive an award from the Fund for those Claims under these procedures.

VI.    **JOB RELIEF**

    A.    **ASSERTIONS OF CLAIMS FOR JOB RELIEF**

Plaintiffs and Class Members shall be entitled to assert claims for specific Job Relief as defined below, and shall be awarded such relief as the Parties may agree to. In the event the Parties are unable to agree to resolve any such claims, the Plaintiffs or Class Members shall be entitled to mediate, and thereafter to arbitrate, their claims for Job Relief in accordance with the procedures set forth below. The Job Relief Process is interrelated with the monetary awards procedure in that participants in the Job Relief Process shall receive reduced monetary awards as set forth below. A negative arbitration ruling controlling a participant's claim, however, shall

48

not affect that person's right to accumulate points relating to other types of claims in the Claims Resolution Process set forth in Section V.B.

### 1.    Limitations on Individual Participation

In order to participate in the Job Relief Process, Job Relief Claims must:  (a) involve discrimination in hiring, promotion, demotion or termination; (b) entail a demonstrable increase in the Claimant's current annual salary of at least five thousand dollars ($5,000); and (c) if a hiring claim, be submitted by an Internal Applicant rather than an External Applicant.

### 2.    Consultation Period and Voidability of Settlement

Class Counsel shall have thirty (30) days following the deadline for filing Claim and Job Relief Election Forms (the "Claims Consultation Period") to evaluate the Eligible Job Claims and, consistent with their attorney-client obligations, counsel persons filing Job Relief Election Forms concerning the strength of their Job Relief and monetary claims and the desirability of pursuing the former.

Within 10 days of the Consultation Period described in Section VII(A)(2) above, Class Counsel shall notify Amtrak of the number of Class Members who have chosen to participate in the Job Relief process under this Decree.  If more than 45 Class Members have elected to participate in the Job Relief process, Amtrak may, within fifteen days of receiving such notice, withdraw from this Decree and declare the Settlement null and void.

### 3.    Reduction in Monetary Relief

Job Relief Claimants shall have deducted from their monetary claim, if any, all points allocated to the claim for which Job Relief is sought, plus twenty-five percent (25%) of all points

49

allocated for other claims under the procedure set forth in Administrative Order No. 1.

### B.    JOB RELIEF PROCEDURES

#### 1.    Negotiation

Within ten (10) days after the Consultation Period, Class Counsel shall notify Amtrak of all individuals seeking Job Relief and the nature of their claims.  Thereafter, Class Counsel and counsel for Amtrak shall consult to discern which claims are susceptible to resolution through negotiation.  Within thirty (30) days thereafter, Amtrak and Class Counsel shall attempt negotiation of each such claim.

#### 2.    Mediation

If unsupervised negotiation of a claim does not succeed within sixty (60) days after the expiration of the Claims Consultation Period, or is deemed unlikely to succeed by either Party at any time following thirty (30) days after the expiration of the Claims Consultation Period, the claim shall proceed to mediation.  Amtrak shall pay all reasonable fees and costs of the mediator, which shall be ADR Associates or, in the event of unavailability, a mutually selected substitute. Each side shall pay its own fees and costs, with the fees and costs of Class Counsel paid from the Monitoring Fund.

#### 3.    Arbitration

If one of the Parties determines after one or more mediation sessions that the mediation is unlikely to be fruitful, or if the mediator concludes at any time that mediation is unlikely to be fruitful, the claim shall proceed to arbitration.  Amtrak shall pay all reasonable fees and costs of the arbitrator, which shall be a principal of ADR Associates who did not conduct any of the

mediation sessions, or in the event of unavailability, a mutually selected substitute. Each side shall pay its own fees and costs, with the fees and costs of Class Counsel paid from the Monitoring Fund.

### (a) **Hearings**

An arbitration hearing on each such claim shall be set for an agreed date no later than one hundred eighty (180) days after the expiration of the Claims Consultation Period. The location of the hearing shall be by agreement of counsel. If no agreement is reached, location shall be determined by the arbitrator on consideration of location of documents, witnesses, and other factors concerning relative convenience to the Parties. Each side shall be entitled to present testimony and other evidence and argument for a maximum of four (4) hours per side. The arbitrator may grant additional time at his or her discretion, particularly when a Party's time has been consumed inordinately by objections, legal argument or uncooperative adverse witnesses. Following the hearing, the arbitrator shall render a written decision stating the result reached. Copies of the decision shall be sent to the Parties.

