## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ALVIA LACY,                                  *

        Plaintiff,                          *

v.                                           *      Civil Action No.: 1:06-cv-00068-JJF

NATIONAL RAILROAD PASSENGER              *
CORPORATION ("AMTRAK"),
                                             *
        Defendant.
                                             *

    *    *    *    *    *    *    *    *    *    *

## DEFENDANT'S OPENING BRIEF IN SUPPORT OF
## ITS MOTION FOR SUMMARY JUDGMENT


Virginia A. Zrake (Del. Bar No. 4054)
LAW OFFICE OF VIRGINIA A. ZRAKE, LLC
Northern Steel Business Center
34382 Carpenters Way
P.O. Box 247
Lewes, Delaware  19958
Tel: (302) 644-6770

Darrell R. VanDeusen (admitted *Pro Hac Vice*)
Clifton R. Gray (admitted *Pro Hac Vice*)
KOLLMAN & SAUCIER, P.A.
The Business Law Building
1823 York Road
Timonium, Maryland  21093
Tel: (410) 727-4300

*Counsel for Defendant*
*National Railroad Passenger Corporation*

DATED:  December 7, 2006

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

I.      NATURE AND STAGE OF PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.    STATEMENT OF UNDISPUTED FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        A.      BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        B.      PROMOTION CLAIMS AT ISSUE IN THIS LAWSUIT . . . . . . . . . . . 5

                1.      The Management Promotion Process At Amtrak  . . . . . . . . . . . . 6

                2.      Selection Decisions Challenged By Lacy  . . . . . . . . . . . . . . . . . . 8

        C.      LACY'S CLAIMS REGARDING THE BEAR FACILITY . . . . . . . . . 15

                1.      Lacy's Allegation Of Hostile Work Environment . . . . . . . . . . . 15

                        a.      The "F.O.A.D." Incident . . . . . . . . . . . . . . . . . . . . . . . 16
                        b.      The Pipefitter Incident . . . . . . . . . . . . . . . . . . . . . . . . 16
                        c.      The Attendance Incident  . . . . . . . . . . . . . . . . . . . . . . 18

                2.      Lacy's Allegation Of Retaliation . . . . . . . . . . . . . . . . . . . . . . . 19

                3.      Lacy's Interpersonal Conflicts . . . . . . . . . . . . . . . . . . . . . . . . . 19

IV.     ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

        A.      SUMMARY JUDGMENT STANDARD  . . . . . . . . . . . . . . . . . . . . . . . 20

        B.      ONLY THOSE ALLEGATIONS OF INCIDENTS AFTER
                MAY 8, 2004 ARE PROPERLY BEFORE THE COURT . . . . . . . . . . 21

        C.      AMTRAK IS ENTITLED TO SUMMARY JUDGMENT ON
                PLAINTIFF'S FAILURE TO PROMOTE CLAIM  . . . . . . . . . . . . . . . 24

1.    Lacy Cannot Establish A *Prima Facie* Case ................ 24

    a.    Lacy Was Unqualified For The Positions
To Which She Applied ........................... 25

    b.    There Are No Circumstances That Give Rise
To An Inference Of Unlawful Discrimination ........ 26

2.    Even If Lacy Could Establish A *Prima Facie* Case,
Amtrak Has Legitimate, Non-Discriminatory Reasons
For Choosing Others For Promotion And Not Lacy ......... 27

D.    AMTRAK IS ENTITLED TO SUMMARY JUDGMENT ON
PLAINTIFF'S HOSTILE WORK ENVIRONMENT OR
RETALIATION CLAIM ..................................... 28

1.    Lacy Cannot Establish A *Prima Facie* Case Of
Hostile Work Environment ........................... 28

    a.    There Is No Evidence, Only Lacy's Unsupported
Speculation, That Any Of The Alleged Acts Creating
A Hostile Work Environment Were Related To Any
Protected Characteristic .......................... 29

    b.    Even If Lacy Suffered Intentional Discrimination,
It Was Not Sufficiently Pervasive Or Regular To
Establish A *Prima Facie* Case .................... 31

2.    Lacy Cannot Establish A *Prima Facie* Case Of Retaliation .... 32

V.    <u>CONCLUSION</u> ............................................... 33

**TABLE OF AUTHORITIES**

<u>CASES</u>                                                                                  <u>PAGE</u>

*Anderson v. Liberty Lobby, Inc.*,
        477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Andrews v. City of Philadelphia*,
        895 F.2d 1469 (3d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Arasteh v. MBNA America Bank, N.A.*,
        146 F. Supp. 2d 476 (D. Del. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Beckett v. Dep't of Corrections of the State of Delaware*,
        981 F. Supp. 2d 319 (D. Del. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Brewer v. Quaker State Oil Ref. Corp.*,
        72 F.3d 326 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Burlington Northern and Santa Fe Ry. Co. v. White*,
        126 S. Ct. 2405 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Celotex Corp. v. Catrett*,
        477 U.S. 317 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Davis v. Town of Lake Park, Florida*,
        245 F.3d 1232 (11th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Dorsey v. Pittsburgh Assocs.*,
        90 Fed. Appx. 636 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Drill v. Bethlehem-Center School Dist.*,
        2006 WL 1159457 (W.D. Pa. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Dungee v. Northeast Foods, Inc.*,
        940 F. Supp. 682 (D.N.J. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Edwards v. Joe Cullipher Chrysler-Plymouth, Inc.*,
        1990 WL 484147 (E.D.N.C. 1990), *aff'd*, 932 F.2d 963 (4th Cir. 1991) . . . . . . 25

*Ferguson v. E.I. DuPont de Nemours and Co.*,
        560 F. Supp. 1172 (D. Del. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Gomez v. Allegheny Health Services, Inc.*,

71 F.3d 1079 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Hankins v. Temple University*,
    829 F.2d 437 (3d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Hargrave v. County of Atlantic*,
    262 F. Supp.2d 393 (D.N.J. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Hoff v. County of Erie*,
    1981 WL 308 (W.D.N.Y. 1981), *aff'd*, 697 F.2d 291 (2d Cir. 1982) . . . . . . . . 26

*Jefferies v. Harris County Community Action Association*,
    693 F.2d 589 (5th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Kidd v. MBNA America Bank, N.A.*,
    224 F. Supp.2d 807 (D. Del. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Krouse v. American Sterilizer Co.*,
    126 F.3d 494 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Kunin v. Sears Roebuck & Co.*,
    175 F.3d 289 (3d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Lombardi v. Cosgrove*,
    7 F. Supp.2d 481 (D.N.J. 1997), *aff'd*, 216 F.3d 1076 (3d Cir. 2000) . . . . . . . 30

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Moore v. City of Philadelphia*,
    461 F.3d 331 (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*National Railroad Passenger Corp. v. Morgan*,
    536 U.S. 101 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*O'Connor v. City of Newark*,
   440 F.3d 125 (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Paris v. Christiana Care Visiting Nurse Ass'n*,
   197 F. Supp.2d 111 (D. Del. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Persinger v. Delmar School Dist.*,
   2004 WL 1534746 (D. Del. July 8, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Pinckney v. Northampton County*,
   512 F. Supp. 989 (E.D. Pa. 1981), *aff'd*, 681 F.2d 808 (3d Cir. 1982) . . . . . . . 26

*Pittman v. Continental Airlines, Inc.*,
   35 F. Supp.2d 434 (E.D. Pa. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Pivirotto v. Innovative Sys. Inc.*,
   191 F.3d 344 (3d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Revis v. Slocomb Indus.*,
   814 F. Supp. 1209 (D. Del. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Rhodes v. Guiberson Oil Tools*,
   75 F.3d 989 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Riley v. Delaware River and Bay Authority*,
   ___ F. Supp.2d ____ (D. Del. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Sarullo v. United States Postal Servs.*,
   352 F.3d 789 (3d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Seldomridge v. Uni-Marts, Inc.*,
   2001 WL 771011 (D. Del. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Texas Dep't of Community Affairs v. Burdine*,
   450 U.S. 248 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Verdin v. Weeks Marine, Inc.*,
   124 Fed. Appx. 92 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Wajda v. The Penn Mutual Life Insurance Co.*,
   528 F. Supp. 548 (E.D. Pa. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Walker v. Pepsi-Cola Bottling Co.*,
 2000 WL 1251906 (D. Del. August 10, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Washington v. Autozoners, Inc.*,
 452 F. Supp.2d 546 (D. Del. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*West v. Philadelphia Elec. Co.*,
 45 F.3d 744 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

*Weston v. Pennsylvania*,
 251 F.3d 420 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

## <u>STATUTES</u>

42 U.S.C.. § 2000e-5(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## I.   NATURE AND STAGE OF PROCEEDINGS

In this Title VII lawsuit, *pro se* plaintiff Alvia Lacy alleges that she was denied promotion to a number of management positions at the Defendant National Railroad Passenger Corporation ("Amtrak") because she is an African-American female. Lacy also alleges that she was subjected to a hostile working environment at Amtrak's Bear, Delaware facility because of her race and sex, and in retaliation for complaints of discrimination filed years earlier.[1]

Lacy's scattershot claims fail for a variety of reasons. The vast majority of her allegations are time barred, as she dredges up long harbored assertions of perceived unfair treatment over the past ten years. With respect to her timely allegations, Lacy's deposition testimony established that she has repeatedly applied for management positions for which she is undisputedly unqualified. Lacy's deposition further established that the difficulties she claims to have encountered at the Bear facility arose from her interpersonal relationships, not her race, sex or any complaint about perceived discrimination. Discovery has concluded. Lacy has only her unsupported belief that she has been discriminated and retaliated against. Summary judgment in Amtrak's favor is appropriate.

## II.   SUMMARY OF ARGUMENT

A.   Lacy filed her charge of discrimination with the EEOC on March 4, 2005. Delaware is a deferral state and Lacy can challenge only those events in the 300 days

---

[1]Lacy is a frequent litigator of claims against Amtrak. *See Lacy v. NRPC*, 1:90-cv-02540-JHG (D.D.C. 1990); *Lacy v. NRPC*, 1:92-cv-00449-MMS (D. Del. 1992); *Lacy v. NRPC*, 2:92-cv-00403-JK (E.D. Pa. 1992); *Lacy v. NRPC*, 2:92-cv-04623-CRW (E.D. Pa. 1992); *Lacy v. NRPC*, 1:93-cv-03853-FNS (D. Md. 1993); *Lacy v. Amtrak*, 1:97-cv-02031-JFM (D. Md. 1997); *Lacy v. NRPC*, 2:99-cv-03529-JW (E.D. Pa. 1999).

preceding March 4.  Her only timely allegations, therefore, concern those events that

occurred between May 8, 2004 and March 4, 2005.

B.     Lacy's promotion claims fail as a matter of law because she cannot establish a

*prima facie* case of discrimination.  Specifically, Lacy cannot demonstrate that she was

qualified for any of the positions for which she applied and that are properly before the

Court.  Several of the promotions were awarded to other employees who, like Lacy, are

African-American and/or female.  In addition, Amtrak has legitimate non-discriminatory

reasons for selecting the successful applicants that are not pretextual.

C.     Lacy's claims regarding a hostile work environment and retaliation in the three

timely incidents at the Bear facility fail as a matter of law because she cannot establish a

*prima facie* case.  Moreover, these three discrete events were not pervasive.  Lacy

testified that she does not believe one of these incidents had anything to do with her race

or sex, nor can she establish that those involved knew of her prior complaint of

discrimination.

### III.    STATEMENT OF UNDISPUTED FACTS

**A.     BACKGROUND.**[2]

Amtrak operates passenger trains throughout the United States, with its

main office located in Washington, D.C.   This case involves Lacy's employment at

Amtrak's Bear, Delaware maintenance facility and her efforts to obtain promotion to a

management position at another Amtrak location.  Lacy was hired in 1983 and initially

---

[2]As explained below in Section IV.B, any allegations raised by Lacy challenging events
prior to May 8, 2004 are time barred.  This factual background is provided to place Lacy's
claims in context.

worked at Amtrak's Perryville, Maryland facility as a "Trackman," where she maintained and repaired railroad tracks.  (A291; Pl. Dep. at A16-18.)[3]  While working in Perryville, Lacy graduated from the University of Maryland with a bachelor's degree in Business Administration.  (Pl. Dep. at A60.)  It is her possession of a college degree that Lacy contends qualifies her for promotion to a management position.  (Pl. Dep. at A183.)

In 1988, Lacy transferred to a "Car Repair" position at the Bear facility, where she remains employed today.  (A292-93; Pl. Dep. at A18.)  As its name suggests, Car Repair involves the maintenance and repair of Amtrak's fleet of railroad cars.  (Pl. Dep. at A20.)  As a Car Repair person, Lacy is a member of a union and subject to the terms of the collective bargaining agreement between her union and Amtrak.  (Pl. Dep. at A19, 28.)

After approximately ten years in Car Repair, in 1998 Lacy was selected for training as a Foreman II.  (A294.)  As a Foreman II, Lacy would be still be a union employee but would enjoy limited supervisory authority over other Car Repair employees.  There was a 90 day training period to learn the new job's responsibilities.  (Pl. Dep. at A82.)  During this time, Lacy was required to report to work with sufficient time to enable a smooth turnover of duties to her from the foreman on the earlier shift.  (A295.)  Lacy refused to get to work with time to accomplish this transition, even after counseling from her General Foreman about this essential requirement.  (A295.)  Beyond

---

[3]Given her *pro se* status, Lacy's entire deposition is included in Amtrak's Appendix to this Opening Brief in Support of Defendant National Railroad Passenger Corporation's Motion for Summary Judgment and is referred to as "Pl. Dep. at A __."  Pertinent documents and affidavits are included in Amtrak's Appendix and are referred to as "A __."  All documents submitted as exhibits in Amtrak's Appendix are kept in the ordinary course of business.  (A280.)

this, Lacy became abrasive and uncooperative, ignoring directions and failing to follow instructions. (A296.) These difficulties led to Lacy being removed from the Foreman II training program after about two months, and she was returned to her Car Repair position. (A297.)

Lacy claimed that her removal from the Foreman II training program was discriminatory, despite the fact that another African-American female, Delisa Maldonado, was selected to complete the program. (Pl. Dep. at A158.)[4] Lacy sued Amtrak in the United States District Court for the Eastern District of Pennsylvania alleging discrimination. *Lacy v. NRPC*, 2:99-cv-03529-JW (E.D. Pa. 1999). On Amtrak's motion, the case was dismissed. Lacy was already a member of a class action filed by Amtrak employees in the United States District Court for the District of Columbia alleging race discrimination in promotions, *McLaurin v. National Railroad Passenger Corp.*, 1:98-cv-2019-EGS (D.D.C. 1998). (A434-35.)

The *McLaurin* class action was settled by Amtrak in 1999. Class members were given the option of a monetary settlement or possible "job relief" to an available position for which the class member was qualified by December 31, 2003. (A436.) Lacy sought job relief. (Pl. Dep. at A40, 79.) To obtain this relief, Lacy should have worked with the *McLaurin* plaintiffs' class counsel to choose a management position for which she was qualified. She did not. Instead, she first sought a promotion to management positions for which she was not qualified and then simply stopped looking. (A438.) After the *McLaurin* consent decree ended on December 31, 2003, she

---

[4]Ms. Maldonado remains as Lacy's foreman today. (Pl. Dep. at A32.)

asked the *McLaurin* plaintiffs' lawyers why she had not been promoted.  (A436; Pl. Dep.

at A74-75.)  The response she received stated in part:

> You informed me during our telephone conversation last
> week that you were not interested in lower level
> management positions if they paid less than you were
> making in the unionized position.  That makes good
> economic sense from your point of view.  However, the
> positions that you identified gave us little bargaining
> leverage with Amtrak.

*  *  *

> Sometime in spring 2001, you may have become frustrated.
> . . .  The job relief process ground to a halt.  Even if it had
> continued, however, I doubt that we would have been able
> to find a job for you as long as you were willing to consider
> only management positions that paid as much or more than
> you were making in your bargaining unit position.

(A438.)  Simply put, when offered the opportunity to move to management, Lacy was

unwilling to take the steps necessary to move up the ranks rung by rung -- she wanted to

climb multiple rungs at a time.

**B.    PROMOTION CLAIMS AT ISSUE IN THIS LAWSUIT.**

Having failed to obtain a management position she wanted through the

*McLaurin* settlement, Lacy began to apply for nearly any higher level management

position between Philadelphia and Washington, D.C.  She alleges that she applied for at

least thirty management positions between November, 2003 and March 4, 2005 (the date

she filed her discrimination charge with the EEOC).  (A440.)  In her Answers to

Interrogatories, Lacy states that she is challenging ten of these decisions.  (D.I. 14 at 11.)

Of these ten, five decisions were made before May 8, 2004 and are therefore untimely.

Lacy alleges that she was not selected for these positions because she is an

African-American female.  (D.I. 2 at 4.)  The undisputed facts, however, establish that

Amtrak makes promotion decisions without regard to race or sex.  (A283, 286.)  The

facts further demonstrate that Lacy has applied for positions for which she is clearly not

qualified.  Lacy seeks to use her college degree as a trump card that, she claims,

supercedes all other requirements for the job.  Beyond this fundamental misconception of

the significance of her degree, Lacy testified that, regardless of their relative

qualifications, if a white male is selected over her, she views it as discrimination:

> Q:    Now, if the person selected for the position that you
>       apply happens to be a white male, okay - - are you
>       with me? --
>
> A:    Yes.
>
> Q:    - - do you believe that the fact the individual
>       selected is a white male alone demonstrates
>       discrimination?
>
> A:    Yes, yes.  I'm going to say yes, yes.

(Pl. Dep. at A238.)

### 1.    The Management Promotion Process At Amtrak.

The procedure for promotions into and within management ranks at

Amtrak is straightforward.  When a job opening occurs, it is posted and available to all

Amtrak employees on the Company's internal website.  (A283, 286.)  This posting

includes information about the job's title, salary range and duties, as well as the

educational and work experience requirements for the position.  *Id.*

An employee who wants to be considered for the promotion submits a Job Opportunity Application (JOA) online, by mail or fax directly to Amtrak's Human Resources Department. *Id.* In this case, Lacy applied for positions that were available between Washington, D.C. and Philadelphia and her applications were reviewed by Human Resources personnel in those offices. In Washington, D.C., either Sarah Ray (African-American female), Taylor Cannon (African-American male) or Levar Freeman (African-American male) reviewed Lacy's applications; in Philadelphia, either Patricia Kerins (white female), Rosalyn Collins (African-American female), Maureen Phelan (white female), Paul Woodford (white male), or Irene Whitaker (white female) reviewed Lacy's applications. (A283-84, 286-87.) Lacy testified that she likes Human Resources employees, referring to them as "Good People. Good People. Fair People." (Pl. Dep. at A243.) She does not believe Human Resources employees have discriminated against her in the selection process. (Pl. Dep. at A94-97.)

Once the application period has expired, Human Resources personnel review the applications against the education and work experience requirements listed on the JOA. (A283, 286.) If Human Resources finds that an applicant does not have the posted requirements, the application is marked "Unqualified" by Human Resources and receives no further consideration. *Id.*

Of the applicants who meet the minimum requirements, those with "the best combination of current skills and past job performance will be invited to interview for available positions." *Id.* The interview is generally conducted before a panel of representatives from Human Resources and the Department in which the position is

located (*e.g.*, the Transportation Department or Engineering Department).  *Id.*  Following these interviews the panel selects the qualified candidate that it believes best meets the needs of Amtrak.  *Id.*

Lacy explained in deposition that she maintains completed and photocopied JOAs available to submit for various positions rather than fill a new one out each time she applies for a position.  (Pl. Dep A.189-94.)  Although she could submit additional information to supplement the JOA, Lacy has not done so, testifying that Human Resources personnel "know who I am.  I have interviewed in Washington, I have interviewed in Phillie, so they know me.  So it's really not that -- *it's no big deal about what kind of background I have, what I can do, what my qualifications are . . . .*"  (Pl. Dep. at A193) (emphasis added).

### 2.    Selection Decisions Challenged By Lacy.

Lacy claims that she cannot understand why she is not qualified for a promotion to a management position at Amtrak since she has a college degree and has worked for the company for over 20 years.  (Pl. Dep. at A173-74.)  Put bluntly, Lacy believes that Amtrak should disregard the experience requirements of a particular posting, and give her the position because she has a college degree.

For example, when asked if she had familiarity with Amtrak's various union operating agreements -- an essential experience requirement for the Director of Crew Management Services for which she had applied -- Lacy testified that she did not.  (Pl. Dep. at A180-81.)  Then asked why she thought she was qualified for the position, Lacy testified:

> I probably was basing it on the fact that I had a bachelor's
> degree, and I knew that there had been other positions
> where I'm sure – I'm going to say I'm sure there's other
> positions that a candidate did not have all the experience
> they were requesting and may have been promoted to
> positions.  So even though I did not have the BLE and UTU
> operating agreement knowledge, I probably said let me put
> it in, and maybe this would be one of those where they'd
> flip a coin.

(Pl. Dep. at A183-84.)  Coin-flipping, of course, is not a part of Amtrak's selection

process.  The ten selection decisions challenged by Lacy are discussed below.  Five of

these claims are time barred, as the decisions were made before May 8, 2004.  Regardless

of their timeliness, however, the undisputed facts show that Lacy was not qualified for

any of these positions.

**Human Resources Officer (#50121016)** (posted on March 3, 2004).

Experience required:  applicant "Must have some human resources experience including

recruiting/staffing and EEO/AA compliance."  (A300.)  Lacy applied on March 9, 2004.

(A303-04.)  Her application reflected no human resources experience and she was

deemed unqualified by Human Resources.  *Id.*  Asked in deposition whether she had any

"human resources experience," Lacy answered "No" but stated that she felt she had

gained some human resource experience as a result of her many lawsuits against Amtrak.

(Pl. Dep. at A205-06.)  On May 3, 2004, an African-American male with human

resources and job recruitment experience was selected for the position.  (A301.)  Lacy's

challenge to this decision is time barred.

**Engineer Road Maintenance Services (#50146328)** (posted on

September 3, 2004).  The posting stated that applicants have a "Bachelor's Degree in

-9-

Engineering or the equivalent combination of education, training and/or experience."
(A305.)  Lacy applied on September 16, 2004.  (A315-16.)  Her application reflected no
background in Engineering, and she was deemed unqualified by Human Resources.  *Id.*
Lacy testified that she only applied for the Engineer Road Maintenance Services position
because she received "positive reviews" for a position she applied for in the Engineering
Department ten years earlier.  (Pl. Dep. at A228.)  On November 3, 2004, a white male
who had completed 4 of 5 years toward a Bachelor's Degree in Engineering from Drexel
University and had more than 25 years of experience in engineering and construction was
selected for the position.  (A307-14.)

    **Field Environmental Specialist (#50146672)** (posted on September 8,
2004).  Experience required:  applicants have "some environmental compliance or related
experience."  (A317.)  Lacy applied on September 16, 2004.  (A333-34.)  Her application
reflected no environmental compliance or related experience and she was deemed
unqualified by Human Resources.  (A331, 333-34.)  Asked in deposition whether she had
"environmental compliance or related experience," Lacy replied that, although this was
not included on her application, she had worked for the "U.S. Army Environmental
Hygiene Agency" while in high school in the mid-1970s, and that she practiced
environmental compliance by knowing "you can't throw aerosol cans in the dumpster."
(Pl. Dep. at A238-40.)  On October 8, 2004, a white male was selected to fill the position
of Field Environmental Specialist.  (A319.)  In the "Candidate Selection Justification"
form, it was noted that the chosen applicant "possesses all the skills required to perform
the duties associated with the Field Environmental Specialist position.  He has extensive

experience in the environmental fields, including the management of environmental projects, audits, spill prevention and storm water plans." (A321.)

**Administrator Support Specialist (#50183697)** (posted on October 7, 2004). Experience required: applicants have "demonstrated experience and understanding of mainframe and PC operating systems, communications and business applications." (A335.) The successful applicant would be responsible for monitoring construction project costs using cost monitoring and performance measuring systems. *Id.* Lacy applied on October 26, 2004. (A347-48.) Her application reflected no demonstrated experience in computer operating systems, communication and business applications and she was deemed unqualified by Human Resources. *Id.* On November 2, 2004, a white female was selected to fill the position of Administrator Support Specialist. (A337.) The "Candidate Selection Justification" form, noted that "Carlene's accounting background and experience was much stronger than the other candidates. Carlene also supports construction contract payment in the Accounts Payable department which has familiarized her with the entire process of auditing construction payments." (A340.)

**Senior Analyst Operating Practices (#50183713)** (posted on October 7, 2004). Experience required: applicant "must be currently or formerly qualified in T&E, Block Operator, Yardmaster or Train Dispatcher." (A349.) Lacy applied on October 26, 2004. (A365-66.) Human Resources determined that Lacy was unqualified for the position. (A364.) Asked in deposition whether she was "[q]ualified in T and E, block

operator, yardmaster or train dispatcher," Lacy replied "No."  (Pl. Dep. at A248.)

Among the successful applicants were an African-American female and an African-

American male.  (A351-63.)

   **Administrative Inventory – High Speed (#50183771)** (posted October 7,

2004).  Experience required applicant have "experience in materials management,

production planning, lead times (internal and vendor), forecasting & distribution."

(A367.)  Lacy applied on October 13, 2004.  (A378-79.)  Her application reflected none

of this experience and she was deemed unqualified by Human Resources.  (A369, 378-

79.)  On November 2, 2004, a white male was selected to fill the position of

Administrative Inventory -- High Speed.  (A370.)  The "Candidate Selection

Justification" form notes that the selected applicant "has all of the skills necessary to not

only perform the duties of the job but to excel in this position.  He has an A.A. in

Business and a very thorough background in all aspects of material control to include a

solid background in material planning and forecasting which is crucial to this position.

He has also held positions as Lead Receiving Clerk, Inventory Control Lead and Lead

Clerk within Amtrak."  (A371.)

   **Inventory Services Officer (#50172570)** (posted on October 29, 2003).

Experience required:  applicant have "proven experience in Materials

Management/Inventory."  (A380.)  Lacy applied on November 6, 2003.  (A396-98.)  Her

application reflected none of this experience and she was deemed unqualified by Human

Resources.  *Id.*  On January 16, 2004, a white male was selected to fill one of the two

open positions.  (A381.)  The "Candidate Selection Justification" form noted that this

applicant "in our opinion is the best qualified candidate for the M/W Inventory Service

Officer position. Dennis brings years of experience in the handling of ET and C&S

material and capital ordering and is familiar with most of the personnel on the

Philadelphia staff." (A383.) On March 25, 2004, a white female, was selected to fill the

remaining open position. (A388.) In the "Candidate Selection Justification" form, it was

noted that the second chosen applicant "either meets or exceeds all job qualifications and

is the best candidate for this position. She has the most diversified purchasing and

inventory materials management background of any candidate that was interviewed. She

also has extensive knowledge of the AAMPS inventory system and also has 11 years of

experience in all aspects of purchasing functions as a Contracting Agent in the

Philadelphia Procurement Department." (A390.) Lacy's challenge to these decisions is

time-barred.

**Officer Transportation Support Services (#50173640)** (posted

November 11, 2003). Experience required: applicant have "demonstrated experience in

railroad operations. Extensive experience in railroad operations in a management

capacity, which is to include train operations, equipment utilization, project management,

contract management and Amtrak's financial system." (A399.) There is no evidence that

Lacy applied for the position and she could not substantiate that she did so. On January

6, 2004, an African-American male was selected to fill one of the two open positions.

(A401.) The "Candidate Selection Justification" form noted that he "was by far the most

qualified applicant and best interview. He worked in an almost identical position while

in the Engineering Department (although with somewhat less responsible duties). He

was the only individual who met all of the requirements of the position and will not require any training to begin working this position." (A402.) On March 15, 2004, an African-American female was selected to fill the remaining open position. (A403.) The "Candidate Selection Justification" form noted that she "was the most qualified applicant and interviewed well. She works in a similar position in the Finance Department (although with somewhat less responsible duties). She was one of two individuals who met all of the requirements of the position and will not require any training to begin working this position." (A404.) Lacy's challenge of these decisions is time barred.

**High Speed Rail Supervising Technician (#50175062)** (posted on January 16, 2004). The job posting stated that a candidate have "[s]ome Mechanical or Electrical Experience." (A405.) Lacy applied for the position on January 11, 2004. (A419-20.) Upon review of her application, Human Resources determined that Lacy was unqualified for the position. (A407, 419-20.) On March 18, 2004, a white male with experience as an electrician with locomotives was chosen for one of the three open positions. (A408-10.) On March 23, 2004, an African-American male with a Mechanical Engineering degree was chosen for the second open position. (A411-13.) On March 25, 2004, an African-American male with mechanical experience as a Foreman II at Amtrak was chosen for the remaining open position. (A414-18.) Lacy's challenge of this decision is time-barred.

**Director, Crew Management Services (#50124988)** (posted on January 7, 2004). Experience required: applicant have "demonstrated experience in environment involving T&E and/or OBS. Must be conversant with the BLE, UTU and ASWC

-14-

operating agreements.  Must be able to manage and motivate direct and indirect reports."
(A421.)  Lacy applied for the position on January 26, 2004.  (A432-33.)  Her application
reflected no experience with these operating agreements.  *Id.*  Human Resources
determined that Lacy was unqualified for the position (A423.)  Asked whether she had
"experience in OBS, on-board services, or are you conversant with those union
agreements," Lacy answered "No, I'm not." (Pl. Dep. at A180-81.)  On February 2, 2004,
a white female was selected to fill the position of Director, Crew Management Services.
(A424.)  In the "Candidate Selection Justification" form, it notes that she was "the most
qualified candidate.  Terry is an expert in the field of Crew Management."  (A426.)
Lacy's challenge of this decision is time-barred.

### C.     LACY'S CLAIMS REGARDING THE BEAR FACILITY.

#### 1.     Lacy's Allegation Of Hostile Work Environment.

        In addition to her promotion claims, Lacy alleges that she has been
subjected to a hostile work environment at the Bear facility because of her race and sex,
although she testified in deposition that this has not occurred for the past year or so.  (Pl.
Dep. at A41-52).  Lacy also alleges that hostile work environment is in retaliation for her
prior complaint of discrimination -- the 1999 lawsuit challenging her removal from the
Foreman II program.  In deposition Lacy could identify only three discrete events that
might have occurred during the limitations period, and which could conceivably be the
basis for her allegations of hostile work environment retaliation.

        Lacy's deposition testimony, however, demonstrates that even she does
not believe these three incidents occurred because of her race or sex or were retaliatory.

Instead, Lacy conceded that she has had personality conflicts with co-workers and supervisors, because she is always ready to speak her mind regardless of the consequences.  (Pl. Dep. at A124, 139-41, 185-86.)

### a.    The "F.O.A.D." Incident.

In the materials Lacy attached to her Complaint she recounts an incident in which a white mail co-worker (Koppel) became angry when Lacy removed an item from his refrigerator.  (A452; Pl. Dep. at A112-14.)  When Lacy offered Koppel a dollar to pay for the item, he allegedly took her dollar bill and lit it on fire, telling her "here's how I feel about your dollar Alvia."  (A452; Pl. Dep. at A113-14.)  Koppel then asked Lacy if she knew what "F.O.A.D." meant.  When Lacy replied that she did not, Koppel told her that it meant "fuck off and die."  (A452; Pl. Dep. at A114.)

Lacy did not allege to the EEOC, nor claim during her deposition that the co-worker made any reference to her race or sex during this incident.  (Pl. Dep. at A115-17.)  Instead, Lacy testified that her union representative (Carlton), who was present, offered his opinion that Koppel "thinks all black people steal."  (Pl. Dep. at A116.)  Koppel screamed at Carlton (who is white) and "told him step outside, and I'll beat your ass."  (Pl. Dep. at A118.)

### b.    The Pipefitter Incident.

Lacy alleges that in "July 2004" co-worker Jerry White, a pipefitter, told Lacy's supervisor, Roosevelt Gill, an African-American male, that "he couldn't work with me and I was a problem for him."  (A452.)  Lacy testified:

Q.    The co-worker was Mr. White?

A.    Yes.

Q.    You contend that was harassment or a hostile work environment?

A.    Well, the incident that followed with that. Okay? So he said I can't work with her, and I'm not going to, and he walked away. I'm trying to test my car. I go to Mr. Gill and say look, he said he can't work with me, then give me a pipe fitter. Okay? And he says all right, Alvia, I'll see what I can do. I do some more work on the car. An hour passes. I go back to Mr. Gill. I said Mr. Gill, where's my pipe fitter, or who are you going to give me? He says goddamn it. What do you want me to do? Why don't you just go home, and I'll do your fucking job. Those are his exact words. Now, is that a hostile work environment? To me it is because I'm going to my supervisor asking him to give me the person that's supposed to help me get my job done, and it hasn't been done.

Q.    So do you contend that Mr. Gill's comment to you was harassment because of your sex or race?

A.    *I can't define why Mr. Gill talked to me like that. All I know is it's inappropriate, and to me it's harassment, and it's a hostile work environment.* Who wants to go to work everyday, and you're getting cussed at, and you're trying to do your job?

(Pl. Dep. at A122-23) (emphasis added). In fact, White had previously expressed to Gill

that there was a personality conflict with Lacy, and that it was difficult to work with her.

(A289.) Gill testified that White never made any statement leading Gill to believe that

the personality conflict had anything to do with Lacy's race or sex. *Id.*

-17-

### c.    The Attendance Incident.

Lacy alleges a hostile work environment when she received a "Step 2" written warning on April 28, 2004 for days she was absent from or late to work, and also stated that some employees did not have to clock in and out when arriving and leaving the Bear facility although she was required to do so.  (A298, 442, 452-53.)  Not only is any challenge to this warning untimely, Lacy testified that she does not consider the action as discriminatory, stating "*my problem was it was not discriminatory.  My problem was people are allowed -- are forced to punch in, and some are not, and I wanted them to address that.  I did not make it a racial issue.*"  (Pl. Dep. at A131) (emphasis added).  In her submission to the EEOC, Lacy stressed that "I never ever said the issue was of race or sex."  (A441.)  Further, Gill testified that he administers Amtrak's attendance policy without regard to an employee's race or sex.  (A289.)

Lacy contacted Amtrak's Dispute Resolution Office (DRO) to voice her complaints.  The DRO Case Intake Coordinator responded that her concerns would be relayed to management, and they would be looked into.  (A299; Pl. Dep. at A133-35.)  Lacy contends that after raising these concerns, she found a drawing of a rat on her airbrake cart that said "There's a fat letter writing rat watching you punch your time card."  (A454; Pl. Dep. at A134-36.)  Apparently, only Lacy saw the drawing and she could not identify who put it on her cart.  Nothing further came of this incident.  (Pl. Dep. at A136.)

**2.    Lacy's Allegation Of Retaliation.**

Lacy alleges in her Complaint that she "was . . . retaliated against because I filed charges against the Defendant with the EEOC [p]reviously." (D.I. 2 at 4.) When asked during deposition whether this retaliation is evidenced by her non-selection for management positions, she testified that it was not.

> Q.    *The retaliation claim is, to things that have*
> *happened to you at Bear, not promotion?*
>
> A.    *True.*

(Pl. Dep. at A62-63.) Lacy's retaliation claim, then, is limited to her allegations of hostile work environment. The most recent protected activity in which Lacy had engaged before the three alleged incidents of a hostile work environment in 2004 was her 1999 lawsuit alleging removal from the Foreman II program. (Pl. Dep. at A53-54.)

**3.    Lacy's Interpersonal Conflicts.**

As mentioned before concerning co-worker White's statement to Roosevelt Gill that he did not want to work with Lacy, much of the difficulty that Lacy perceives she has had at the Bear facility is due to her interpersonal skills. She admitted in deposition that her personality, not her race or sex, causes friction:

> Q.    . . . you've suggested to me that if you see
> something that you think is inappropriate, you do
> not hesitate to raise it.
>
> A.    Yes.
>
>             *    *    *
>
> Q.    Is it correct for me to say if you think something's
> not appropriate, regardless of what the reason is,
> whether it's race or sex or just it's just not

-19-

appropriate, I don't like it - -

A.    Okay.

Q.    – you're going to raise that issue?

A.    Yes.

Q.    And you do raise that issue?

A.    Yes, I do.

Q.    And as a result, you believe , its your testimony, there are people who don't like you - -

A.    True.

Q.    -- because you rock the boat?

A.    Yes.

Q.    Some co-workers?

A.    Yes.

Q.    And some members of management?

A.    Yes.

Q.    Does that clear --

A.    That's perfect.  That's perfect.

(Pl. Dep. at A137-41.)

## IV.    <u>ARGUMENT</u>

### A.    <u>SUMMARY JUDGMENT STANDARD.</u>

To defeat Amtrak's Motion for Summary Judgment, Lacy must demonstrate that there are specific material facts in dispute that create genuine issues for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1985).  There must be sufficient

evidence so that reasonable jurors could find that Lacy has proven her claim by a preponderance of the evidence.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

With respect to summary judgment in discrimination cases, the court's role is "to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff."  *Revis v. Slocomb Indus.*, 814 F. Supp. 1209, 1215 (D. Del. 1993) (Judge Schwartz) (quoting *Hankins v. Temple University*, 829 F.2d 437, 440 (3d Cir. 1987)).  Lacy must do more, however, than "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**B.    ONLY THOSE ALLEGATIONS OF INCIDENTS AFTER MAY 8, 2004 ARE PROPERLY BEFORE THE COURT.**

Under Title VII, in a deferred state such as Delaware, an individual has 300 days from the date of the alleged discriminatory act to file a charge with the EEOC.  *See* 42 U.S.C. § 2000e-5(e).  Although Lacy bases her failure to promote claim on the ten job postings described above, five of these decisions occurred more than 300 days before Lacy filed her charge of discrimination with the EEOC on March 4, 2005.  Therefore, Lacy cannot base her claims of discrimination on any events occurring more than 300 days before March 11, 2005 -- May 8, 2004.  Therefore, the following claims are untimely:  Inventory Services Officer (date successful applicants chosen – January 16, 2004 and March 25, 2004); Director, Crew Management Services (date successful

-21-

applicant chosen – February 2, 2004); High Speed Rail Supervising Technician (date successful applicants chosen – March 18, 23 & 25, 2004); Human Resources Officer (date successful applicant chosen – May 3, 2004); Officer Transportation Services (date successful applicants chosen – January 6, 2004 and March 15, 2004).

Promotion decisions are discrete acts. *See O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006).  As this Court observed in *Washington v. Autozoners, Inc.*, 452 F. Supp.2d 546, 552 (D. Del. 2006) (Chief Judge Robinson), "[t]he Supreme Court in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 S. Ct. 2061, 153 L.Ed.2d 106 (2002), held that discrete acts which occurred more than 300 days before the plaintiff filed a charge of discrimination are not actionable, 'even when they are related to acts alleged in timely filed charges.'"  Thus, *Autozoners* held that the plaintiff's claims of discriminatory failure to promote in violation of Title VII were "time barred" where the promotion decisions occurred more than 300 days prior to the plaintiff filing his charge of discrimination.  *Id.* at 553.  *See also Riley v. Delaware River and Bay Authority*, ___ F. Supp.2d ____, ____ (D. Del. 2006) (Judge Jordan) (discrete acts of failure to promote falling outside 300-day limitations period considered "time barred and must be dismissed").

Likewise, Lacy raises incidents dating as far back as 1989 as evidence of a hostile work environment at Bear.[5]  But when pressed to explain the basis for her allegations in deposition the best Lacy could do is describe three discrete incidents -- by different people at different times -- that may have occurred before May 8, 2004.  Lacy's testimony establishes that, even if all three incidents were timely (and that is far from clear), they do not provide evidence of a severe and pervasive hostile work environment that would enable Lacy to raise allegations beyond the 300 days limitations period.

In *West v. Philadelphia Elec. Co.*, 45 F.3d 744 (3d Cir. 1995), the Third Circuit stated that, before a court could consider alleged events that occurred more than 300 days prior to a Title VII plaintiff's charge of discrimination, the plaintiff must be able to show that her hostile work environment claim "falls within the continuing violations theory.  First, [s]he must demonstrate that at least one act occurred within the filing period:  'The crucial question is whether any *present* violation exists.'  Next, the plaintiff must establish that the harassment is 'more than the occurrence of isolated or sporadic acts of intentional discrimination.'"  *Id.* at 754-55 (citations omitted).  Lacy has provided no evidence, only her unsupported speculation, that any of the incidents described that arguably occurred within 300 days prior to her filing her charge of discrimination constituted intentional discrimination and, thus, a "present violation."  *See*

---

[5]A great many of the alleged incidents that occurred more than 300 days prior to the filing of her charge are no more than incidents in which co-workers used foul language towards her, none of which was race or gender specific, such as "get off your fat ass right now and get down here" and "hurry up and get this shit done on this car."  (A450.)  Moreover, Lacy provides no time-frame for these alleged incidents, often limiting her description to "One day," "One afternoon," One morning," or "A few years ago."  (A450-51.)

*Pittman v. Continental Airlines, Inc.*, 35 F. Supp.2d 434, 441-42 (E.D. Pa. 1999) (court would not consider alleged incidents that occurred more than 300 days prior to plaintiff's filing of discrimination charge where plaintiff provided "little evidence" of discriminatory harassment occurring within the 300 day period).

Even if the three incidents could somehow constitute evidence of "intentional discrimination" toward Lacy because of her race or sex, Lacy has provided no evidence that these incidents were anything other than discrete events, certainly not rising to the level of a "persistent, on-going pattern" of discrimination required to establish a continuing violations theory. *West*, 45 F.3d at 755.

## C.    AMTRAK IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FAILURE TO PROMOTE CLAIM.

### 1.    Lacy Cannot Establish A *Prima Facie* Case.

Lacy's promotion claims are analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Beckett v. Dep't of Corrections of the State of Delaware*, 981 F. Supp.2d 319, 324-25 (D. Del. 1997) (Judge Schwartz).

To establish a *prima facie* case Lacy must show that:  (1) she belongs to a protected category; (2) she applied and was qualified for a promotion; (3) despite her qualifications, she was denied the promotion; and (4) the action occurred under circumstances giving rise to an inference of unlawful discrimination, such as when non-members of the protected class are treated more favorably than the plaintiff. *Sarullo v.*

*United States Postal Servs.*, 352 F.3d 789, 797 (3d Cir. 2003).  Lacy cannot do so,

because she was not qualified for the promotions she sought.

> **a.    Lacy Was Unqualified For The Positions To Which She Applied.**

Qualification is the *sine qua non* of the *prima facie* case.  As the Third

Circuit has stated, "if a plaintiff is not qualified for the job [s]he seeks, we can reject a

discrimination claim without the heavy lifting that is required if a *prima facie* case is

made out."  *Dorsey v. Pittsburgh Assocs.*, 90 Fed. Appx. 636, 639 (3d Cir. 2004)

(alteration added) (citing *Pivirotto v. Innovative Sys. Inc.*, 191 F.3d 344, 352 n.4 (3d Cir.

1999)); *see also Wajda v. The Penn Mutual Life Insurance Co.*, 528 F. Supp. 548, 564

(E.D. Pa. 1981) (Title VII plaintiff did not present *prima facie* case of discrimination

where she did not "establish by a preponderance of the evidence that she was qualified

for the promotions . . . that she claims were denied her").  Lacy cannot show that she was

qualified for the positions to which she applied.  Thus, she is unable to meet the second

element required of her *prima facie* case of failure to promote, *i.e.*, that she "was

qualified for a promotion."

Lacy was unqualified for all of the positions at issue.  Amtrak's Human

Resources Department (whom Lacy does not think discriminated against her) made this

decision after reviewing her application against the established educational and work

experience criteria required for each position

Lacy's assumption that Human Resources had knowledge of her purported

qualifications even though she did not list them fails to help her.  *See, e.g., Edwards v.*

*Joe Cullipher Chrysler-Plymouth, Inc.*, 1990 WL 484147 (E.D.N.C. 1990), *aff'd*, 932

-25-

F.2d 963 (4th Cir. 1991) (fact that Title VII plaintiff may prove to be qualified for position is of no consequence if the plaintiff failed to inform decisionmaker of those qualifications) (attached at A467); *Hoff v. County of Erie*, 1981 WL 308 (W.D.N.Y. 1981), *aff'd*, 697 F.2d 291 (2d Cir. 1982) (same) (attached at A471.)

Lacy "need not show . . . that she was better qualified than the promoted candidate, but she must show more than just her minimum qualifications. *She must demonstrate that she was as qualified as the promoted person.*" *Pinckney v. Northampton County*, 512 F. Supp. 989, 998 (E.D. Pa. 1981), *aff'd*, 681 F.2d 808 (3d Cir. 1982) (emphasis added). But there is no evidence that Lacy was as qualified as *any* of the successful job applicants who were promoted.

Because Lacy cannot bear her burden to establish a *prima facie* case, summary judgment is appropriate.

> **b.    There Are No Circumstances That Give Rise To An Inference Of Unlawful Discrimination.**

Lacy's claim that she was denied promotion because of her race and/or sex also fails because several of the Human Resources decisionmakers who reviewed her JOAs against the posted educational and work requirements, are, like Lacy, African American. In addition, several are female. *See Dungee v. Northeast Foods, Inc.*, 940 F. Supp. 682, 688 n.3 (D.N.J. 1996) (that decisionmaker is member of plaintiff's protected class "weakens any possible inference of discrimination"); *see also Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 1002 (5th Cir. 1996) (en banc) ("[In] a Title VII case alleging discrimination because of race, proof that . . . the decision makers were members of the same race as the complaining employee would considerably undermine the probability

that race was a factor in the employment decision"). Any claim that Lacy's non-selection was discriminatory is likewise dispelled by the fact that several of the promotions for which she applied were filled by African Americans and/or females.

> **2.**      **Even If Lacy Could Establish A *Prima Facie* Case, Amtrak Has Legitimate, Non-Discriminatory Reasons For Choosing Others For Promotion And Not Lacy.**

Even if Lacy could establish a *prima facie* case regarding any of the five job positions at issue, her claim would still fail because the applicants whom were chosen to fill the open positions had superior qualifications when compared to those of Lacy. *See Jefferies v. Harris County Community Action Association*, 693 F.2d 589, 590 (5th Cir. 1982) ("[T]he promotion of a better qualified applicant is a legitimate and nondiscriminatory reason for preferring the successful applicant over the rejected employee who claims that the rejection was discriminatory") (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)); *see also Ferguson v. E.I. DuPont de Nemours and Co.*, 560 F. Supp. 1172, 1193 n.48 (D. Del. 1983) (Judge Schwartz) ("The reasons primarily focused upon the superior qualifications of the individual – a recognized legitimate reason") (citations omitted). As discussed above, the Candidate Selection Justification forms show that Amtrak chose the candidates it felt best met, and at times exceeded, the qualifications needed to succeed in the various positions. *See Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 332 (3d Cir. 1995) (Court does not sit as a "super-personnel department" that reexamines an entity's business decisions).

> **D.**      **AMTRAK IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S HOSTILE WORK ENVIRONMENT OR RETALIATION CLAIM.**

> **1.**      **Lacy Cannot Establish A *Prima Facie* Case Of Hostile Work**

**Environment.**

To establish a claim for employment discrimination due to a hostile work environment, a plaintiff must establish, "by totality of the circumstances, the existence of a hostile or abusive environment which is severe enough to affect the psychological stability of a minority employee." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 (3d Cir. 1990). Lacy must be able to show that: "(1) [s]he suffered intentional discrimination because of [her] membership in a protected class; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected [her]; (4) the discrimination would detrimentally affect a reasonable person of the same protected class in that position; and (5) the existence of respondeat superior liability." *Verdin v. Weeks Marine, Inc.*, 124 Fed. Appx. 92, 95-96 (3d Cir. 2005) (alterations added) (citing *Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 293 (3d Cir. 1999)). If Lacy cannot meet an essential element of her *prima facie* case, the Court need not consider the other elements. *See Arasteh v. MBNA America Bank, N.A.*, 146 F. Supp.2d 476, 493 (D. Del. 2001) (Judge Sleet) (noting that where plaintiff has not met certain essential elements of her *prima facie* case of hostile work environment, the court need not consider the remaining elements).

**a.    There Is No Evidence, Only Lacy's Unsupported Speculation, That Any Of The Alleged Acts Creating A Hostile Work Environment Were Related To Any Protected Characteristic.**

Despite ample time and opportunity to do so, Lacy has presented only her own unsupported speculation that any of the three incidents she alleged evidence a hostile work environment at the Bear facility were taken against her because of race or sex.  Speculations, generalities, and gut feelings, however genuine, do not allow for an inference of discrimination to be drawn when they are not supported by specific facts. *See, e.g., Hargrave v. County of Atlantic*, 262 F. Supp.2d 393, 419 (D.N.J. 2003) (noting that despite plaintiff's conclusory allegation of racial harassment, there was nothing about the alleged misconduct that would support an inference of racial animus or hostility toward the plaintiff); *see also Persinger v. Delmar School Dist.*, 2004 WL 1534746, at *4 (D. Del. July 8, 2004) (Judge Farnan) (holding that "unsubstantiated, generalized, and conclusory allegations [were] insufficient to establish intentional discrimination" for the purposes of a hostile work environment claim) (attached at A480) (alteration added).

Lacy offers nothing to show that Koppel's response when she took an item from his refrigerator without first asking was attributable to her race or sex.  As such, she cannot establish the first element.  *See Paris v. Christiana Care Visiting Nurse Ass'n*, 197 F. Supp. 2d 111, 117 (D. Del. 2002) (Judge Sleet) (for a plaintiff to prove "intentional discrimination" for first element of *prima facie* case of hostile work environment, she must "demonstrate that the statements made contained a gender [or race] based animus") (alteration added).  Although Koppel's "F.O.A.D." comment was undoubtedly rude, Title VII "is neither a general civility code nor a statute making actionable the 'ordinary

-29-

tributions of the workplace.'" *Davis v. Town of Lake Park, Florida*, 245 F.3d 1232,

1239 (11th Cir. 2001) (citation omitted).  *See also Walker v. Pepsi-Cola Bottling Co.*,

2000 WL 1251906, at *16 (D. Del. August 10, 2000) (Chief Judge Robinson) ("Title VII

does not establish a 'general civility code for the American workplace'") (attached at

A499.) (citation omitted).

        Likewise, Roosevelt Gill's alleged harsh words to Lacy after she

repeatedly asked for him to provide her with a different pipefitter did not invoke race or

sex, nor did the underlying personality conflict between Lacy and White.  Lacy and

White simply did not get along because White did not like Lacy's personality.  White

never stated to Gill that his aversion to working with Lacy was due to anything other than

her abrasive attitude.  (A289.)  *See Gomez v. Allegheny Health Services, Inc.*, 71 F.3d

1079, 1085-86 (3d Cir. 1995) (Title VII does not protect employees from "personality

conflicts unrelated to invidious discrimination"); *see also Seldomridge v. Uni-Marts, Inc.*,

2001 WL 771011, at *8 (D. Del. 2001) (Judge Sleet) ("[A]llegedly harassing conduct that

is motivated by a bad working relationship . . . or even by personal animosity is not

actionable under Title VII") (attached at A486.)  Moreover, the harsh words allegedly

directed towards Lacy by Gill after she asked him to provide her with another pipefitter

did not evidence racial and/or gender animus on Gill's part, especially when one

considers that Gill himself is an African-American.  *See Lombardi v. Cosgrove*, 7 F.

Supp.2d 481, 495 (D.N.J. 1997), *aff'd*, 216 F.3d 1076 (3d Cir. 2000) (supervisor's use of

words "fuck" and "Goddammit" did not satisfy first element of *prima facie* case of

hostile work environment, but instead "evinces plaintiff's hypersensitive attitude").

-30-

Finally, neither the April 28, 2004 "Step 2" written warning for frequent absenteeism, the subsequent review by management, nor the Rat picture Lacy found on her cart, had anything to do Lacy's race and/or gender. Even she does not think it did. Thus, even if timely, this incident also fails to establish a *prima facie* case of a hostile work environment.

### b. Even If Lacy Suffered Intentional Discrimination, It Was Not Sufficiently Pervasive Or Regular To Establish A *Prima Facie* Case.

Even if Lacy could show that any or all of these three incidents occurred because of her race and/or sex, they fall far short, singly or in the aggregate, of being considered "pervasive or regular" for the purposes of establishing a *prima facie* case. As this Court stated in *Kidd v. MBNA America Bank, N.A.*, 224 F. Supp.2d 807, 814 (D. Del. 2002) (Chief Judge Robinson), "[m]ore than a few isolated verbal incidents are necessary to establish that defendant is engaging in regular, pervasive discrimination that would detrimentally affect a reasonable person of the same race or sex in that position."

Lacy bases her hostile work environment claim on allegations that: (1) a co-worker cursed after she took something from his refrigerator without asking, but made no reference to her race and/or sex; (2) a pipefitter refused to work with Lacy based on his dislike of her disrespectful attitude towards him and Lacy's African-American supervisor cursed when she repeatedly asked for another pipefitter; and (3) she unfairly received a written warning for absenteeism and observed that some other employees did not have to

punch in and out when arriving and leaving, but does not feel that these incidents had anything to do with race or sex discrimination.  Lacy cannot establish a *prima facie* case. Summary judgment is appropriate.

> **2.     Lacy Cannot Establish A *Prima Facie* Case Of Retaliation.**

Amtrak is also entitled to summary judgment on Lacy's retaliation claim. Lacy offers nothing more than her mere speculation that any actions were taken against her due to any past protected activity.

To establish a *prima facie* case of retaliation under Title VII, "a plaintiff must tender evidence that:  '(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action.'"  *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006) (citation omitted).  In *Burlington Northern and Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405 (2006), the Supreme Court adopted the "materially adverse" standards for analyzing retaliation claims.  Lacy can point to no action taken by Amtrak that has been materially adverse to her.

While it is undisputed that Lacy has engaged in protected activity by filing lawsuits against Amtrak alleging discrimination, her most recent protected activity was her 1999 lawsuit.  Lacy does not contend that her lack of promotion has anything to do with her prior lawsuits.  (Pl. Dep. at A62-63.)  Further, she has produced no evidence that any alleged incidents of a hostile work environment at the Bear facility were taken

because of retaliation for her prior lawsuits. But these were not materially adverse actions, and all Lacy has is her own conclusory belief that they were retaliatory.

Moreover, there is not sufficient temporal proximity between Lacy's protected activity (the 1999 discrimination lawsuit) and any of the alleged incidents of hostile work environment Lacy described as occurring in 2004. *See Weston v. Pennsylvania*, 251 F.3d 420, 431-32 (3d Cir. 2001) (affirming summary judgment where alleged retaliatory acts towards plaintiff "were more than a year distant from his protected activities"); *Krouse v. American Sterilizer Co.*, 126 F.3d 494 (3d Cir. 1997) (affirming summary judgment where nineteen months between protected activity and alleged retaliatory action); *Drill v. Bethlehem-Center School Dist.*, 2006 WL 1159457, at *8 (W.D. Pa. 2006) (summary judgment for employer where one year passed between the protected activity and alleged retaliation) (attached at A455.)

## V.    CONCLUSION

As the foregoing demonstrates, there is no material dispute of fact at issue in this case and Amtrak is entitled to judgment as a matter of law. Accordingly, Amtrak respectfully requests that the Court grant summary judgment in its favor and dismiss Plaintiff's claims with prejudice.

Respectfully submitted,

_____-s- Virginia A. Zrake_____
Virginia A. Zrake (Del. Bar No. 4054)
LAW OFFICE OF VIRGINIA A. ZRAKE, LLC
Northern Steel Business Center
34382 Carpenters Way
P.O. Box 247
Lewes, Delaware 19958
Tel: (302) 644-6770

_____-s- Darrell R. VanDeusen_____
Darrell R. VanDeusen (admitted *Pro Hac Vice*)
Clifton R. Gray (admitted *Pro Hac Vice*)
KOLLMAN & SAUCIER, P.A.
The Business Law Building
1823 York Road
Timonium, Maryland 21093
Tel: (410) 727-4300

*Counsel for Defendant*
*National Railroad Passenger Corporation*

-34-