## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ALVIA LACY,                              *

      Plaintiff,                       *

v.                                       *        Case No.  1:06-CV-00068-JJF

NATIONAL RAILROAD PASSENGER              *
  CORPORATION,
                                         *
      Defendant.                       *

    *    *    *    *    *    *    *    *    *

## APPENDIX TO DEFENDANT'S OPENING BRIEF IN SUPPORT OF
## ITS MOTION FOR SUMMARY JUDGMENT

Virginia A. Zrake, Esq. (Del. Bar No. 4054)
LAW OFFICE OF VIRGINIA A. ZRAKE, LLC
Northern Steel Business Center
34382 Carpenters Way
P.O. Box 247
Lewes, Delaware 19958
Tel: (302) 644-6770

Darrell R. VanDeusen, Esq. (admitted *Pro Hac Vice*)
Clifton R. Gray, Esq. (admitted *Pro Hac Vice*)
KOLLMAN & SAUCIER, P.A.
The Business Law Building
1823 York Road
Timonium, Maryland 21093
Tel: (410) 727-4300

*Counsel for Defendant*
*National Railroad Passenger Corporation*

DATED:  December 7, 2006

## TABLE OF CONTENTS

**Appendix Pages**

DEPOSITION OF PLAINTIFF ALVIA LACY .............................. A1

AFFIDAVIT OF LINDA A. DAMIANO ................................. A280

AFFIDAVIT OF SARAH RAY ........................................ A282

AFFIDAVIT OF PATRICIA KERINS ................................. A285

AFFIDAVIT OF ROOSEVELT GILL ................................... A288

AMTRAK PERSONNEL FILE DOCUMENTS CONCERNING ALVIA LACY .. A291

AMTRAK DOCUMENTS CONCERNING HUMAN RESOURCES OFFICER
POSITION (#50121016) ............................................. A300

AMTRAK DOCUMENTS CONCERNING ENGINEER ROAD MAINTENANCE
SERVICES POSITION (#50146328) ................................... A305

AMTRAK DOCUMENTS CONCERNING FIELD ENVIRONMENTAL
SPECIALIST POSITION (#50146672) ................................. A317

AMTRAK DOCUMENTS CONCERNING ADMINISTRATOR SUPPORT
SPECIALIST POSITION (#50183697) ................................. A335

AMTRAK DOCUMENTS CONCERNING SENIOR ANALYST OPERATING
PRACTICES POSITION (#50183713) ................................. A349

AMTRAK DOCUMENTS CONCERNING ADMINISTRATIVE INVENTORY –
HIGH SPEED POSITION (#50183771) ................................ A367

AMTRAK DOCUMENTS CONCERNING INVENTORY SERVICES OFFICER
POSITION (#50172570) ............................................. A380

AMTRAK DOCUMENTS CONCERNING OFFICER TRANSPORTATION
SUPPORT SERVICES POSITION (#50173640) .......................... A399

AMTRAK DOCUMENTS CONCERNING HIGH SPEED RAIL SUPERVISING
TECHNICIAN POSITION (#50175062)A405 ............................ A405

AMTRAK DOCUMENTS CONCERNING DIRECTOR, CREW MANAGEMENT
SERVICES POSITION (#50124988) ................................... A421

ORDER DISMISSING LACY'S 1999 DISCRIMINATION LAWSUIT . . . . . . . . . A434

LETTER FROM *MCLAURIN* PLAINTIFFS' CLASS ATTORNEY TO LACY . . . A436

DOCUMENTS LACY PROVIDED TO EEOC FOR MARCH 4, 2005
CHARGE OF DISCRIMINATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A440

ATTACHED UNREPORTED CASES:

      A. *Drill v. Bethlehem-Center School Dist.*,
           2006 WL 1159457 (W.D. Pa. 2006) . . . . . . . . . . . . . . . . . . . . . . . . A455

      B. *Edwards v. Joe Cullipher Chrysler-Plymouth*,
           1990 WL 484147 (E.D.N.C. 1990) . . . . . . . . . . . . . . . . . . . . . . . . A467

      C. *Hoff v. County of Erie*,
           1981 WL 308 (W.D.N.Y. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . A471

      D. *Persinger v. Delmar School District*,
           2004 WL 1534746 (D. Del. 2004) . . . . . . . . . . . . . . . . . . . . . . . . A480

      E. *Seldomridge v. Uni-Marts, Inc.*,
           2001 WL 771011 (D. Del. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . A486

      F. *Walker v. Pepsi-Cola Bottling Co.*,
           2000 WL 1251906 (D. Del. 2000) . . . . . . . . . . . . . . . . . . . . . . . . A499

1

1    IN THE UNITED STATES DISTRICT COURT

2    FOR THE DISTRICT OF DELAWARE

3

4    ------------------------------x

5    ALVIA LACY,                   x

6        Plaintiff               x    Civil Action No.

7    v.                            x    1:06 CV 00068 JJF

8    NATIONAL RAILROAD PASSENGER   x

9    CORPORATION (AMTRAK),         x

10       Defendant               x

11   ------------------------------x    ORIGINAL

12

13

14            Deposition of ALVIA LYNN LACY

15               Timonium, Maryland

16            Friday, October 6, 2006

17                  10:10 A.M.

18

19

20   Job No. 1-88280

21   Pages 1 - 282

22   Reported by:  Sharon D. Livingston, CSR-RPR

A1



L.A.D.
REPORTING &
DIGITAL VIDEOGRAPHY

1100 Connecticut Avenue, NW • Suite 850, Washington, D.C. 20036
Tel: 202.861.3410 • 800.292.4789 • Fax: 202.861.3425
Web: ladreporting.com • E-mail: lisa@ladreporting.com
Additional Offices: Rockville, MD • Baltimore, MD • Greenbelt, MD • McLean, VA

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

2

1          Deposition of ALVIA LYNN LACY, held at the

2     offices of:

3

4          KOLLMAN & SAUCIER, P.A.

5          The Business Law Building

6          1823 York Road

7          Timonium, Maryland 21093

8          (410) 727-4300

9

10          Pursuant to Notice, before Sharon D.

11     Livingston, Registered Professional Reporter and

12     Notary Public of the State of Maryland.

13

14

15

16

17

18

19

20

21

22

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

3

1                       A P P E A R A N C E S

2

3

4       ON BEHALF OF THE DEFENDANT:

5            DARRELL R. VANDEUSEN, ESQUIRE

6            R. CLIFTON GRAY, ESQUIRE

7            KOLLMAN & SAUCIER, P.A.

8            The Business Law Building

9            1823 York Road

10           Timonium, Maryland 21093

11           (410) 727-4300

12

13

14

15

16

17

18

19

20

21

22

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

4

1                          C O N T E N T S

2    EXAMINATION OF ALVIA LYNN LACY                        PAGE

3         By Mr. VanDeusen                                    8

4

5                          E X H I B I T S

6              (Attached to Deposition Transcript)

7    LACY DEPOSITION EXHIBITS                               PAGE

8         1    Charge of Discrimination                      8

9         2    Dismissal and Notice of Rights                8

10        3    Complaint                                     8

11        4    U.S. Party Case Index                         8

12        5    Order                                         8

13        6    Letter 4-26-04 from Michael Lieder            8

14             to Lacy

15        7    Plaintiff's First Responses to                8

16             Interrogatories

17        8    Plaintiff Alvia Lacy First Production         8

18             of Documents and Things to

19             Defendant Amtrak

20        9    Harassment and Hostile Work                  110

21             Environment

22        10   Written warning 4-27-04; time card           127

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

5

1        E X H I B I T S    C O N T I N U E D

2          (Attached to Deposition Transcript)

3    LACY DEPOSITION EXHIBITS                          PAGE

4       11    Memo 5-4-04 from Rahsaan Everson          129

5             to Jonathan Klein; letter 5-4-04

6             from Rahsaan Everson to Lacy

7       12    Interoffice memo 4-5-05 from              160

8             D.J. McFadden

9       13    Letter 3-30-05 from Sarah Ray             167

10      14    Positions I Have Applied for with         170

11            Amtrak in the Past Year

12      15    Job reference 50124988                    179

13      16    Letter 2-25-04 from Patricia Kerins       182

14            to Lacy; Job Opportunity Application

15      17    Job reference 50175062                    186

16      18    Job Opportunity Application               188

17      19    Job reference 50171836                    191

18      20    Job reference 50172570                    196

19      21    Job reference 50175903                    198

20      22    Job reference 50156915                    202

21      23    Position number 50121016                  205

22      24    Job reference 50007109                    207

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

6

1          E X H I B I T S   C O N T I N U E D

2          (Attached to Deposition Transcript)

3  LACY DEPOSITION EXHIBITS                    PAGE

| | | | |
|---|---|---|---|
| 4 | 25 | Job reference 50146685 | 210 |
| 5 | 26 | Job reference 50180873 | 216 |
| 6 | 27 | Job reference 50130938 | 218 |
| 7 | 28 | Job reference 50125481 | 220 |
| 8 | 29 | Job reference 50157903 | 223 |
| 9 | 30 | Job reference 50182531 | 224 |
| 10 | 31 | Job reference 50146328 | 225 |
| 11 | 32 | Job reference 50146672 | 238 |
| 12 | 33 | Job reference 50166678 | 244 |
| 13 | 34 | Job reference 50183697 | 245 |
| 14 | 35 | Job reference 50183713 | 247 |
| 15 | 36 | Job reference 50183771 | 249 |
| 16 | 37 | Job reference 50163303 | 254 |
| 17 | 38 | Job reference 50010519 | 256 |
| 18 | 39 | Job reference 50184672 | 258 |
| 19 | 40 | Job reference 50187772 | 259 |
| 20 | 41 | Job reference 50168915 | 260 |
| 21 | 42 | Job reference 40168911 | 262 |
| 22 | 43 | Job reference 50138579 | 264 |

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

7

1        E X H I B I T S    C O N T I N U E D

2        (Attached to Deposition Transcript)

3    LACY DEPOSITION EXHIBITS                    PAGE

4        44    Job reference 50183735            266

5        45    Job reference 50007851            267

6        46    Job reference 50117561            269

7        47    Job reference 50005267            270

8        48    Job reference 50187771            271

9        49    Job reference 50195552            273

10

11

12

13

14

15

16

17

18

19

20

21

22

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

8

```
1               P R O C E E D I N G S
2          (Lacy Deposition Exhibits 1, 2, 3, 4, 5, 6,
3     7 and 8 marked for identification and attached to
4     transcript.)
5               ALVIA LYNN LACY,
6          having been duly sworn, testified as follows:
7          EXAMINATION BY COUNSEL FOR DEFENDANT
8     BY MR. VANDEUSEN:
9          Q    Good morning, Ms. Lacy.
10         A    Good morning.
11         Q    Just for the record if you'd state your
12    name, address, telephone number, date of birth.
13         A    My name is Alvia Lynn Lacy.  Address is
14    1306 Jervis, J-e-r-v-i-s, Square, located in Belcamp,
15    Maryland, zip code 21017.  My home phone number is
16    area code 410-272-4819, and my birthday is November
17    27th, 1956.
18         Q    Thank you very much.
19         A    You're welcome.
20         Q    Ms. Lacy, my name is Darrell VanDeusen.
21    I'm an attorney representing Amtrak in a lawsuit that
22    you filed against it.  With me here today is Cliff
```

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

9

1  Gray, one of our associates.  The purpose of the

2  deposition is to gather facts, information that you

3  have, surrounding the claims that you've raised in

4  your lawsuit.  Do you understand that?

5       A    Yes, I do.

6       Q    Have you been deposed before?

7       A    Yes, I have.

8       Q    So you know, more or less, the drill?

9       A    Yes.

10      Q    I'll give you a short summary then of how

11 things work.  You're under oath.  You're expected to

12 testify truthfully.  A record will be made of your

13 testimony, the questions I ask and the answers you

14 give.  It's important that you answer the questions

15 that I ask orally, out loud, so the court reporter

16 can take that down.  She can't see head nods and

17 record that or things of that nature.  It's also

18 important that we not talk over each other.  So I may

19 ask you a question, and I'll try not to talk over you

20 when you answer, and if you don't talk over me when I

21 ask the question, it will make the transcript a lot

22 easier to read.

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

10

1    A    I understand.

2    Q    As I said, you're expected to testify

3  truthfully, and I expect that any answer you give me

4  will be truthful.  If this matter goes to trial, and

5  I ask you the same question at trial that I asked

6  today, and you give me a different answer then than

7  you gave today, you'll be asked to explain that.  Do

8  you understand?

9    A    Yes, I do.

10   Q    It's important for me to be confident that

11 you understand the question that I'm asking, so if

12 you don't understand, or if you're not sure what I'm

13 trying to ask you, let me know, and I'll try and

14 rephrase it.

15   A    Okay.

16   Q    If you want a break -- this isn't supposed

17 to be an endurance contest.  If you want to take a

18 break, anything like that, let me know, we'll let you

19 have a break, get you some water or coffee or

20 anything like that.

21   A    Okay.

22   Q    Before we begin, are you taking any

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

11

1    medication today?

2        A    Just Albuterol for my asthma, and oral

3    inhaler that I take in the morning and the evening.

4        Q    Anything that would impair your ability to

5    testify truthfully or honestly?

6        A    No.

7        Q    Are you presently under a doctor's care?

8        A    No.  Outside of my general practitioner for

9    my asthma, nothing else.

10       Q    And are you represented by a lawyer today?

11       A    No, I'm not.  Not today.

12       Q    You mentioned you testified, or you've

13   given deposition testimony before.

14       A    Yes.

15       Q    When was that?

16       A    I don't know the year exactly, but it was a

17   discrimination suit against Amtrak also.

18       Q    You've filed a number of discrimination

19   suits against Amtrak; is that true?

20       A    Yes.

21       Q    We'll talk more about those.  Other than

22   the lawsuits that you've filed against Amtrak over

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

12

1    the years --

2         A    Yes.

3         Q    -- have you ever testified in court before?

4         A    No.

5         Q    Have you ever been deposed before?

6         A    No.

7         Q    Have you ever been a plaintiff in a lawsuit

8    filed against anyone other than Amtrak?

9         A    No, not to my knowledge.

10        Q    Okay.  Have you ever filed a lawsuit

11   against any entity or person other than Amtrak?

12        A    No.

13        Q    Have you ever been a defendant in a lawsuit

14   where somebody has sued you?

15        A    No.

16        Q    Now, what did you do to prepare for today's

17   deposition?

18        A    Basically I have my notes, documents that I

19   have that I could bring with me, and that's about it.

20        Q    Okay.  What documents did you review?

21        A    I reviewed the documents from my filing,

22   the interrogatories, some of the paperwork that's in

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

13

1    there, and the information that you requested.

2        Q    Did you review any documents that you've

3    not produced to me?

4        A    No.  I was looking for -- I wanted to bring

5    the consent decree from the class action suit, and I

6    could not locate that.  I wanted to bring that, but

7    I've got to find that, so --

8        Q    But the answer is no?  Other than documents

9    --

10       A    No.

11       Q    I'm sorry.  This is where we've got to make

12   sure --

13       A    Okay.

14       Q    So is it correct that other than documents

15   you've produced to me, you've not reviewed any other

16   documents?

17       A    No.  That's correct.

18       Q    That's correct.  Okay.  Who have you talked

19   to about your deposition today?

20       A    I have talked to an attorney out of

21   Delaware, Mr. Gary Aber.  I have talked to the people

22   at Civil Justice in Baltimore, Maryland.  That's it

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

14

1    outside of some co-workers and supervisors that know

2    that I have a deposition today.  I don't know if you

3    want those too.

4        Q    Thank you.  As far as getting out of going

5    to work today and coming here, who did you talk to,

6    who did you have to arrange that with?

7        A    Just my supervisor.  My union rep knows I'm

8    here, and I guess the manager of the facility.

9        Q    And what are their names?

10       A    That would be Mr. McFadden, also my

11   supervisor, which is Delisa Maldonado, and my union

12   rep would be Bruce Carlton.

13       Q    Any other forms of communication with --

14   you said with co-workers.  Have you talked about the

15   substance of your deposition?

16       A    No, I haven't.

17       Q    E-mails, phone calls, anything like that?

18       A    None at all.

19       Q    When is the last time you spoke to somebody

20   at Amtrak, whether a co-worker or supervisor, about

21   the substance of your claims?

22       A    Probably the last time would have been when

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

15

1    I asked my union rep that -- requested a copy of my

2    personnel file, and I told him I needed it because I

3    was going to a deposition when it was originally

4    scheduled for the 22nd.  So that was like a week or

5    two prior to that.

6         Q    Were you able to get your personnel file?

7         A    Yes, he did get a copy for me.  I have that

8    with me today.

9         Q    Have any relatives of yours ever worked for

10   Amtrak?

11        A    No.

12        Q    You're not married?

13        A    No, I'm not.  Single.

14        Q    You have children?

15        A    Yes, I do.

16        Q    How many?

17        A    I have three sons.

18        Q    And how old are they?

19        A    They are -- my oldest son is 30, my middle

20   son is 29, and my youngest son is 23.

21        Q    Are any of them still dependents of yours?

22        A    My oldest son Veldez, he has sickle cell.

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

16

1    He kind of does odd jobs, but I do basically care for

2    -- take care of him.

3         Q    And the other two?

4         A    No.  They're fine.  They're working,

5    gainfully employed.

6         Q    If you could briefly describe for me -- and

7    we'll go back and look at some of the information you

8    provided in the interrogatories.  If you could

9    briefly describe for me your employment history at

10   Amtrak, when you came to work at Amtrak, what your

11   job was, if you moved from one job to another job,

12   and sort of just briefly tell me about those jobs.

13        A    Okay.  Originally I started with Amtrak in

14   August of 1983.  I started as a track person on the

15   track.

16        Q    What does that mean?

17        A    That means you do work on the track, high

18   speed rail, you could be with the undercutters, you

19   could be with TLS, different units.  It's basically

20   broke down in different units.

21        Q    What did you do as a track person?

22        A    As a track person, I -- well, I worked high

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

17

1　speed surfacing, which is basically repairing the

2　track when there's something wrong, and it's

3　usually -- that was usually the shift I was on was a

4　night shift.  And we also dropped stone, we

5　maintained the track area.  So we dropped stone, then

6　we would clean the area up with physical labor, and

7　we also would raise -- if there was a dip in the

8　track, the rail, rather, we would raise that to

9　standards and things of that type.  So that was my --

10　I did that basically while I was in the high speed

11　surfacing gang, and then I worked TLS, which is a

12　track laying system.  In that unit you have several

13　operations, but it completes the process of laying

14　new concrete ties.  So you may be in a clipping gang,

15　which all you do is put clips on, or you may be in

16　the gang that before the clips come, the cement ties

17　go in, and the alignment and all that's done.  So

18　different responsibilities in each segment.  I've

19　also worked with undercutter, which is a piece of

20　machinery that undercuts -- I might not be putting

21　this in the technical terms, but it undercuts the

22　track area for the ballast to go in place, and then

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

18

1    you as a track person come in and make sure that it's

2    all cleaned up after the sweeper runs through and

3    things of that nature, the general maintenance.

4    That's about it.  Well, I also did hold a position as

5    a cook.  Well, they call it campcar attendant.

6         Q    How long did you hold that position?

7         A    I held that for maybe five or six months.

8    That was a very short period.  That's one of those

9    what they call cushy jobs, and you have to have a lot

10   of seniority to hold it, so I was kind of lucky to

11   have it for the six months that I did.

12        Q    And that would have been while you were

13   working track?

14        A    Yes, while I was in the track department.

15   Then from there, in 1988 I transferred to the

16   mechanical department where I am now.

17        Q    Was that your choice?

18        A    Yes.

19        Q    How did that come about?

20        A    That came about because basically as a

21   track person with the seniority that I had, it was

22   rare that I would work a full year.

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

19

1      Q     You mean you had low seniority?

2      A     Yes.  Most of the time when winter comes,

3   when the winter months arrive, if you didn't have at

4   least 10 to 15 years, you didn't work during the

5   winter.  So, you know, being a single parent and

6   having -- raising three children, I felt like maybe I

7   need to make this transfer so that I could be

8   gainfully employed year-round.

9      Q     Because these are unionized positions,

10  correct?

11     A     Yes, they are.  They are union positions.

12     Q     And so seniority plays a big role?

13     A     Yes, yes.  So I transferred into the

14  mechanical department in 198 -- wait a minute.

15  Sometimes I get confused.

16     Q     That's all right.  Take your time.

17     A     '83.  Yeah, I came to Bear in 1988.  Yeah,

18  it was a year after my father passed away.

19     Q     All right.  And you applied for a move to

20  the mechanical department?

21     A     Yes, I put in a transfer.

22     Q     And you were accepted?

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

20

1    A    Yes, I was interviewed and received a

2    transfer.

3    Q    And what were your responsibilities

4    initially in the mechanical department?

5    A    My responsibilities now were -- which I'll

6    call it a car repair person or car repairman, but I

7    like to say car repair person.

8    Q    Car repair person is fine.

9    A    And as a car repair person, you can do

10   anything from freight, repairs of AM fleet 1 and 2

11   vehicles -- or cars, excuse me -- airbrake, you could

12   be a painter, you could work locomotive, which is in

13   Wilmington, and I never worked that entity, but

14   that's an option also.  So basically as a car repair

15   person, I did MP, airbrake, freight, car inspections,

16   trucking, you know, everything that has to do with

17   the car, seats, removal of seats, putting in seats,

18   building seats.  Those are all individual jobs that

19   you bid, and you hold that specific job, but they're

20   all car repairmen.

21   Q    And so what specific jobs have you held as

22   a car repairman?

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

21

1    A    Every one of them except for locomotive

2    shop.  I've done everything.

3    Q    And you would bid -- explain to me how you

4    would get that opportunity.

5    A    Well, what would happen, say you're in a

6    gang, and you have 20 people, and you bid that gang,

7    and jobs come up weekly.  I guess it's a process, you

8    know, where most companies cut back or close down one

9    department.  You know what I mean?  Basically that's

10   what you do when you abolish a job.  You may have 20

11   people in this gang and realize well, I've got 20 too

12   many, let's make it ten, so we're going to abolish

13   ten jobs here, put ten jobs over here.

14   Q    So would it be accurate to say

15   hypothetically we have cars coming into Bear, they're

16   going to need repair?

17   A    Yes.

18   Q    We're going to need some people to take out

19   the seats, replace the seats, but as management looks

20   at what needs to be done, we really only need ten

21   people to do that.  Right now we have 20 people

22   assigned, so we're going to bid out for other work

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

22

1    and take people who want to do other work than the

2    seat replacement to do that.  Is that an accurate --

3         A    That's a --

4         Q    -- way that works?

5         A    That's correct.  That's correct.

6         Q    And so you'd have an opportunity to bid --

7         A    Yes.

8         Q    -- on different jobs that would come up?

9         A    Yes, I would.

10        Q    And what would be the deciding factors in

11   whether you get the bid or not?

12        A    Well, the deciding factor would be your

13   seniority.  For me, I would bid a job because I

14   wanted to learn all the jobs.  So, you know, I would

15   get comfortable on a job, feel comfortable doing it,

16   learn it, and say well, let me try this now.  If

17   something would come up, I would bid that.

18        Q    And are there some jobs that are considered

19   more senior jobs and --

20        A    Yes.

21        Q    -- less senior jobs?

22        A    Yes, there are.

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

23

1    Q    Okay.  And if you could describe for me how

2    that works.

3    A    Well, I really want to say, you know, it's

4    kind of like -- because I know when I first started,

5    I know there was an employee that -- he was a

6    painter, and what he did was put the stickers -- you

7    know on the train when you see the stickers where the

8    seats go?  That was one of his responsibilities.  And

9    I thought wow, that's an easy job, but I would never

10   get it because I didn't have the seniority that he

11   had.  So in time, you know, when you see a job that

12   you feel like well, I can do that, or I want to try

13   to do that when the opportunity comes up, so what

14   happened was he bid off of it, and I said well, let

15   me put my bid in, and I happened to be the senior

16   person that -- you know, one of the senior persons

17   that bid it, so I received it.  So that's kind of how

18   it works, you know.

19   Q    And so as a result, you've been able to do

20   everything except locomotive?

21   A    Yes.  I haven't done locomotive because

22   Wilmington is just a little too far for me to drive.

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

24

1    Q    Understood.  I understand.  All right.  So

2  you work out of the Bear facility?

3    A    Yes, I do.

4    Q    Now, let's sort of use the 2004, 2005 to

5  2006 time period, okay, the last two and a half years

6  or so.  What jobs have you held in the last two and a

7  half years --

8    A    Well, I was --

9    Q    -- in car repair?

10   A    Oh, I'm sorry.

11   Q    Let me try it again.

12   A    I understand what you're saying.

13   Q    I just want to make sure it's clear for the

14  record.

15   A    Okay.

16   Q    In the last two and a half years since

17  January of 2004, what jobs have you held in car

18  repair?

19   A    I've held airbrake and a basic car

20  repairman where you just -- car repair

21  responsibilities, and I'm currently in the seat shop.

22   Q    How long have you been in the seat shop?

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

25

1        A    I might be coming up on a year in the seat

2   shop.  That was the one -- that's the last entity I

3   hadn't worked, seat shop.  It's coming up on a year.

4        Q    And you bid into that?

5        A    Yes, I did.

6        Q    Now, let's start now, and then we'll work

7   our way back a little bit.  Who do you report to now?

8        A    Okay.  Do you mean my general foreman,

9   foreman?

10       Q    Well, we'll go through that.  Maybe it's

11  easier to say what's the organizational chart of

12  being the car repairman in the Bear facility?

13       A    Do you want that now, or you want it three

14  years ago?

15       Q    Let's start with now, and then we'll work

16  our way back.

17       A    Okay.  From what I know now, at the Bear

18  facility Mr. McFadden is the superintendent.  I'm

19  going to assume that between Ed Hill and Ace

20  McDowell, I don't know if they're both on the same

21  general foreman.  For me, Barry Hudson, I believe

22  he's my general foreman.  They change titles, and

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

26

1    sometimes you don't even know.  And then my foreman

2    would be Ms. Delisa Maldonado.

3        Q    Delisa?

4        A    Yes.

5        Q    Maldonado?

6        A    Yes.

7        Q    Do you know how to spell that?

8        A    I'm not even sure.  I'm not even going to

9    take a stab at it.

10       Q    That's fine.  All right.  And that would be

11   in the seat shop?

12       A    Yes, that would be in the seat shop.

13       Q    How many individuals work in the seat shop

14   with you?

15       A    I would say there's eight of us.  There's

16   six builders, and two of us strip, so I believe

17   eight.

18       Q    Have you all been in there about the same

19   amount of time?

20       A    No.  Some of those employees have been

21   there longer than myself.  Now, the seat shop was

22   always considered a not the job to take, you know, as

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

27

1    a senior person, because you're basically on

2    production, you're supposed to produce, produce.  You

3    know, it's a constant ongoing, going, going.  So a

4    lot of the senior guys didn't want to work the seat

5    shop.

6         Q    How is your seniority level at this point?

7    You've been with the company since 1983, and 1988 as

8    car repair.

9         A    Yes.  I have about, I want to say maybe 120

10   bumps under me.  That means 120 people have to go

11   before I go out the door basically.

12        Q    And how many people above you do you think

13   at this point?

14        A    Probably 70.  The last time I checked the

15   roster, I was like number 74.

16        Q    So you're in the top half?

17        A    I'm in pretty good shape now.

18        Q    Although my experience has been that at

19   Amtrak people come and work there for a long time.

20        A    Yes, they do.

21        Q    So it's not surprising that --

22        A    Yes, they do.

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

28

1      Q    -- even as long as you've been there,

2  people have worked there longer.

3      A    Well, when I first started, I was like 150

4  on the roster.  So now I'm at 74.  It's probably even

5  lower now.

6      Q    What is the basic job progression for

7  somebody who's a union employee who wants to move up,

8  if you will, to be promoted?

9      A    Well, I'm going to give you my opinion --

10     Q    Okay.

11     A    -- because it's not like they said okay,

12 you're here, you're a car repairman, if you want to

13 be a manager, this is what you have to do.  In my

14 opinion it's basically who you know and who wants you

15 to go where they want you to go.

16     Q    All right.  Well, let me ask you this way.

17 What positions would be above car repairman?  That's

18 the basic union position?

19     A    Yes.

20     Q    My understanding is that there's a foreman?

21     A    Foreman.

22     Q    And there's different levels of foreman?

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

29

1    A    Yes, foreman 1, 2, and 3, I believe, or

2    foreman 2 and 3, and then general foreman.  I think

3    those are -- I think a general foreman, you're still

4    under a union agreement.

5    Q    Right.

6    A    Okay.

7    Q    And then if you move out of those

8    positions, then you move to manager?

9    A    Management, management, yes.

10    Q    And in your understanding management

11    doesn't necessarily mean you supervise people; is

12    that correct?

13    A    No, not necessarily, because you may

14    have -- you may be on a train crew.  Well, you may

15    have responsibilities documenting information -- see

16    what I'm saying? -- but you're still a management

17    position.

18    Q    It just means you're not covered by a union

19    agreement?

20    A    Right.  You're a salary waged employee.

21    Can I make a note here?  Also that you can go from,

22    and people have gone from being a car repairman

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

30

1   straight to a manager and skipped the foreman segment

2   of that.  Okay?

3       Q   There's no requirement that you absolutely

4   have to have been a foreman before you can move to

5   the ranks of management.  Is that what you're saying?

6       A   That's correct.

7       Q   Now, has your supervisory line changed if

8   we go back a year or two years?  We talked about who

9   your foreman is now, who your general foreman is.

10  Has that changed?  And let's just focus on 2004, 2005

11  and 2006.  Has that changed?

12      A   Well, basically it changes when you go to a

13  different gang.  In other words, you're going to get

14  a different foreman.  Nine times out of ten you're

15  going to have a different general foreman.  So yes,

16  because when I was working airbrake, my foreman was

17  Mr. Pender.  Well, I had Mr. Pender at one time.  I

18  also had Mr. Baker.  But the foreman can change, but

19  the general foreman was Roosevelt Gill.

20      Q   And that was when you were at airbrake?

21      A   Yes.

22      Q   What's Mr. Gill's race?

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

31

1    A    He's an African-American.

2    Q    You said you had a foreman by the name of

3    Pender?

4    A    Yes, Mr. Pender.

5    Q    What's his race?

6    A    He's a Caucasian.  Mr. Baker is a

7    Caucasian.

8    Q    Now, you went from airbrake -- did you go

9    from airbrake to seat shop, or you said you were in

10   basic car repair?

11   A    Yes, I did.  I went from airbrake to the

12   seat shop because my airbrake position was abolished.

13   Q    Anybody else's abolished when that

14   happened?

15   A    No, I don't think it was.  I mean there

16   probably were other jobs because usually when the

17   abolishments are done, they'll put the abolishments

18   up, and they're effective the same day for everybody,

19   so -- but in my gang I can't remember.

20   Q    But there were other jobs at the same time?

21   A    Yeah, there were other jobs at the same

22   time.

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

32

1    Q    And then you went to the seat shop?

2    A    Yes.

3    Q    And who was your foreman when you first

4    went to the seat shop?

5    A    When I first went to the seat shop, Ms.

6    Maldonado was my foreman.

7    Q    And she still is?

8    A    She still is, yes.

9    Q    And what's her race?

10   A    She's African-American.

11   Q    What I'm going to do now is start handing

12   you documents and have you look at them.  We're going

13   to talk about those as we go through.

14   A    Yes.

15   Q    This lawsuit is based on a charge of

16   discrimination that you filed with the Equal

17   Employment Opportunity Commission.

18   A    Correct.

19   Q    I'll show you a document we've marked as

20   Exhibit 1 and ask you if you recognize that document.

21   A    Yes, I do.

22   Q    Is that the charge of discrimination you

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

33

1    filed with the EEOC?

2        A    Yes, it is.

3        Q    And that's your signature at the bottom?

4        A    Yes, it is.

5        Q    Dated March 4th, 2005?

6        A    That's correct.

7        Q    In this charge of discrimination, if I look

8    down in the fourth paragraph, it says attached are a

9    series of incidents that took place at the

10   respondent's facility since I started working there.

11   I realize that some of these incidents are time-

12   barred, but I want to show a clear pattern of

13   discriminatory behavior and treatment.  Do you see

14   that?

15       A    Yes, I do.

16       Q    Do you understand what time-barred means?

17       A    Yes.

18       Q    What's your understanding of what that

19   means?

20       A    Well, first of all, my initial charge of

21   discrimination, the EEOC put this in here I guess to

22   -- my original wordings were there are some incidents

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

34

1    that have taken place, and even though they may not

2    have been in the one-year period that is required by

3    the EEOC charging -- you know what I mean? -- you

4    understand what I'm saying? -- incident, that they

5    were still to show they had been concurring and

6    ongoing.  So I'm assuming that the time-barred means

7    that they're not included in the charge time period,

8    but they occurred.

9         Q    And do you see that up there on the top

10   where you signed as the dates of discrimination took

11   place, the earliest was 10-1, 2004?

12        A    Yes.

13        Q    And you alleged race, sex and retaliation?

14        A    Yes.

15        Q    All right.  Now, let me hand you a document

16   we've marked as Exhibit 2.

17        A    Excuse me.  This should be 10 because it

18   should be for a year.  I did it for a year.  I don't

19   know how that's in there.  I don't understand.

20        Q    Let's be clear about that.  You're saying

21   that your -- you're looking at what?

22        A    I'm looking at -- this says date the

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

35

1   discrimination took place.  So the earliest is 10-1,

2   2004, and the latest is 10,000 -- 10-1, 2004.  That's

3   just like that day.  It should be 10-1, 2005.  I

4   believe that's what my documentation was.

5        Q    Well, hold on, because you filed the charge

6   in March of 2005.

7        A    Right.

8        Q    So it couldn't be 10-1, 2005 as the

9   latest.  Do you think you're going back a year?

10  10-1, 2004 would be the latest, and the earliest

11  would be a year earlier?

12       A    I'm not sure.  I was assuming that when I

13  filed this, it was for the year blockage of what had

14  happened to me.  That's why I put the jobs I had

15  applied for, the incidents that took place.  So I

16  don't know.  Is that how they list it?

17       Q    Okay.  That's fine.

18       A    Yeah, that's how they list it.

19       Q    But you were looking at a year's --

20       A    Blockage.

21       Q    -- time period?

22       A    Yes, I was.

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

36

1    Q    Okay.  Thank you very much.  That helps

2  clarify things.

3    A    Okay.

4    Q    Let me hand you a document that's been

5  marked as Exhibit 2 and ask you if you recognize

6  that.

7    A    Yes.

8    Q    That was your dismissal and notice of right

9  to sue by the EEOC?

10    A    Correct.

11    Q    And that appears to be dated November 2nd,

12  2005?

13    A    Correct.

14    Q    And you received a copy of that?

15    A    Yes, I did.

16    Q    Do you recall when you received a copy of

17  that?  On November 2nd?

18    A    Yeah, it was prob -- no, it wasn't on the

19  2nd.  It was probably like within that week.

20    Q    And you understood that the EEOC had

21  dismissed your claim?

22    A    Yes, but I based it on, you know, what they

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

37

1    had X'd here.  It said it was unable to conclude that

2    the information obtained established violations.  It

3    does not --

4        Q    Right.

5        A    But this does not clarify that the

6    respondent is not in compliance with the statute.

7        Q    All right.  And then, so as a result of

8    receiving that notice of right to sue, you filed your

9    lawsuit?

10       A    Yes, I did.

11       Q    Let's hand you a document that's been

12   marked as Exhibit 3 and ask you if you recognize that

13   document.

14       A    Yes, I do.

15       Q    And that's the complaint you filed in this

16   matter?

17       A    Yes, it is.

18       Q    And I'll ask you to look through all the

19   pages just to make sure that you recognize it.

20       A    Yes, I recognize this.

21       Q    If you look at the second page of the

22   complaint, paragraph 8, where it reads plaintiff

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

38

1    filed charges with the Equal Employment Opportunity

2    Commission of the United States regarding defendant's

3    alleged discrimination -- discriminatory conduct

4    on -- that would be 11-2, 2005 -- that would be

5    November 2nd, 2005 --

6         A    Correct.

7         Q    -- that can't be right.

8         A    Well, what I did, I took the date from the

9    right to sue letter.  That's what I did on that.

10        Q    So it's not when you -- but that's not when

11   you --

12        A    Right.

13        Q    -- filed the charge, correct?

14        A    No, it's not.  It should have been actually

15   March 4, 2005.

16        Q    Okay.

17        A    Okay.

18        Q    That's fine.  Just making sure that I --

19        A    Okay.

20        Q    -- got the dates right as we go through

21   here.

22        A    Uh-huh.

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

39

1    Q    Now, if we go down to paragraph 10, all

2    right, you explain what you're challenging in the

3    lawsuit, correct?

4    A    Yes.

5    Q    Failure to promote was a little circle you

6    circled in there under C.  Do you see that?

7    A    Yes, I do.

8    Q    And those would be the positions that you

9    had applied for for the year you were talking about?

10    A    Yes.

11    Q    Other acts specified below, and so we list

12    these here.

13    A    Yes.

14    Q    Plaintiff was terminated from the foreman

15    training program.  Do you see that?

16    A    Yes, I do.

17    Q    When did that occur?

18    A    That occurred in 1999.

19    Q    Okay.

20    A    I may have -- not have the year right, but

21    I'm thinking it's 1999.

22    Q    Okay.

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

40

1      A     Okay.

2      Q     Number 2.   Plaintiff did not receive the

3   court-ordered relief in the class action suit of

4   McLaurin against Amtrak.   Do you see that?

5      A     Yes.

6      Q     When did that happen?

7      A     Okay.

8      Q     And we may talk more about the consent

9   decree in McLaurin.

10     A     Okay.   Basically at the time that I was

11  expelled from the foreman's program, I had a charge

12  in of discrimination, okay, in federal district

13  court, and I had trouble finding an attorney.   So

14  what happened was someone called me and said Amtrak

15  has a class action suit, and you need to contact them

16  about putting paperwork in and join that suit.   So I

17  talked to a Mr. Warren Kaplan out of Washington,

18  D.C., and he said look, just come into the class

19  action suit, and bring your retaliation charge and

20  your discrimination charge, and just go with the --

21  carry it over here, so that's what that part --

22     Q     That's about?

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

41

1    A    Yes.

2    Q    And that would have occurred back in the

3    late '90s then?

4    A    No, because when I got kicked off the

5    foreman's program, that was '99, and this was

6    starting -- just starting to substance itself, the

7    McLaurin.

8    Q    So that was in 2000 --

9    A    Yes, it was --

10   Q    -- 2001?

11   A    -- 2000, 2001, yes.

12   Q    Number 3.  Plaintiff has been forced to

13   work in a hostile work environment in addition to

14   being the subject of ongoing retaliation, harassment

15   and discriminatory conduct.  Do you see that?

16   A    Yes, I do.

17   Q    Do you contend that you've been subjected

18   to a hostile work environment since -- in 2004?

19   A    Yes, from day one I have been.

20   Q    All right.  In 2005?

21   A    Yes.

22   Q    In 2006?

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

42

1    A    No.  It has gotten better.  It has gotten

2    better.

3    Q    And when do you contend it started getting

4    better?

5    A    Well, you know, it's really ironic because

6    when I first came in the seat shop, I normally work

7    7:00 to 3:00, and their schedule is 6:00 to 2:00.  By

8    me living a 40 -- by me living in an area where I'm

9    45 minutes away, 6:00 to 2:00, I have to get up at --

10   I have to leave my house at 5:00.  So I had requested

11   to work 7:00 to 3:00, and I was told no, you have to

12   work 6:00 to 2:00, that's your shift.  So that Monday

13   I was late, I got there around 6:30, and when I

14   arrived at work, Ms. Maldonado told me that Mr. Hill,

15   Mr. Al Thompson and Mr. Fox were all waiting at the

16   door for me at 6:00 o'clock.  So I said wow, I guess

17   I was special.  So anyway --

18   Q    Well, that's when you were supposed to come

19   to work, right?

20   A    Right.  But they normally don't greet

21   employees like that.  When you bid a job, it's like,

22   you know, you bid your job.  It's not like you have

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

43

1    to have some supervisor there to see that you show

2    up.  Your foreman is there, so -- and everybody was

3    -- thought it was a little abnormal.  But anyway, so

4    the job that I wanted to bump, because I actually had

5    to bump into the seat shop, so there was a big

6    controversy about, well, I wanted to bump a specific

7    job which was being held by a junior person, but they

8    told me I couldn't bump him, that I had to bump the

9    lowest man, and then if it was up to the discretion

10   of the foreman, I could take possession of the

11   position.  So I went to my union rep, and he said

12   look, they're just twisting the rules around, I don't

13   know if it's because you -- it's you or what, but he

14   said just go ahead and bump the lowest person and

15   then request the job that you want once you get

16   there.  So the job that I wanted to take possession

17   of was basically building seat backs, and my very

18   first day when I got there, I was informed that I

19   would go -- I would receive training to build seats.

20   So for three days I watched the lead person build a

21   seat and also assisted in building a seat myself.

22       Q    So you got the training?

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

44

1       A    Yes.  Well, I got -- well, forced,

2   whatever.  Okay.  So after a week, I was still over

3   in the building the seat area.  So the morning we

4   were having our safety meeting, and I was informed

5   that I was going to build, and I said when am I going

6   to get possession -- take possession of the position

7   that I bumped -- that I came over here for?  And

8   that's when Ms. Maldonado said today.  So I went

9   over, and I started building seats that day.  So

10  basically what I'm saying is normally when you take

11  possession of a job, you just take possession.  They

12  kind of bull squaggled me.  They kind of pulled me

13  around.  I don't know if they were thinking if we tug

14  her a little bit, she won't stay here, she'll bid

15  out, but that's what they did.

16      Q    And who is they?

17      A    Well, Delisa gets her orders from Ed Hill,

18  Al Thompson and Mike Fox.  She doesn't really make

19  any decisions.  They tell her who's going to do what,

20  who's going to do the dock, who's going to build,

21  who's going to strip.  That's what they do.

22      Q    And your testimony is she doesn't have a

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

45

1    say in that?

2    A    Not much.

3    Q    When did you go to the seat shop?

4    A    It was last year, 2005.  I want to say

5    October, November.  That's why I want to say I'm

6    coming up on a year.  I could find out specifically.

7    Q    That's okay.

8    A    You know, that's the actual possession

9    time.

10    Q    All right.  So just to be clear, is it your

11    testimony that in 2006 you've not been subjected to

12    --

13    A    No.

14    Q    -- a hostile work --

15    A    Everything's been -- everything's been --

16    well, I'll say it's been okay.

17    Q    All right.  In 2006.  Now let's go back to

18    2005.  You just referred to the incident when you

19    first came to the seat shop.

20    A    Yes.

21    Q    All right.  Do you contend that was taken

22    for a discriminatory reason, because you're

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

46

1    African-American or because you're female?

2        A    Yes.  And I'm going to say this, because

3    normally when a person bids a job, you don't have a

4    superintendent or a supervisor waiting for you to get

5    to the job that morning.  I don't know if you're

6    understanding what I'm saying.  Normally I'm going to

7    start my job in gang 66 Monday.  I just go to work,

8    and there's my foreman, and he tells me your job, and

9    I go to work.  There's no big thing about it.

10       Q    Maybe I misunderstood --

11       A    Okay.

12       Q    -- your testimony.  I thought when you

13   first bid the job, you said you wanted to work at a

14   different time than the regular shift.

15       A    Yes.

16       Q    All right.  And that the first day or one

17   of the days you were actually showing up late.

18       A    Yes.

19       Q    All right.  And so they'd been waiting --

20   you heard they'd been waiting there at 6:00 o'clock

21   when the shift started?

22       A    Right, because they probably said she's

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

47

1    going to be late.  They probably figured that because

2    that's why we're not going to allow her to change her

3    shift, but for the record there's people at the

4    facility that come in on a daily basis at any time.

5    If they want to come in at 7:00, they work 7:00 to

6    3:00, if they want to come in 6:00 to 2:00, they work

7    6:00 to 2:00, but there's only a select group of

8    people who are not going to be allowed to change

9    their shift when it is a union rule that you can

10   change your shift two hours either before or after

11   your actual listed start.

12        Q    Now, is that the incident that you

13   contacted Amtrak's office of diversity about?

14        A    No, that's not -- that's not one, but that

15   would be --

16        Q    There was a prior incident involving --

17        A    Yes, it was.

18        Q    There was a prior incident involving

19   attendance that you had contacted DRO about?

20        A    Yes, I did.

21        Q    Okay.  We'll talk about that.

22        A    Okay.

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

48

1      Q     But you contend that -- well, do you

2   contend that they were waiting there for you because

3   of your race?

4      A     I don't know how to answer that.  I want to

5   say they were waiting there because it's me, and I'm

6   black.

7      Q     Okay.

8      A     Okay?

9      Q     Would you agree that there's a difference

10  between waiting for you because of who you are --

11     A     Yeah.

12     Q     -- separate from what your race is?

13     A     No.  You're confusing me on that.

14     Q     Okay.  Well, I don't want to do that.

15     A     Well, let me put it like this.  If I was a

16  white woman or a Caucasian woman, they wouldn't have

17  been waiting there for me.  Does that help you

18  understand it a little better?

19     Q     What if you were an African-American man?

20     A     I'll say yes if you have done the things

21  that I have done.  Do you understand what I'm saying?

22     Q     No.

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

49

1      A      When I say that, like my record, when

2   you -- when you do something, and it doesn't -- it's

3   not justifiable, or it's not fair, I usually speak on

4   it.  Okay?  Now, what I'm trying to say is if you're

5   an African-American male, and you just started

6   working there, and say you're Ed Hill's friend's

7   nephew, he's not going to show up to see that you get

8   there at 6:00 in the morning, but say you're an

9   African-American male, and Ed Hill doesn't like your

10  buddy that got you in.  He's going to be waiting on

11  you, or there's a possibility he'll be waiting on

12  you.

13     Q      So you could have two --

14     A      Understand?

15     Q      You could have two African-American men

16  treated differently --

17     A      Exactly.

18     Q      -- based on whether Ed Hill likes you or

19  not?

20     A      Exactly.  That's what happens, and it

21  happens every day.

22     Q      What's Mr. Hill's race?

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

50

1    A    Mr. Hill is a Caucasian.

2    Q    How about Mr. Thompson?

3    A    He's a Caucasian.

4    Q    How about Mr. Fox?

5    A    Caucasian.

6    Q    In this group of individuals with whom you

7    work in the seat shop, what's the racial and gender

8    mix?  You say you have about eight people?

9    A    There's eight people.  There's two

10   African-Americans, myself and Kevin Bishop, who is a

11   male, and the rest are Caucasian.

12   Q    Are they male or female?

13   A    They're males.

14   Q    So you're the only female?

15   A    Only female.

16   Q    So when you said you were a white female,

17   that was an example.  That's not really an event.

18   A    Oh, yes, I can give you events.

19   Q    Okay.

20   A    Basically what I'm saying is -- and it's an

21   unspoken rule at Bear.  There's two sets of rules.  I

22   can give you all kind of examples if you want them.