DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

51

1       Q     Well, tell me what the two sets of rules

2   are.

3       A     Okay.  Just like I said about if you're an

4   African-American male and your friend -- okay.  Let

5   me give you --

6       Q     Go on.

7       A     -- another example.

8       Q     Go on.

9       A     Let me give you another example.  Three

10  weeks ago an employee was caught on a car sleep.  Ed

11  Hill caught him.  Okay?  Get up.  Go back to work.

12  Three or four days later Mr. McFadden had company.

13  He's bringing them up through the shop.  He goes up

14  on a car.  There's an employee asleep.  He nudges

15  him.  Get up.  The guy wakes up, and he says --

16  McFadden, I guess trying to justify finding an

17  employee asleep, says oh, you worked a double last

18  night.  And the employee says no, I didn't.

19  Everybody's laughing about this.  It's funny.  Two

20  weeks ago a young lady who was an African-American

21  was caught asleep.  She's on second shift, Pam Dye.

22  He took her out of service.  Lost five days pay, and

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

52

1    she's under a waiver or some type of -- she signed

2    some type of agreement so if she gets caught asleep

3    again, she'll lose her job.  So everybody knows

4    there's two -- that's what I mean by two sets of

5    rules.

6        Q    And in your opinion with those two sets of

7    rules, it's whether you're liked or not?

8        A    No.  It's nine times out of ten if you're

9    black or white and if you're liked or not.  Basically

10   99 percent of the time it's a black-white issue, to

11   be honest.  It's a black-white issue.

12       Q    Okay.  And you're claiming that you've been

13   subjected to this different rule --

14       A    Yes.

15       Q    -- because you're an African-American

16   female?

17       A    Yes.

18       Q    And because you speak up?  I mean did I

19   hear -- is what I heard you saying because you speak

20   up --

21       A    Yes.

22       Q    -- if you see something that's --

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

53

1      A      Yes, that's not right.  And I'll say

2   something to the appropriate person, but it's like

3   now it's not -- you don't even -- it's a waste of

4   time because they don't do anything.  That's why I

5   always go to the outside, which took me to the

6   resolution department, so --

7      Q      Okay.  So in 2005 you gave me one example.

8   Can you give me another example of how you've been

9   subjected to a hostile work environment?

10     A      Well, can I get my paperwork out?  Because

11  I listed a bunch of incidents.

12     Q      Would it be easier to do it that way?

13     A      Yeah.  I listed some incidents.

14     Q      Then you know what?  We'll get to that.

15  That's fine.

16     A      Yeah.  Okay.

17     Q      Because I don't want it to be a memory

18  contest.

19     A      No.

20     Q      That's fine.  But you say in 2004 and 2005

21  there were incidents --

22     A      Yes.

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

54

1    Q    -- of a hostile environment?

2    A    Yes.  When I listed my claim, I even listed

3    them in there.  I listed incidents that happened to

4    me and the ones if you want to call them time-barred.

5    Q    How about retaliation?  Do you contend that

6    the behavior is retaliatory?

7    A    Oh, yes.

8    Q    Okay.  Because you filed complaints?

9    A    Yes.  And also the one with the foreman's

10   program, that's the one where I refused to sign a

11   release.

12   Q    We'll talk more about that.

13   A    Okay.

14   Q    That's fine.

15   A    Okay.

16   Q    All right.  Is that when it all started --

17   A    No.

18   Q    -- in your opinion?

19   A    No.  Oh, no, because I -- no, in my opinion.

20   Q    It started before then?

21   A    No.  It started before then, yes.

22   Q    Because you'd filed lawsuits?

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

55

1     A    Yes.  It's ongoing.  It keeps going.  It's

2     a big ball.  It just keeps on going.

3     Q    And harassment?

4     A    Yes.

5     Q    All right.  And other discriminatory

6     conduct?

7     A    Yes, yes.

8     Q    All in 2004 and 2005?

9     A    Yes.

10    Q    Do you contend you've been denied pay or

11    any type of wage increase or anything like that as a

12    result of the hostile work environment, harassment,

13    retaliation, discrimination, in 2004 and 2005?

14    A    No, because as a car repairman, when you

15    bid that job, it never changes.  Your pay stays the

16    same.  Now, there was an incident where we had bad

17    weather, and I don't know if it was -- I don't know

18    if I listed that in that 2004, 2005 claim or not, it

19    might have been prior to that, but it was an incident

20    where some hurricane or whatever, we had hostile rain

21    and all that, and I started out to work, and my

22    visibility was so low, I turned around and went back

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

56

1    home.  When I came in the next day, I was told that

2    Mr. Butler sent everybody home because of the

3    weather, but he paid everyone.  So when my union rep

4    said well, he doesn't want to pay you because you

5    didn't even get here, I said well, I couldn't get

6    here.  And I have a letter that documented him saying

7    she didn't even come, so I'm not going to pay her.

8        Q    So the distinction he made was that for

9    those people who actually came and then got sent

10   home --

11       A    Right.

12       Q    -- he'd pay them?

13       A    Right.

14       Q    Since you never made it in the first place,

15   he wasn't going to pay you?

16       A    Right.  But that's not the way it should

17   have been.  My union rep said it should have been

18   every hourly wage employee car repairman should have

19   received pay for the day.

20       Q    Is there a grievance process by which you

21   can bring those issues forward?

22       A    Yes.  The union has to write it up, which

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

57

1    he did.  Bruce said he was going to submit it, and

2    whatever came from that as far as I know --

3         Q    Did you ever get paid?

4         A    Not that I know of.  Not that I know of.

5         Q    But that would have been a union issue?

6         A    Yes.  Well, that would have been -- Mr.

7    Butler -- what happens is you put a grievance in.

8    You know, it's really -- it's like the head honcho

9    whips you, and then you have to send him a letter

10   saying why did you whip me?  And don't whip me

11   anymore.  And he sends you a letter saying I'm going

12   to whip you when I want to whip you, so -- but it's a

13   process that happens.

14        Q    Right.  Through the collective

15   bargaining --

16        A    Yes.

17        Q    -- process with the union?

18        A    Right.  So on that incident I don't know.

19   It can go to step 2 or 3 or 4, whatever, I guess if

20   the union rep feels it should.

21        Q    Did you ever pursue it with your union rep?

22        A    Well, I left it up to his judgment.  I do

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

58

1    know that I had a grievance in from when we had the

2    layoff, and I was assigned to the truck shop, and I

3    was -- bid the job, and I'm working the truck shop,

4    and because I'm airbrake-qualified, Mr. Butler is

5    telling them to pull me out of the truck shop every

6    morning and send her over to 26 track, do airbrakes,

7    send me over. So my union rep came to me and said --

8    I mean apparently it was an ongoing thing. It

9    happened for like 77 days. And my union rep came to

10   me and said look, under the union agreement after 10

11   or 20 days or 7 days -- I don't know exactly what the

12   time period is, but they're supposed to put a job up.

13   In other words, an airbrake job should have been

14   posted to show that there's a need there, either that

15   or abolish the truck shop. Do you understand what

16   I'm saying?

17        Q    Uh-huh.

18        A    And he didn't do that. So he was saying

19   that I was entitled to monies from being pulled off

20   of my assigned position and working the other

21   position for those 77 days, and that paperwork, I do

22   remember him periodically telling me that Mr. Butler

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

59

1    said no, and we're going to go to Washington, and I'm

2    going to -- you know, I don't know.

3        Q    Did you follow up on that with your union

4    rep?

5        A    No, I haven't heard anything on it.  The

6    last time he told me he was going to Washington to

7    speak to someone in the appeals process.

8        Q    When did that occur?

9        A    I believe it was in that 2004, 2005 cluster

10   because I listed that.  I believe I listed that.

11       Q    Okay.  Let me talk about your failure to

12   promote allegations.  You applied in the 2004 time

13   period -- it's the basis for the charge --

14       A    Yes.

15       Q    -- for a number of positions.

16       A    Yes.

17       Q    Do you contend you should have been

18   selected for any or all of those positions?

19       A    Yes.  Now, let me explain myself.

20       Q    Okay.

21       A    Okay.  I'm going back to the fact that from

22   the McLaurin suit, I was listed as a plaintiff to

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

60

1    receive job promotion, myself and five other people.

2    Okay. That was in -- I can find the letter. It's

3    dated 2002, 2003. So what happened was when they

4    contacted me and said you're going to receive a

5    promotion, so I said no. Remember I'd been applying

6    for a management job since I started in 1983. When I

7    originally started working for Amtrak, I had an

8    associate's degree. I received my bachelor's degree

9    in business from the University of Maryland in 1986.

10   Now, when I came and started working for Amtrak in

11   '83, the personnel human resources said look, get

12   your foot in the door even if you've got to start on

13   the track, and you'll move yourself up through

14   management, your continuing education. By the time

15   you get your bachelor's degree, you'll be in a good

16   position to promote to a management position. Okay.

17   So I'm putting in for management jobs all the time,

18   and most of the requirements for the -- basic

19   requirement for the management positions is a high

20   school diploma. I have an associate's, and now 1986

21   I have a bachelor's degree. So I put in for certain

22   jobs, and I do receive interviews, and when I'm

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

61

1  interviewed, I'm told that any time a job is posted,

2  look at the must have.  If it says must have a high

3  school diploma, she said apply.  If it says must have

4  two years accounting experience, apply if you have

5  it.  She said as long as you meet the must have,

6  don't cut yourself short, apply for it.  So that's

7  always been my rule of thumb.

8        Q    And there are must haves -- and we'll go

9  through this as we talk about those different

10  positions that we've talked about, but there are must

11  haves for both education and experience, correct?

12       A    True.

13       Q    Now, do you contend that for the different

14  positions you've applied for --

15       A    Yes.

16       Q    -- that you've not been selected because of

17  your race?

18       A    Yes.

19       Q    Because of your sex?

20       A    Yes.

21       Q    And in retaliation?

22       A    On some I'm sure.  I'm sure, yes.

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

62

1      Q      I just want to make sure we get the scope

2   of what you're talking about in your lawsuit.

3      A      Okay.

4      Q      That's what I want to get at.

5      A      I understand what you're saying.

6      Q      So that's your contention, that I've

7   applied for positions in the 2004, 200 -- 2004 time

8   frame from the time period of the year before you

9   filed your charge, that I've applied for those

10  positions, that I didn't get them, and I didn't get

11  them because of my race and sex and in retaliation in

12  some circumstances?

13     A      Well, I'm not going to put the retaliation

14  on where I don't feel comfortable putting the

15  retaliation on that clause.

16     Q      Okay.

17     A      Okay?

18     Q      Explain to me.

19     A      Because I don't know if the person in human

20  resources is oh, here's Alvia Lacy putting in for

21  another job, I'm sick of her, forget it.  You see

22  what I'm saying?  I don't know that.

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

63

1      Q    Okay.

2      A    But the retaliation comes from what I have

3  been -- what harm has been done to me at Bear, which

4  I know has happened.  You see what I'm saying?

5      Q    Okay.  So we're -- I thank you.

6      A    Okay.  You understand?

7      Q    That's helped me clarify it.

8      A    Okay.

9      Q    So the retaliation -- well, let me make

10  sure I clarify because it's real important that we --

11      A    Yes.

12      Q    -- get it for the record.  So the race and

13  sex claims are both things that have happened to you

14  at Bear?

15      A    Yes.

16      Q    And the promotion?

17      A    Yes.

18      Q    The retaliation claim is, to the things

19  that have happened to you at Bear, not promotion?

20      A    True.  Now let me clarify this.  Okay.  I

21  put in for a position.  Washington gets the

22  application.  And this has happened.  I'm not -- I'm

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

64

1  going to tell it.  This is an incident that did

2  happen.  I put in for a job at -- in Phillie,

3  engineering department.  They called me.  We've got

4  an interview for you such and such a day.  I go to

5  Phillie.  I'm interviewed.  When I go in, the

6  personnel human resources specialist tells me, you

7  know, someone's really butting for you to get this

8  job.  They really feel you're qualified, and you

9  deserve it.  Great.  I'm in good shape.  I do the

10  interview with the head of the department.  He tells

11  me Ms. Lacy, you know, out of everyone we

12  interviewed, looks like you're going to finally be

13  promoted.  You're a good candidate for the job.  I'm

14  feeling great.  I leave there.  I go back to Bear.  I

15  go back to my normal duties because normally after

16  you get interviewed, you get your denial letter or

17  whatever.  A few weeks pass.  I don't hear anything.

18  I'm like wonder what happened.  Well, of course I've

19  been on interviews before, I've received denial

20  letters, so I just say whatever.  Somewhere maybe

21  something got caught up.  A few weeks later I asked

22  to go look at my personnel file, which is located at

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

65

1    Bear.  My union representative takes me in.  I look

2    through it, and there's an evaluation form that was

3    sent from Philadelphia the same time I was

4    interviewed.  It was sent to Bear where I'm stationed

5    and work.  Okay?  On the evaluation form you would

6    have thought I was retarded.  Some of the questions

7    were what tasks has Ms. Lacy completed, or what tasks

8    has the employee completed that shows that he or she

9    knows their job?  I mean I could pull this out.  This

10   is not verbatim, but --

11       Q    Well, let's take a break for a second and

12   go off the record.

13           (Discussion off the record.)

14   BY MR. VANDEUSEN:

15       Q    Ms. Lacy, before we took a break, you were

16   mentioning a document that had been provided back to

17   Bear from the Philadelphia people.

18       A    Yes.

19       Q    And when we took a break, you had gone

20   through and found that document that you were

21   referring to; is that correct?

22       A    That's correct.

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

66

1    Q    And you gave me a copy of that.  Now, when

2    did this occur?

3    A    This occurred right after -- I'm assuming

4    either within maybe a day or so after I had

5    interviewed at Philadelphia for the engineering

6    position.

7    Q    Let me ask you when did you interview for

8    the engineering position?

9    A    The position was in -- it was in '94.

10    Q    So we're talking 1994 here, correct?

11    A    Yes.

12    Q    Okay.  Fine.  Thank you.  Now, you

13    mentioned earlier this isn't the first lawsuit you

14    filed against Amtrak.

15    A    No, it isn't.

16    Q    I'm going to show you a document.  Would

17    you say this might be the eighth lawsuit you've filed

18    against Amtrak?

19    A    You mean total?

20    Q    Yeah.

21    A    Including injuries?

22    Q    No.  Well, maybe.  I don't know.

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

67

1      A    I don't know.

2      Q    Let's take a look at it, shall we?

3      A    Let's take a look at it, yeah.

4      Q    Exhibit 4.

5      A    Yeah.

6      Q    Now, what we've done is you can go on and

7   find cases with your name as a plaintiff --

8      A    Okay.

9      Q    -- and Amtrak as a defendant --

10      A    Okay.

11      Q    -- in the federal courts in the United

12   States.  That's what this document shows.

13      A    Okay.

14      Q    Through what's called the Pacer, P-a-c-e-r,

15   system.

16      A    Yes.

17      Q    And it reflects that there are eight

18   lawsuits with the most recent one, the one we're here

19   today about, on the top.

20      A    Yes.

21      Q    Do you see that?

22      A    Uh-huh.

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

68

1    Q    Now, would you say that that's accurate

2  with respect to claims of discrimination --

3    A    Yes.

4    Q    -- that you've filed?

5    A    These are not all discrimination suits.

6  They're not all discrimination.

7    Q    Which ones are the discrimination?

8    A    That I cannot tell you, but I have received

9  injuries at Amtrak, and I'm sure these are -- the

10  injury suits are listed here.

11    Q    Okay.  But you filed some in Pennsylvania,

12  correct --

13    A    Correct.

14    Q    -- some of these lawsuits?  You filed some

15  of these lawsuits in Maryland?

16    A    Correct.

17    Q    You filed one in D.C.?

18    A    Yes.

19    Q    And a couple in Delaware?

20    A    Yes.

21    Q    What makes you decide where you want to

22  file a lawsuit?

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

69

1     A    Well, basically the court tells me.  In

2    other words, the case that's filed in Delaware, I was

3    told by EEOC that I had to file it in Delaware

4    because that's where the harm was done.

5    Q    I see.

6    A    Okay?

7    Q    Okay.  And the Pennsylvania cases, do you

8    remember those?

9    A    The Pennsylvania cases were probably, if

10    I'm remembering correctly, because I had a back

11    injury that happened while I was employed there at

12    Bear, and the attorney was located in Philadelphia,

13    so I'm assuming that's why he filed that there.

14    Q    All right.  It's always easier, right?

15    A    Yeah.

16    Q    The Maryland cases, how about the Maryland

17    cases?

18    A    The Maryland case, probably because my

19    initial suit for discrimination, one of the first

20    that I did, I went to the EEOC department in

21    Washington, and they said that I should be filing it

22    in the Maryland district, so that's probably why that

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

70

1    one is there.

2        Q    I see two of those.  There was one filed in

3    Maryland in 1994 and one filed in Maryland -- or in

4    1993 and one filed in 1997.  Do you see those?

5    Number 4 and number 7 on the list.

6        A    Yes.

7        Q    Are those both discrimination claims?

8        A    I am not 100 percent sure.  I'd have to go

9    back and look at my documents.

10        Q    That's fine.  Are there any other lawsuits

11    other than these that you've filed against Amtrak in

12    any other courts?

13        A    Not that I know of.

14        Q    Is it possible there are some that you

15    don't know about that you've filed?

16        A    No, there shouldn't be.

17        Q    Have you prevailed in any of these cases

18    related to discrimination?

19        A    Yes, I have.  Yes, I have.  Not the

20    discrimination.  One of the discrimination cases.  I

21    don't know.  I think it was one of my earlier ones

22    where they told me that they were going to be more

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

71

1   fair in their selection process and not be

2   discriminatory towards me.  That was one of my first

3   ones.  A Mr. McFallen represented me on that.

4        Q    Was there a settlement?

5        A    Yes, there was.

6        Q    Was there a monetary settlement?

7        A    Yes, there was.

8        Q    Do you recall what that was?

9        A    It was very marginal.  I don't remember

10   exactly.  It was maybe like 10 -- maybe 10 or 15,000,

11   but they had promised me to be more fair in the

12   promotion process, and that was good enough for me.

13   That's all I wanted.

14        Q    Any of the other discrimination claims?

15   You say you've not prevailed in any of the other

16   ones?

17        A    Well, one of these discrimination cases I

18   had filed when I came in for the deposition just as

19   I'm doing today, not with you though.  The counsel

20   representing Amtrak showed me a paper saying that I

21   had signed a sheet which dissolved that charge.  I

22   mean my signature was on the sheet, but I didn't

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

72

1    remember signing it, so I didn't challenge it.  At

2    the time I probably was going through some things

3    with my dad and my mom or whatever, and I was like if

4    you say so, and I just let it go because I was

5    telling one of the attorneys about that.  That's why

6    I was kind of scared to come in here today.

7        Q    Well, you're doing just fine.  Okay.  Let

8    me show you a document which may be helpful with one

9    of the cases we're talking about here.  I think this

10   is the one related to the McLaurin matter.  We've

11   marked it as Exhibit 5.

12       A    Okay.

13       Q    Do you recognize this document?

14       A    No, I don't.  This is the first time I've

15   seen this, first time I've seen this.

16       Q    That's your name?

17       A    Yeah, that's in my name.

18       Q    That's your lawsuit?

19       A    Yes.

20       Q    And in fact, if we go back, and we look on

21   the Pacer system, that would be --

22       A    Number 8.

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

73

1    Q    -- number 6?

2    A    Yes.

3    Q    That was the one that we've been referring

4    to before about you had a promotion --

5    A    Okay.

6    Q    -- issue, and then you wound up talking to

7    Mr. Kaplan?

8    A    Yes.  Okay.  Now, see --

9    Q    The foreman program I mean.

10    A    See, this is kind of confusing because I

11    received -- this is basically saying that's

12    dismissed; is that correct?  Is that what this form

13    is showing?

14    Q    What Exhibit 5 shows is that the case that

15    you'd filed in Pennsylvania, which is number 6 on the

16    Pacer list --

17    A    Yes.

18    Q    -- was dismissed because that was your

19    individual case, and you were going to deal with

20    McLaurin.

21    A    Yes, I was going to join that class action

22    suit.

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

74

1       Q    Or had joined --

2       A    Yes.

3       Q    -- McLaurin at that point?

4       A    Okay.

5       Q    Right?

6       A    Yes.

7       Q    If you look down on the sixth line -- fifth

8   and sixth line, it was uncontested that you were a

9   member of the class certified in McLaurin in which a

10  consent decree was entered expressly precluding

11  certain things.

12      A    Okay.

13      Q    Okay?

14      A    Uh-huh.

15      Q    All right.  So you became a McLaurin class

16  member.  This lawsuit was dismissed.  Any relief you

17  were going to get was going to be through McLaurin.

18      A    Correct.  I'm assuming that's correct.

19      Q    And then there was an issue with respect to

20  that.  You mentioned that you had talked to the

21  people, talked to Mr. Kaplan.  You were concerned

22  about why you hadn't gotten certain relief related to

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

75

1    the McLaurin matter.

2        A    Yes.

3        Q    And do you recall receiving a letter from

4    Sprenger & Lang, the law firm that represented the

5    McLaurin plaintiffs --

6        A    I received a lot of letters.

7        Q    -- in 2004?  I'm going to show you it.

8        A    Okay.

9        Q    Take a look at this document that's been

10   marked as Exhibit 6.

11       A    Okay.

12       Q    Tell me whether you recognize that

13   document.

14       A    Yes, I believe I remember this.  I'm just

15   glancing through it.

16       Q    Please take your time.

17       A    I'm assuming because the letter I received

18   from Mr. Lieder, basically he said that the consent

19   decree had closed, and there was nothing he could

20   do.  So this is much more detailed.  I don't know if

21   -- I'm going to assume yes, that I -- because it's

22   addressed to me, so I'm assuming I got it.

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

76

1      Q    And that explains -- if you read through

2   it, that explains what happened with respect to the

3   job relief issues arising out of McLaurin with

4   respect to your efforts.

5      A    Okay.  Okay.  I'm all right with it now

6   because on here I had to -- I see this part where it

7   says your name was not on the list because you had

8   elected to proceed with job relief.  Okay.  I'm all

9   right with it now.

10     Q    All right.  So if you read through that, is

11  that an accurate --

12     A    Yeah.  I'm going to say yes, yes.  I'm

13  going to say yes.

14     Q    Let me finish the question.  You can still

15  say yes if you want, but let me finish the question.

16  Is that an accurate reflection of the events

17  surrounding your participation in the results of the

18  McLaurin consent decree?

19     A    According to Mr. Lieder, yes.

20     Q    How about according to you?

21     A    No.

22     Q    Okay.  Well, what's the difference?

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

77

1       A    The difference is that when I talked to Mr.

2   Lieder, he told me that he was going to refer me to

3   Ms. Thompson to get my information for the

4   promotional part.  He gave me her telephone number

5   and her address, and I called her.  And she said to

6   me Ms. Lacy, what type of job would you like?  What

7   would you like us to try to receive for you?  And I

8   said anything within the management rim that I can

9   successfully work at.  So she asked me to send her a

10  resume and the last two or three jobs that I had

11  applied for, which I did.  And she said she would get

12  on it, and she would be working on the possible job

13  relief.  I didn't hear anything for a long period of

14  time.  When I called Mr. Lieder and said why haven't

15  I heard anything, he said well, you're going to have

16  to call Ms. Thompson and ask her, find out what's

17  going on.  When I called her, she said well, I've got

18  to go back and dig some paperwork out, and I'll let

19  you know what's going on.  When I finally received a

20  call from Ms. Thompson, she said the consent decree

21  was closed, and there was nothing that could be

22  done.  So that's when this -- this letter came after

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

78

1    that.  So according to Mr. Lieder, this is how he saw

2    it, but what happened to me was different.  And I

3    want to also ask you do you have a copy of this from

4    Sprenger & Lang, which just says to recipients the

5    job relief claimants on, and there my name is listed?

6        Q    That's a letter dated January 3rd, 2000

7    from Maia Caplan, and your name is listed --

8        A    As one of the recipients.

9        Q    -- among the job relief claimants.

10       A    Yes.

11       Q    And that's referred to in Mr. Lieder's --

12       A    Lieder's letter.

13       Q    -- letter of April 6th, 2004, correct, as

14   far as you were -- as to whether you wanted job

15   relief or not?  If you look at the second page, about

16   halfway down it says you had several conversations

17   with Ms. Caplan about whether to select job relief.

18   Do you see that section?

19       A    Yes, but that wasn't -- that was -- that

20   was at the beginning of it.  That was at the

21   beginning of this at the -- when I came in, when I

22   talked to Mr. Lieder, Ms. Caplan had left.  That's

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

79

1    how I ended up talking to Mr. Lieder.  I called to

2    ask to speak to Ms. Caplan.  They said she's no

3    longer with the firm.  I said well, who's handling

4    the McLaurin class action suit?  She said well, you

5    need to speak to Mr. Lieder.  That's when I came in

6    touch with him, so --

7        Q    But what happened was -- is it correct that

8    you were going to seek job relief?

9        A    Yes.

10       Q    That you worked with the law firm that was

11   representing you to obtain job relief?

12       A    Yes.

13       Q    No job relief was obtained by you?

14       A    Yes.

15       Q    And according to Mr. Lieder in his letter

16   of April of 2004, that was because you had identified

17   positions that were going to pay -- management

18   positions that were much higher in the order of what

19   was available.  And, as he says on page 3 of his

20   letter, that gave little bargaining leverage with

21   them to get you a job.

22       A    Okay.

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

80

1      Q      Do you see that?

2      A      Yes.  Now, when I originally spoke to Ms.

3   Thompson, who was also with Mr. Lieder's firm, but

4   she was either out of Chicago or -- she was not

5   located in Washington, D.C. or Maryland -- she told

6   me -- she said Ms. Lacy, what we're going to do is

7   put you in a position where you receive greater pay

8   than they would normally pay, and what it's going to

9   do is compensate you for not being promoted and give

10  you the relief all in one.  That was her exact words.

11     Q      Do you contend this was Amtrak's fault that

12  you didn't get a position?

13     A      You know what?  When I cried about it, I

14  don't know whose fault it is, but I feel Amtrak was a

15  part of it because I have documentations from

16  Amtrak's attorneys and Amtrak's legal counsel that

17  says Alvia Lacy's listed, and I felt like I don't

18  know why they left me out, I don't know why they

19  overlooked me or who did.  Did somebody quit and go

20  somewhere else because --

21     Q      Well, that's --

22     A      -- changes?

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

81

1      Q    That's explained in Mr. Lieder's letter of

2  April 2004.

3      A    But see, on the other hand, not only did

4  Mr. Lieder drop the ball as far as I'm concerned.  I

5  have documentations where Amtrak knows that I'm part

6  of the job relief claimant.  And even where they

7  petitioned the court, Amtrak's counsel petitioned the

8  court saying dismiss this case because she's a part

9  of this suit.  So if you can do that, then you know

10  that I should -- I'm entitled to some remedies.

11      Q    Well, within the confines of what your

12  counsel does representing you.

13      A    Well, it's the counsel that's representing

14  me, and it's the party that has done the harm.

15  That's how I'm looking at it.

16      Q    That's fine.  Okay.  Let's turn to your

17  interrogatory answers and go through some stuff.

18      A    Okay.

19      Q    We've marked this as Exhibit 7.

20      A    Okay.  I did the best I could on that.

21      Q    You did just fine.  I thank you very much.

22      A    Thank you.

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

82

1    Q    What I'm going to do is go through some of

2    your answers and just make sure I'm clear on what had

3    happened.

4    A    Okay.

5    Q    If you'd turn to your answer to

6    interrogatory number 4.  That would be on page 4.

7    You mentioned this earlier about the foreman

8    position.  I don't want to spend a lot of time

9    talking about this, but what was the release from the

10   claims department?  What was at issue here?

11   A    Good one.  You might want to take a second

12   because I'm going to find it, and I'm going to show

13   it to you, and I'm going to tell you what happened in

14   reference to that, but I need a minute.  Okay.  All

15   right.  I'm a foreman.  I'm on hold for a foreman's

16   position.  For the record the way it works is they

17   select you.  You accept the foreman's training.  You

18   train as a foreman for 90 days.  Once you complete

19   your 90 days, you're officially a foreman.  On my

20   66th day, that was the day they expelled me from the

21   foreman's program.  Now, prior to that I had a back

22   injury in 1992 while working at Amtrak.  I was

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

83

1   removing a spider plate, and I put a lining bar in,

2   and I hurt my back. I was out of work from August,

3   September, October. That is one of the suits that

4   are listed in that eight. That was the back injury.

5   Now it's 1999, and it has not been settled. I do

6   have a lawyer representing me on that. So he calls

7   me up, and he says Alvia, I don't know why, but

8   Amtrak's claim department wants you to sign a release

9   that has to do with a lawsuit for discrimination that

10   you have filed. He said I'm not representing you on

11   that, and I told them. He said I told them. So I

12   said well, let me take a look at the release. And he

13   said well, if it was me, I wouldn't sign on my death

14   bed. I said well, that's your opinion, I'll take a

15   look at it. He faxed this to me. I read through it.

16   Do you have a copy of this? Would you like a copy?

17       Q     You go ahead and continue telling me what

18   --

19       A     Okay. I read through it and said I'm not

20   signing it. So I called my attorney, who was

21   representing me for a back injury, and I said tell

22   them that I'm not going to sign it. When I came to

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

84

1   work that night, I walked in.  John Moore told me to

2   come in the office.  John Moore is a supervisor at

3   Amtrak.  He said you are excused from the foreman's

4   program as of now.  And I didn't know -- I didn't

5   even think to put everything in place.  I was just so

6   devastated.  And I said Mr. Moore, give me a reason.

7   He said well, I don't know what to tell you.  You'll

8   have to talk to Tom Butler and Vinnie tomorrow, but

9   right now you're off the foreman's program, and you

10  can come back tomorrow and just bump in as a car

11  repairman.  So I was all right with it.  So I started

12  to my locker to get my things, and it hit me that I

13  had to go home and face my sons and tell them that

14  they had kicked me off of a program where I thought I

15  was on the right track to getting promoted.  And I

16  just couldn't get it together, and I cried for about

17  20 minutes.  And one of my co-workers kind of stayed

18  with me and made sure I didn't get on the road and

19  everything, and I went home.  And the next day I just

20  didn't even want to go to that -- I didn't even want

21  to go to Bear, so I didn't go to work that Friday.

22  And the following Monday I made an appointment with

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

85

1   the psychiatrist.  And I went in, and I talked to

2   her, and I explained to her all the things that I

3   have gone through since I've been at that Bear

4   facility, and the one time I thought I had an

5   opportunity to do a job and possibly get treated

6   fairly, and they messed around and kicked me off the

7   program.  So then when I realized that it was because

8   I wouldn't sign the job release, the attorney called

9   me and said Alvia, I don't know what they're doing,

10  he said, but Friday they told me they were going to

11  settle this back claim.  Now they're telling me

12  they're not going to settle it because you wouldn't

13  sign the job release.  So he said my hands are tied.

14  He said this case is for -- this back injury is from

15  1992.  Here it is 1999, and they don't want to settle

16  it.  So I said you know what?  That's okay.  I got

17  another step.  I went home, went back to work that

18  week.  I called Barbara McCulsky's office, and I

19  asked her, I said -- I called the receptionist, and I

20  said I am an employee of Amtrak, I work out of

21  Delaware, but I'm a resident of Maryland.  Can I

22  submit a problem to you to look into for me?  She

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

86

1    said yes, you can.  As a Maryland resident, you can.

2    I went home.  I typed a letter up.  I sent it to her

3    office explaining everything that Amtrak had did as

4    far as their job relief, not settling the claim,

5    saying they were going to settle the claim, kicking

6    me off the foreman's program.  Sent it certified

7    mail.  Within, I'm going to say not even five days, I

8    got a call from the lawyer saying Amtrak has agreed

9    to settle that.

10        Q    The injury claim?

11        A    The injury claim.  So that was fine with

12   me, but it still didn't take care of the retaliation,

13   kick me off the foreman's program, and that's when I

14   filed the retaliation charge in Philadelphia.

15        Q    But the release that they'd asked you to

16   sign was related to the Maryland case --

17        A    Case, yes.

18        Q    -- that you had filed.  Was that the one

19   where Mr. Fallon represented you?

20        A    No, no.  I didn't have representation.  If

21   I had representation for that case, I would have had

22   some legal counsel to tell me what to do.

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

87

1    Q    And they wouldn't have called --

2    A    Yeah.

3    Q    -- for an injury lawyer?

4    A    Yeah, they wouldn't have called.  That's

5    what they do.  So out of retaliation, they said she

6    won't sign the claim, kick her off the program, and

7    that's what was done.  That's why when I stood there,

8    John Moore couldn't give me an excuse, he couldn't

9    give me any reason, but he later told Richard Pretlow

10   that she didn't do anything, that somebody ordered --

11   they ordered her -- they ordered us from the claims

12   department to kick her off the job.

13   Q    That's what you understand --

14   A    Yes, that's what I understand it to be.

15   Q    -- had occurred?

16   A    Yes.

17   Q    All right.  And the lawsuit that you'd

18   filed in Maryland in 1997 alleged age discrimination;

19   is that true?

20   A    Yes.  That probably was when I just turned

21   40.  Is that when I was turned 40 or in my 40s?  22

22   years.  Probably so.

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

88

1    Q    So just to be clear, you think you were

2    terminated from the foreman program because you

3    refused to sign --

4    A    The release.

5    Q    -- the release because you refused to end

6    the lawsuit alleging age discrimination?

7    A    No, it was not age discrimination.  Well,

8    this is my point.  When I filed my charges with --

9    original charge with EEOC, they tell you check your

10   race -- you're a female -- your sex and your age if

11   you're over this age.  So I mean to me you're just

12   pinpointing age.  It's not just about my age.  It's

13   about my race and my sex and not being promoted.

14   Q    But back in 1997 -- I'm just reading what

15   the agreement said here.

16   A    That's a draft that they put in.  I don't

17   know what's -- you see what I'm saying?

18   Q    You don't recall what you were suing under?

19   A    I would have to look at what my actual

20   charge said.

21   Q    Okay.  But the idea -- just to be clear,

22   the idea was that you would -- they gave you, or they

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

89

1  gave somebody this draft --

2       A    Yes.

3       Q    -- to see whether you would sign it?

4       A    Sign it.

5       Q    Because it's in draft, clearly in draft

6  form.

7       A    Yes, it is a draft.  It says draft.

8       Q    And you said no, don't want to sign it,

9  I'm not interested in settling that lawsuit?

10      A    No, I didn't say I'm not interested in

11 settling.  I said I am not going to sign anything

12 under that draft.  Now, if they had came back and

13 said can we modify it, can we sit down and discuss

14 what we can work with, then I wouldn't have had a

15 problem, but they didn't do that.  When I said I'm

16 not signing the draft, they didn't give me any other

17 options.  They didn't pursue it anymore.

18      Q    And then the next day you're told you're

19 out of the foreman program?

20      A    That night, yes.  I came in that night

21 because I had to work 10:00.  That's another thing.

22 Most people that are allowed the opportunity to be a

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

90

1   foreman, they work day shift. You need to be on day

2   where all the supervisors are to help you get through

3   the process. They put me on night. And I asked Mr.

4   McDowell, I said -- when he came to me, he said we

5   have a foreman's position for you. Are you

6   interested? So I said sure. He said well -- I said

7   what's the shift? Is it day? He said no. We're

8   going to put you on at night from 10:00 to 6:00.

9   Now, mind you, I have a 15-year-old son at home that

10  I'm raising, 15, 16, 17-year-old. What do you think

11  they're going to do? Mom's on second shift. We can

12  run wild. But unfortunately, or fortunately for me,

13  their father was there and took care of that, the 66

14  days that I was on that. Excuse me. That's kind of

15  off the way. But anyway, so when Ace McDowell said

16  you'll be working from 10:00 to 6:00, I said well,

17  how come I can't work day like everybody else did?

18       Q     You were the only foreman working at night?

19       A     That they put on night for your first

20  period. Now, I even used an example. I said why

21  can't I work day like Carol Evans said? I mean I

22  said why can't I work days like Carol Evans did? And

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

91

1    he said Carol Evans did some special things.  Do you

2    want to do some special things?  And that was his

3    exact quote.  And I said no, I'll work 10:00 to 6:00.

4    So that's how I got on the 10:00 to 6:00.

5         Q    Did anybody ever tell you directly that you

6    were taken off the foreman program because you

7    refused to sign this draft?

8         A    No one told me directly, no.

9         Q    Now, you mention Ladoris Wiggs here in your

10   interrogatories as somebody who had knowledge of

11   this, and you mentioned her, I think somewhere else

12   in your interrogatories?

13        A    Yes.

14        Q    Who is Ladoris Wiggs?

15        A    Ladoris Wiggs is a -- she was an employee

16   of Amtrak.  She was a pipe fitter.  She has, since

17   then, resigned.

18        Q    When did she resign?

19        A    You know, I don't know the exact year.  I

20   would rather be correct on that.

21        Q    In 2004, 2005, or before then?

22        A    After 200 -- like maybe the middle part of

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

92

1    2005 I believe she quit -- or resigned, rather.

2         Q    Do you know where she is now?

3         A    Yes, I do.  I speak to her on a regular.

4         Q    And have you talked to her about this

5    lawsuit?

6         A    Yes.

7         Q    And what conversations have you had with

8    Ladoris Wiggs about this lawsuit?

9         A    Well, Ladoris and I talk about this lawsuit

10   and also the incidents and things that she has gone

11   through her herself.  That was one of the deciding

12   factors in why she resigned.  You know, she always

13   tells me -- she calls me V.  She always says V, you

14   know, I'm proud of you because you're hanging in

15   there, but you're taking a whole lot of crap.  But

16   she went through some things too, and she just

17   couldn't take it, so she resigned.

18        Q    Is she working now?

19        A    Yeah.  She's working for UPS.

20        Q    When was the last time you spoke with her?

21        A    The last time I spoke with her was last

22   Sunday.

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

93

1      Q      Did you talk about this lawsuit?

2      A      Yes.

3      Q      And what did you talk about this lawsuit?

4      A      I told her I'm going for a deposition on

5    October 6th.

6      Q      Did you have any other further conversation

7    with her about it?

8      A      No.  Just the basic things.  She just

9    started recounting the things that she had gone

10   through and some of the incidents, and that's it just

11   generally.

12     Q      With respect to your claims, not things

13   that she says that she suffered, but with respect to

14   your claims in 2004 into 2005, what knowledge do you

15   think she has about those?

16     A      She has a lot of knowledge because she was

17   there.  She was there through most of the time in the

18   incidents that happened to me.  She was there because

19   that was really my confiding person.  When we had --

20   when something would happen to me or something would

21   go with her, we'd either go up to the ladies room, or

22   we'd -- when we'd leave, we'd meet in the parking

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

94

1    lot, or I'd get home, and she called me crying.  She

2    was my partner, you know.  She was a shoulder for me.

3        Q    She's an African-American?

4        A    Yes, she is.

5        Q    She supports you in your position that

6    you've been discriminated against?

7        A    Yes, she does.

8        Q    Let's go to the next page, page 5,

9    paragraph 2.  Can you see that at the top of that

10   page?  You answered questions about promotions.  This

11   is the section we're talking about promotions.

12       A    Okay.

13       Q    Okay?  Now, we have a list of positions you

14   applied for during the period we're talking about,

15   and we'll talk about those in detail, but you say

16   persons with knowledge, Sarah Ray.  Who is Sarah Ray?

17       A    Sarah Ray works at the human resource

18   office out of Washington.

19       Q    And do you know what her race is?

20       A    She's African-American.

21       Q    And did you deal with her with respect to

22   positions?

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

95

1      A    Yes, I have.  Ms. Ray knows basically when

2    I apply and inter -- when I go for interviews, she

3    has interviewed me.

4      Q    And do you ever think she's discriminated

5    against you?

6      A    No, but I'm going to say this, and I'm

7    going to say no because she doesn't have the final

8    say in who gets selected for the position.  From what

9    I understand, she's a supervisor of the department.

10     Q    Well, let me ask you this just as an aside

11   then.  What is your understanding of the process by

12   which a promotion or a position is filled at Amtrak?

13     A    Okay.  I'm going to say from start to

14   finish.  You apply for the position.  You apply for

15   the position.  Human resources job is to see that the

16   appropriate candidates are selected for the interview

17   process.

18     Q    So would that be the initial screening of

19   candidates?

20     A    Yes, to a certain --

21     Q    Human resources would --

22     A    Yes.

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

96

1      Q    -- make that decision?

2      A    Yes.

3      Q    And so would Sarah Ray be involved in

4    making a decision as to whether an individual is

5    qualified or not qualified --

6      A    Yes.

7      Q    -- to be considered?

8      A    Yes.

9      Q    Now, let me ask you then in the context.

10   Do you think Ms. Ray has discriminated against you?

11     A    No, I don't.

12     Q    Okay.

13     A    No, I don't.

14     Q    Or retaliated against you?

15     A    No, I don't.

16     Q    How about Mr. Cannon?

17     A    No, I don't.

18     Q    Let me ask the question.  Mr. Cannon, who

19   is he?

20     A    He's a human resource personnel also.

21     Q    And what's his race?

22     A    He's an African-American.

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

97

1    Q    Has he been involved in making decisions

2    regarding positions you've applied for if you know?

3    A    I do not know, but he has sat in on my

4    interviews.  He has been there with the supervisor of

5    the department and conducted the interview.

6    Q    And do you think that Mr. Taylor has ever

7    discriminated against you or retaliated against you

8    with respect to promotional opportunities?

9    A    No, I don't.

10   Q    Other human resources people who have been

11   involved in positions that you've applied for, can

12   you think of any others?

13   A    The only people that I know, but I have not

14   met them face to face, are the ones I get a denial

15   letter for.

16   Q    Do you have any reason to think that any of

17   those human resources people other than Mr. Taylor --

18   I'm sorry -- Mr. Cannon and Ms. Ray have

19   discriminated against you?

20   A    I can't answer that because I don't know.

21   I don't know if it may be something they may have a

22   conversation with someone and --

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

98

1      Q     Let me ask you this.  Do you have any facts

2   to think that they have?

3      A     No, no.  I'm going to hope not.

4      Q     Okay.  That's fine.  Now, you provided a

5   list of individuals here at the bottom of page 5.

6   The following employees have been promoted, are white

7   males, do not have a bachelor's degree, and held

8   positions of car repairman, electrician, or coach

9   cleaner/laborer prior to being promoted.  Do you see

10   that?

11      A     Yep.

12      Q     Then you list --

13      A     Excuse me.  Yes.

14      Q     -- on page 5 and on page 6 a number of

15   individuals.

16      A     Yes.

17      Q     What is the time frame that you're

18   referring to here as to these individuals who have

19   been promoted from positions, union positions, into

20   other positions?

21      A     Ongoing and current.

22      Q     Okay.  But I mean of these individuals

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

99

1    you've named here.

2        A    Well, I'm going all the way back.  If you

3    actually -- I mean employee records would document.

4    Like say, for instance, let's take, for instance, Tom

5    Butler came in as a coach cleaner originally.  He's

6    director.  He was at one time superintendent of the

7    Bear facility.  Okay.  Let's take Jim McDowell.  He

8    came in as electrician.  He's now an upper management

9    person.

10       Q    You're referring to historically over the

11   years?

12       A    Yes.

13       Q    And this could go back?

14       A    And it could go back to last week.  I can

15   -- well, promotion per promotion per se.

16       Q    Okay.  But I'm just trying to make sure of

17   what we're talking about here.  You're not referring

18   to positions -- with respect to these names, you're

19   not referring to positions that you applied for and

20   that these individuals got --

21       A    Correct.

22       Q    -- instead of you; is that correct?

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

100

1    A    That's correct.

2    Q    You're just giving me an example of

3    individuals who had been in a union position and now

4    are in management positions?

5    A    With one exception -- or several exceptions

6    because -- okay.  Say, for instance -- how can I

7    explain this?  Okay.  Say, for instance, like Mike

8    Fell, Mike Fell was an electrician.  Then he got a

9    foreman's position.  Okay?  Now he's in CNOC holding

10   a management position.  You understand what I'm

11   saying?  So in retrospect to that, I'm a car

12   repairman.  I'm looking at okay, I get a foreman's

13   job, then I could get a management job.  Now, Mike

14   Fell doesn't have a bachelor's degree.  So I'm a car

15   repairman.  I have a bachelor's degree.  That gives

16   me a little leadway to say I think I can handle a

17   supervisory position, even per se a management

18   position, even entry level.  So basically each one of

19   these persons went from a craft position to a

20   managerial position.  Some of them skipped a foreman

21   slot and went straight to management.

22   Q    Have you applied for a foreman's position

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

101

1  since 1997 when you were taken out of the --

2      A    '99.

3      Q    -- out of the --

4      A    No, I haven't.

5      Q    How come?

6      A    Because to me, that's a slap in the face.

7  It's like saying we kicked you, okay, start all over

8  again.

9      Q    It would be job advancement, wouldn't it?

10     A    Job advancement.  There is no job

11 advancement when you've been wronged.  The only way I

12 see, even if they were to come to me -- because for

13 me, I have some dignity.  People tell me -- even at

14 work they'll say you got kicked off the foreman's

15 program.  They don't even understand the big picture,

16 and that hurts.  So for me to go back, to me it would

17 be a demotion basically as far as I'm concerned.

18     Q    So in your mind you would never --

19     A    Never.

20     Q    -- you would not -- you would never apply

21 for a foreman position now?  You want to move right

22 from the union position that you're in to a

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

102

1    management position?

2        A    Not at Bear.  I won't do it at Bear.  I

3    have put in for foreman's positions in Washington.  I

4    have done that.

5        Q    Have you been considered for those?

6        A    I have gone an interview and was denied.

7        Q    Have you continued to look at those

8    positions?

9        A    Well, to be honest with you, for the last

10   probably three or four months I haven't even looked

11   at the job positions because I've been just -- just

12   removed myself from it, you know.  I just -- I'm

13   tired.  Just took a break.

14       Q    So what I hear you saying, though, is you

15   don't want to apply for a foreman position in Bear,

16   but you would consider applying for foreman positions

17   in other locations?

18       A    Yes.  And the reason why I say that is

19   because if I was to take a foreman position at Bear,

20   I feel like if they wanted to, they could do the same

21   thing.  Now, we just had a case last week where a

22   foreman was put back -- what we call put back on

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

103

1    tools.  He's a African-American.  From what I

2    understand, I don't know all the details, but what

3    they did to him -- the conversations between

4    African-Americans are we're all saying they did it

5    because he's an African-American, and we're all

6    saying it is because he's black.  So I don't even

7    want to put myself in that position, and that's why I

8    don't want to work at Bear as a foreman.

9        Q    And so you focused on applying for

10   management positions?

11       A    Yes.

12       Q    Now, do you know of African-Americans who

13   have been promoted?

14       A    From the Bear facility?

15       Q    Uh-huh.

16       A    Yes, I know one, Carol Evans.

17       Q    And a black, African-American female?

18       A    Yes.

19       Q    And what was she promoted to?

20       A    She went from a coach cleaner to a foreman,

21   and she works out of Washington as an instructor.

22   And I don't want to say names, but she was dating one

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

104

1   of the supervisors at one time from what I

2   understand, so --

3       Q    Do you have specific information about

4   that, or is that a rumor?

5       A    It's a given.  If the boss is coming to

6   your house, and picking you up every day for work,

7   and taking you home, and spending some extra time

8   with you, would you think that was just an employee

9   benefit?  I don't think so.

10      Q    Did you observe this?

11      A    Oh, yes.  Everybody did.  And then I can go

12  back to when Mr. Ace McDowell stated to me Carol

13  Evans did some special things.  Do you want to?  And

14  my answer was no.

15      Q    Did he ever explain what he meant by that?

16      A    No, he didn't.

17      Q    You just inferred?

18      A    Yeah, I kind of figured it wasn't baking

19  cookies.

20      Q    Interrogatory number 5.  If you'd turn to

21  page 7.  You list individuals who you claim have

22  discriminated against you.

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

105

1     A     Yes.

2     Q     Tom Butler, when do you contend he

3     discriminated against you?

4     A     Well, I am eventually going to produce

5     documentation from my union rep which will show that

6     because this is what happens.  When something happens

7     to you on the floor, you go to your union rep, and

8     you say this is what's going on, and he looks into

9     it.  And I have several incidents where things have

10    been done to me, and I've gone to the union rep, and

11    he's went over and talked to Tom Butler and came back

12    and said Alvia, he's doing this specifically to you,

13    and I'm tired of him harassing you, and I keep

14    telling him if he does it again, I'm going to write

15    him up, I'm going to do this.  So I am going to

16    produce that documentation.

17    Q     Let me just be clear on that.  If you have

18    documentation that you think is relevant, you need to

19    produce it to me.

20    A     Okay.  Well, I'm going to -- the union rep

21    is going to write the statement for me along with the

22    paperwork that he has.  I just didn't have it today.

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

106

```
1   I didn't -- it's not done.  It's going -- it's in its
2   --
3        Q    What did you say the name of the union rep
4   is?
5        A    Bruce Carlton.
6        Q    He's up in Bear?
7        A    Yes.
8        Q    Okay.  Now, Tom Butler, is it your
9   contention he's discriminated against you because
10  you're an African-American female?  And what I want
11  to focus on here is going back to the comment you
12  made when we started out talking about things about
13  people either like you, or they don't like you, sort
14  of the two rules thing.  And it sounded to me like
15  what you were saying is there could be African-
16  Americans who they like and African-Americans who
17  they don't like, and it could explain different
18  treatment.
19       A    Most of the African-Americans are not
20  liked.  The ones that are there, basically we were --
21  you know, it's like we were forced in there.  In
22  other words, I don't like to talk about a lot of this
```

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

107

1  because it hurts, and it's being documented, okay,

2  but when I first started there --

3      Q    Well, I'd like to focus, and I don't want

4  to --

5      A    Okay.

6      Q    It's your lawsuit.

7      A    Because I'm trying to get you to understand

8  what I'm saying.

9      Q    Well, let me explain.  It's your lawsuit.

10  You've brought these claims.  It's my job to figure

11  out what your claims are.  I want to focus on the

12  period of 2004 and 2005.  I realize you claim that

13  there have been things that have happened since 1988,

14  '83, whatever, but the basis of this lawsuit involves

15  your claims about promotion --

16      A    Okay.

17      Q    -- and your claims about what you perceive

18  to be a hostile environment in 2004 --

19      A    And 2005.

20      Q    -- and going in 2005.

21      A    Okay.

22      Q    Okay?  So Mr. Butler --

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

108

1     A    Yes.

2     Q    -- how do you claim he's discriminated

3 against you in --

4     A    That time period.

5     Q    -- 2004, 2005?

6     A    I'm sorry.  I didn't mean to talk over you.

7     Q    That's okay.

8     A    Okay.  Number one, during 2004, 2005, Tom

9 Butler was the director -- well, he was holding the

10 position that Mr. McFadden holds.  They go from

11 director to superintendent.  I don't know who flips a

12 coin and calls them whatever, but director,

13 superintendent.  Vinnie Nesci is also over Mr. -- Mr.

14 Nesci's over Tom Butler, but he's in Wilmington now.

15 For the vast majority of the time that I worked at

16 Bear, Vinnie Nesci and Tom Butler where there as the

17 head management of the facility.  Okay.  I named Tom

18 Butler because the harassment things come from him.

19 Do you understand what I'm saying?

20     Q    Well, I want you to explain.

21     A    Okay.  Let's say, for instance --

22     Q    Think of the 2004 --

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

109

1    A    That's what I'm doing.

2    Q    -- 2005 time range, and we'll go to that

3    list.

4    A    Yeah, they're in there.

5    Q    Let's do this.  Do you want to take a

6    break?

7    A    Yeah.  Let me see if I can just kind of get

8    some paperwork.

9    Q    Well, I have exhibits I'll show you.

10   A    Okay.  Because I don't really want a

11   break.  I want it over with.  I don't want a break.

12   I'm like I'd rather just run the race.

13   Q    Do you want to go without lunch?

14   A    No, I don't want a lunch.  I don't need a

15   lunch.

16   Q    Well, we're going to have to give the court

17   reporter at least a break at some point because

18   she's --

19   A    Okay.

20   Q    -- the one doing all the work here.  Well,

21   let's do this.  Let me show you an exhibit we've

22   marked as number 8 just to keep things going.  That's

DEPOSITION OF ALVIA LYNN LACY
CONDUCTED ON FRIDAY, OCTOBER 6, 2006

110

1    the document production request.

2        A    Okay.

3        Q    Do you remember that?  And that's your

4    responses.

5        A    Yes.

6        Q    Okay.  Hold those.  Now we'll mark a couple

7    other documents and talk about those.

8        A    Okay.

9            (Lacy Deposition Exhibit 9 marked for

10   identification and attached to transcript.)

11   BY MR. VANDEUSEN:

12       Q    Take a look at this if you would, please.

13       A    Okay.

14       Q    Do you recognize that document?

15       A    Yes.  I believe this is what I submitted

16   with my EEOC claim.

17       Q    Okay.

18       A    Yes.

19       Q    Now, if you would turn to the fifth page.

20   Now, Exhibit 9 is titled harassment and hostile work

21   environment.

22       A    Yes.