### (b) **Evidence**

The Federal Rules of Evidence shall control in determining admissibility of evidence, except as set forth below. Requirements for establishing foundation and authenticity of documentary evidence, and hearsay objections to documentary evidence (although not double hearsay objections), are waived, although such considerations may be considered by the arbitrator in determining the weight of the evidence. Written and notarized statements from persons who are not currently Amtrak employees, and prior deposition testimony from persons

51

1-WA:1236256.2

who are not currently Amtrak employees, may be admitted into evidence for any purpose at the discretion of the arbitrator and giving weight to the fact that the individual is not available for cross-examination. Oral testimony shall be under oath. The arbitrator may request either Party to submit additional written or documentary information that the arbitrator considers necessary to reach a correct result. The arbitrator shall determine whether to request written briefs or memoranda prior to the hearing, following the hearing, and/or with respect to any issues raised during the hearing.

(c)    **Pre-hearing production of evidence**

At least sixty (60) days before the arbitration, Class Counsel shall describe the specific Job Relief to be arbitrated and provide a written summary to Amtrak's counsel of why they contend the request meets the standards for favorable decision set forth in subsection (d) below. There shall be no depositions taken in connection with these arbitration proceedings. However, no later than thirty (30) days before the hearing, the Parties may by letter request from each other the production of specific, clearly defined relevant documents or information. Responsive documents or information shall be supplied within fifteen (15) days. At least ten (10) days prior to the hearing, counsel shall exchange the documents that they plan to use as exhibits at the hearing. No document may be used in any fashion in the arbitration if it has not been supplied to the other Party. No witness may be called at the hearing unless his/her name has been supplied to the other Party at least five (5) working days prior to the hearing. If a witness is currently an Amtrak employee, Amtrak shall make him or her available to testify at the hearing at no cost to the Job Relief Claimant. In the event the Parties are unable to resolve

52

any disputes about the production of documents or information, they shall jointly confer with the arbitrator by telephone or in person to seek a resolution. In resolving any such disputes, the arbitrator's determination shall be guided by the principle of providing both Parties with a fair opportunity to present their respective positions and to respond to the other's presentation.

(d)    <u>Standards for decisions</u>

If the Job Relief Claimant proves by a preponderance of the evidence that the Job Relief requested is necessary to make him or her whole from conduct that was the result of race discrimination, such Claimant shall be entitled to an award of Job Relief. The arbitrator may seek additional information from the Parties about the nature of adequate or available Job Relief.

## C.    DEFINITION OF JOB RELIEF

"Job Relief," as that term is used herein, includes a prospective remedial change in a person's job title, including a promotion, transfer, hiring or reinstatement. Job Relief may not include any request for monetary relief, including front or back pay, but may include a prospective change in pay rate. Unless the arbitrator decides otherwise, a successful Job Relief Claimant shall be entitled to the rate associated with the new position as of the date of the ruling establishing his or her right to relief, even if he or she is not placed into the new position until some time in the future, for example, until the position becomes vacant

## VII.    NOTICE

Prior to final approval of this Decree, and pursuant to Court Order, Class Counsel has provided mailed and published notice of the Settlement, the fairness hearing, and other matters. The costs of Published Notice shall be borne by Amtrak. The cost of postage for and

53

®₄JS 44 (Rev. 11/04)

CIVIL COVER SHEET

0 6 - 6 8

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a)   PLAINTIFFS**

**ALVIA LACY**

(b)   County of Residence of First Listed Plaintiff       Harford, MD
(EXCEPT IN U.S. PLAINTIFF CASES)

(c)   Attorney's (Firm Name, Address, and Telephone Number)

**DEFENDANTS**

**NATIONAL RAILROAD PASSENGER CORPORATION**

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

**II. BASIS OF JURISDICTION**   (Place an "X" in One Box Only)

☐ 1   U.S. Government
        Plaintiff

☒ 3   Federal Question
        (U.S. Government Not a Party)

☐ 2   U.S. Government
        Defendant

☐ 4   Diversity
        (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**(Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                    and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT**   (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☒ 440 Other Civil Rights | | | | |

**V. ORIGIN**   (Place an "X" in One Box Only)

☒ 1  Original Proceeding    ☐ 2  Removed from State Court    ☐ 3  Remanded from Appellate Court    ☐ 4  Reinstated or Reopened    ☐ 5  Transferred from another district (specify)    ☐ 6  Multidistrict Litigation    ☐ 7  Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
TITLE VII OF THE CIVIL RIGHTS ACT OF 1964  42 U.S.C. §2000e-5
Brief description of cause:
DISCRIMINATION, FAILURE TO PROMOTE PLAINTIFF, HOSTILE WORK ENV.

**VII. REQUESTED IN COMPLAINT:**    ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $    CHECK YES only if demanded in complaint:
JURY DEMAND:    ☐ Yes    ☒ No

**VIII. RELATED CASE(S) IF ANY**    (See instructions):    JUDGE    DOCKET NUMBER

DATE    2/1/06    SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE