RECEIVED

JAN 1 8 2007

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ALVIA LACY,                              *

      Plaintiff,                      *

v.                                       *       Civil Action No.: 1:06-cv-00068-JJF

NATIONAL RAILROAD PASSENGER              *
CORPORATION ("AMTRAK"),
                                         *
      Defendant.                      *

                                         *

   *   *   *   *   *   *   *   *   *   *

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Alvia Lacy pro se, submits the following documents and statement in reference to the above captioned case. When Plaintiff, Lacy became a claimant in the class action suit of McLaurin v. Amtrak, a prima facie case of discrimination under Title VII was established. In addition to the claim of harassment, and a hostile work environment, which were also included in the class action. The point is Plaintiff Lacy had been and continues to be a subject of discrimination.

Defendant Amtrak, has and continues to ignore the conditions, and terms set forth in the Consent Decree of Civil Action No. 98CV2019 (EGS) McLaurin V. National Railroad Passenger Corporation ("AMTRAK"), as related to Plaintiff Lacy.

WHEREFORE, the foregoing reasons, Plaintiff Lacy respectfully request that summary judgment will not be granted in Defendant's Amtrak favor as a matter of law.

Respectfully submitted,

Alvia Lacy Plaintiff
1306 Jervis Sq.
Belcamp, Maryland   21017
(410) 272-4819

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LEON MCLAURIN, *ET AL.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 1:98CV2019 |
| v. | ) | (EGS) |
| | ) | |
| NATIONAL RAILROAD PASSENGER | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

CONSENT DECREE

## I.    INTRODUCTION

This Consent Decree sets forth the full and final terms by which Named Plaintiffs, on

behalf of themselves and members of the Class defined herein, and Defendant National

Railroad Passenger Corporation ("Amtrak"), have settled and resolved all claims or potential

claims between them relating to Management positions, including all claims of any alleged race

discrimination against African American Management employees and African American

applicants for Management positions, as those terms will be defined herein, through or as a

result of any alleged discriminatory purpose, pattern or practice, or adverse impact of

Amtrak's practices and policies with respect to hiring, compensation, training, performance

appraisals, promotions, transfers, discipline, termination, the toleration of a hostile working

environment, and other personnel practices or decisions. This Decree does not encompass

claims relating to or arising from employment in non-Management positions, other than non-

Management employee claims relating to application for promotion to Management positions,

and Management employee claims relating to demotion to non-Management positions. Amtrak

has voluntarily entered into this Consent Decree to address concerns raised by its diverse

workforce, to avoid protracted and costly litigation, and to focus its corporate resources on

serving Amtrak's customers and operating a first-class national rail passenger system.

## II.    NATURE OF THE CASE

On August 20, 1998, twelve Black Amtrak employees who are or have been employed

in Management positions at Amtrak, or were rejected for employment in Management

positions at times when they were not employed by Amtrak, or were rejected for employment

in Management positions at times when they were employed by Amtrak in non-Management

positions, and one Caucasian Management employee who allegedly was retaliated against for opposing discrimination against African Americans, filed a Complaint in this Court. The Plaintiffs asserted claims against Amtrak for race discrimination in hiring, job assignments, promotions, performance appraisals, discipline, compensation, and training. The Complaint further alleged a pattern and practice of discrimination by Amtrak and tolerance of a racially hostile working environment. The Plaintiffs asserted claims on behalf of themselves and putatively on behalf of similarly situated current and former employees and rejected Internal and External Applicants for Management positions. On November 20, 1998, the Plaintiffs filed an Amended Complaint, which added sixteen additional Plaintiffs and putative Class representatives. The Plaintiffs' claims were brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") and 42 U.S.C. § 1981. Amtrak filed an answer to the Complaint denying the allegations and specifically denying any violation of law.

The Parties voluntarily entered into mediation in November 1998 in an effort to address, outside of the courtroom, the concerns raised by Plaintiffs and to avoid litigation costs. While formal discovery has not been completed, the Parties have taken sufficient discovery, and have voluntarily exchanged sufficient information, to assess the relative merits of the systemic claims of the Plaintiffs and the putative Class, and of Amtrak's defenses. After several months of mediation and negotiation, the Parties reached an agreement-in-principle on July 1, 1999, the terms of which are incorporated in and superseded by this Consent Decree.

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LEON MCLAURIN, *ET AL.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 1:98CV2019 |
| v. | ) | (EGS) |
| | ) | |
| NATIONAL RAILROAD PASSENGER | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

CONSENT DECREE

## ARGUMENT

### I.    Factual Background

On November 1, 1999, District Judge Emmet G. Sullivan, United States District

Court for the District of Columbia, approved a Consent Decree ("Decree") in a class

action suit, Leon McLaurin et. al. v. National Railroad Passenger Corporation

("Amtrak"), Civil Action No. 98CV2019 (EGS).   A copy of the Consent Decree is

attached hereto as Exhibit A;  A copy of the Order Finally Approving Consent Decree

("Order") is attached hereto as Exhibit B.

The Order provides that the Consent Decree is

> intended to effect a full and final settlement of all claims
> that were or could have been asserted by Plaintiffs and
> other members of the proposed settlement Class defined in
> Section III of the proposed Consent Decree (the "Class")
> with respect to Amtrak's employment actions and practices
> that affected their selection for positions covered by the
> Class, the terms and conditions of their employment in such
> positions, and the termination of their employment in such
> positions; . . .

Ex. B at 1.

The Decree was approved following a Fairness Hearing held on October 25, 1999,

at which no objections to the proposed settlement were proffered and following

compliance with notice to the class members, in accordance with a September 2, 1999

Court Order.  Ex. B at 4.

The Decree defined the stipulated Class as "composed of all Named Plaintiffs and

black persons who, at any time between January 1, 1995 and September 30, 1999: have

been employed by Amtrak in positions, not on the Amtrak Management Committee, and

not subject to a collective bargaining agreement . . . ;  and/or have applied and been

2

454171v1

rejected by Amtrak for Management positions, including Internal Applicants and External Applicants." Ex. A, at III, D. 1. The Decree states that the Class was established pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, and, in the view of the provisions for monetary awards and job relief, Class Members were permitted to elect to opt out of the class in writing no later than October 6, 1999.

Plaintiff did not opt out of the class. In fact, Plaintiff currently is seeking job relief pursuant to the terms of the Consent Decree for the foreman training position at issue here. See Affidavit of Christine Turnblacer at ¶ 3, attached hereto as Exhibit C.

## II.    Plaintiff's Claims Are Barred.

It is well settled that a class member of a such class action suit must "opt out" of the suit in order to preserve an individual claim based on claims asserted in the class action. Shults v. Champion International Co., 35 F.3d 1056 (6th Cir. 1994); Nottingham Partners v. Trans Lux Co., 925 F.2d 29 (1st Cir. 1991); See also Grimes v. Vitalink Communications Co., 17 F.3d 1553, 1557 (3rd Cir.), cert. denied 513 U.S. 986 (1994) ("In effect, all ordinary class members are bound by the deal struck by their named representatives in the event the court determines that they were adequately and fairly represented during the course of the negotiations.") Plaintiff did not opt out of the class. Indeed, she is seeking job relief pursuant to the terms of the Consent Decree. Ex. C at ¶ 3. Accordingly, Plaintiff cannot pursue her claims here and the Complaint must be dismissed.

3

454171v1

## CONCLUSION

For the foregoing reasons, Amtrak's Motion to Dismiss should be granted and

Plaintiff's Complaint should be dismissed with prejudice.


Respectfully submitted,

*Janice Greenberg*

Edward T. Ellis (No. 23680)
Janice A. Greenberg (No. 76578)
Montgomery, McCracken, Walker
    & Rhoads, LLP
123 S. Broad Street
Philadelphia, PA 19109
(215)772-1500


OF COUNSEL:
Anthony W. Kraus
Raymond C. Baldwin
MILES & STOCKBRIDGE, P.C.
10 Light Street
Baltimore, MD 21202
(410)385-3756

Attorneys for Defendant

4

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................. 1

II.    NATURE OF CASE ............................................................. 1

III.   GENERAL TERMS OF THE DECREE .................................... 3

     A.     Definitions ............................................................. 3

     B.     Jurisdiction and Venue ............................................. 8

     C.     Effective Date and Term of Decree ............................. 8

     D.     Persons Covered by Consent Decree .......................... 9

         1.     Definition of Class ........................................ 9

         2.     Opt Out ........................................................ 9

     E.     Denial of Liability ................................................... 10

     F.     Release/Bar of Claims ............................................. 11

     G.     Conflicts .............................................................. 13

IV.   GENERAL INJUNCTIVE MEASURES .................................... 13

     A.     General Provisions .................................................. 13

         1.     Target Dates ................................................. 13

         2.     Joint Retention of Neutral Expert ..................... 15

         3.     Outside Consultants ....................................... 15

         4.     Computation of Time ...................................... 16

     B.     Job Placements ..................................................... 16

         1.     Application Forms and Applicant Flow Databases ... 16

         2.     Employment Interviews .................................... 17

3.      Monitoring of Job Placements ............................................. 18

C.    Reductions In Force and Priority Consideration ................................ 19

D.    Compensation .......................................................................... 23

1.      Compensation Study ....................................................... 23

2.      Adjustments to Salaries if There Are Race-based Disparities ....... 24

E.    Job Descriptions and Qualifications............................................... 25

1.      Revision of Job Descriptions ............................................. 25

2.      Job Postings ................................................................. 26

3.      Appeal Process.............................................................. 27

F.    Performance Appraisal System...................................................... 30

1.      Revising the System........................................................ 30

2.      The Revised System........................................................ 30

3.      Review for Statistically Significant Disparity .......................... 31

G.    Training ............................................................................... 32

1.      Internal and External Training Opportunities .......................... 32

2.      Career Counseling........................................................... 34

3.      Statistical Review........................................................... 34

H.    Discipline .............................................................................. 35

1.      Creation of An Appeal Board ............................................. 35

2.      Appeal Procedures ......................................................... 36

3.      Monitoring of Impact of Disciplinary Process ......................... 37

1-WA:1236256.2

I.    Equal Employment Opportunity ................................................... 37

    1.    Reorganization of the Amtrak EEO Function .......................... 37

    2.    Internal Complaint Procedure ............................................. 39

    3.    Training ...................................................................... 42

V.    SETTLEMENT FUND ...................................................... 43

    A.    Creation and Administration of Fund ............................................ 43

    1.    Creation and Purpose ....................................................... 43

    2.    Administrators' Administrative Responsibilities ...................... 45

    B.    Claims Filing Procedures For Settlement of
         Claims of Plaintiffs and Class Members......................................... 46

VI.    JOB RELIEF ................................................................. 48

    A.    Assertions of Claims for Job Relief............................................. 48

    1.    Limitations on Participation in Process.................................. 49

    2.    Consultation Period and Voidability of Settlement ................... 49

    3.    Reduction in Monetary Relief............................................. 49

    B.    Job Relief Procedures............................................................ 50

    1.    Negotiation ................................................................... 50

    2.    Mediation .................................................................... 50

    3.    Arbitration ................................................................... 50

         a.    Hearings ............................................................. 51

         b.    Evidence .............................................................. 51

        c.    Pre-hearing Production of Evidence ............................ 52

        d.    Standards for Decisions ................................................. 53

    C.    Definition of Job Relief ............................................................. 53

VII.    NOTICE    .............................................................................. 53

VIII.    RECORDKEEPING AND REPORTS.................................................... 54

    A.    Periodic Reports ........................................................................ 54

    B.    Copies of Certain Items to be Provided ........................................ 56

    C.    Access to Records ..................................................................... 59

    D.    Reports to the Court ................................................................. 61

IX.    MONITORING ..................................................................................... 61

    A.    Monitor Roles........................................................................... 61

    B.    Periodic Meetings ..................................................................... 61

X.    ENFORCEMENT ................................................................................. 62

    A.    Negotiation and Mediation........................................................... 62

    B.    Procedures for Enforcement Proceeding ......................................... 63

XI.    CONFIDENTIALITY AND RETURN OF DOCUMENTS ........................... 63

XII.    PUBLICITY    .................................................................................. 64

XIII.    SEVERABILITY ................................................................................... 65

XIV.    GOVERNING LAW/ENTIRE AGREEMENT .......................................... 65

**SCHEDULE OF EXHIBITS**
Exhibit A (List of all Named Plaintiffs)
Exhibit B (Release of Claims)
Exhibit C (Stipulation of Dismissal)
Exhibit D (Administrators Release)
Exhibit E (Schedule of Mailing)

III.    GENERAL TERMS OF THE DECREE

A.    Definitions

For purposes of this Consent Decree (interchangeably the "Decree") and all exhibits hereto, the capitalized terms in such documents shall have the meanings set forth below. All terms defined in the singular shall have the same meaning when used in the plural, and all terms defined in the plural shall have the same meaning when used in the singular.

1.    "Amtrak" is a corporation incorporated under the laws of the District of Columbia engaged in the transportation of passengers by railroad and related businesses as defined by 45 U.S.C. §501 *et seq.* Any references to "Amtrak" shall include the National Railroad Passenger Corporation, its past and present directors, officers, agents, employees, and other representatives.

2.    "Named Plaintiffs," "Class Representatives," or "Plaintiffs" mean those twenty-nine individuals who were named as Plaintiffs in the First Amended Complaint. The names of all of the Named Plaintiffs in this litigation are set forth in Exhibit A.

3.    "Parties" means the Named Plaintiffs and Amtrak.

4.    "Black" shall be defined as in Appendix 4 of the current Instruction Booklet for completion of Standard Form 100, Employer Information Report EEO-1. The terms "Black" and "African American" are used interchangeably, and for purposes of this Decree, shall include Black aliens, lawfully able to work for Amtrak but who are not of American citizenry or descent.

5.    The phrases "applied to" Amtrak or "applied for," or "applicant for"

3

employment at Amtrak means expressed interest, or a person who expressed interest, in

employment at Amtrak through participation in a job fair, submission of an application form or

resume, participation in an interview, or any other contact with Amtrak concerning possible or

potential employment. "Internal Applicants" means applicants who were not selected for

employment in Management positions at times when they were employed by Amtrak in non-

Management positions. "External Applicants" means applicants who were not selected for

employment by Amtrak in Management positions at times when they were not employed by

Amtrak.

     6.     "Lead Counsel" for purposes of this Decree means Michael Lieder, Maia

Caplan, and other attorneys of the law firm of Sprenger & Lang, 1614 Twentieth Street,

N.W., Washington, D.C. 20009. "Class Counsel" refers to the above Lead Counsel as well

as Roderic V.O. Boggs, Avis Buchanan, Susan Huhta, and other attorneys of the Washington

Lawyers' Committee on Civil Rights & Urban Affairs, 11 Dupont Circle, N.W., Suite 400,

Washington, D.C. 20036; Ozell Hudson, Jr., Lawyers' Committee for Civil Rights Under

Law of the Boston Bar Association, 294 Washington Street, Suite 940, Boston, MA 02108;

and Andrew A. Rainer, Shapiro, Haber & Urmy LLP, 75 State Street, Boston, MA 02109.

     7.     "Management employees" or "Management positions" means employees or

positions not subject to a collective bargaining agreement ("CBA"), and not on the Amtrak

Management Committee. Conversely, "non-Management positions" or "non-Management

employees" means positions or employees covered by a CBA.

     8.     "Amtrak's Counsel" means the law firm of Morgan, Lewis & Bockius LLP,

1800 M Street, N.W., Washington, D.C. 20036, including attorneys Thomas E. Reinert, Jr. and Grace E. Speights.

     9.     "Class Members" or "Class," or any variation of such term means all members of the Class defined in Part III(D) of this Decree.

     10.    "District Court" or "Court" means the United States District Court for the District of Columbia.

     11.    "Payee" means attorneys (including former attorneys) for any of the Plaintiffs or Class Members, and all experts, consultants and others associated with or retained by Plaintiffs or such attorneys, including Class Counsel. Payments to Payees shall be subject to. and limited by, Section V of the Decree.

     12.    The "Non-Injunctive Effective Date" for the provisions of this Decree relating to Job Relief or the Fund shall refer to the date on which the Court has finally approved, signed, and entered this Decree *and* the time for appeal has run without an appeal being filed or, if an appeal is filed, the final resolution of that appeal (including any requests for rehearing en banc, petitions for certiorari, or appellate review). The "Injunctive Effective Date" for the remaining provisions of this Decree relating to injunctive relief shall refer to January 1, 2000, or the date by which the Court has finally approved, signed, and entered this Decree *and* the time for appeal has run without an appeal being filed or, if an appeal is filed, the final resolution of that appeal (including any requests for rehearing, rehearing en banc, petitions for certiorari, or appellate review), whichever is later.

     13.    "Settlement Fund" or "Fund" means the qualified settlement fund created by the

1-WA:1236356.2

deposit, in the installments and at the times agreed to by the Parties, of $8 million in principal by Amtrak, the purpose and administration of which are governed by Part V of this Decree.

14.    "EEO Office" or "EEO Resolution Unit" means Amtrak's internal Equal Employment Opportunity unit in the Department of Business Diversity and Strategic Initiatives ("Business Diversity"), while the term "EEO" shall refer to equal employment opportunity, as that phrase is understood legally.

15.    "Claim Resolution Process" or "CP" means the procedures for resolution of Eligible Claims as set forth in Part V of the Consent Decree.

16.    "Claimant" means any person who is eligible to make, and who has made, a claim in the Claim Resolution Process as set forth in Part V(B) of the Consent Decree.

17.    "Class Claim" means any individual or class-wide race discrimination claim, administrative charge, demand, complaint, right, and cause of action of any kind, known or unknown, by a Class Representative or Class Member against Amtrak for monetary or equitable relief or for attorney's fees, arising from any events, acts, omissions, policies, practices, procedures, conditions, or occurrences concerning employment in Management positions with Amtrak or applications for Management positions with Amtrak at any time on or after January 1, 1995, but no later than September 30, 1999, under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq.*, the Civil Rights Act of 1866, 42 U.S.C. § 1981 *et seq.*, or any other federal, state, District of Columbia or local statute, regulation, rule, order, ordinance or other authority of any nature prohibiting racial discrimination in employment. Class Claim refers to any claims or other cause of action

6

described above brought in an arbitral, judicial or other forum of whatsoever kind or nature.

18.    "Mandatory Joinder Claim" means any claim arising out of the same occurrence, event, or nucleus of facts as any Class Claim.

19.    "Eligible Claims" means all Class Claims and Mandatory Joinder Claims.

20.    "Job Relief Process" means the procedures under Part VII of this Decree for resolution of Job Relief Claims.

21.    "Eligible Job Claims" means all claims that meet the eligibility requirements for processing under Part VII of the Decree.

22.    "Job Relief Election Form" means the form used to designate an affirmative election to participate in the Job Relief Process mailed by the Job Claimant to Class Counsel.

23.    "Job Claimant" means any person who is eligible and selects to make, and has made, a claim in the Job Relief Process under Part VII of the Decree.

24.    "Administrator" or "Trustee" means the persons designated by Plaintiffs and Amtrak to effectuate the Settlement terms, concerning the satisfaction and resolution of all Claimants' claims pursuant to the Claim Resolution Process set forth in Part V(B) of this Decree; receiving and processing information from Claimants pertaining to their claims; investing, allocating, and distributing the Fund; and in general supervising the administration of the Settlement Fund in accordance with the Decree. The Parties have agreed that Michael Lieder, Esquire  and Lawrence Schaefer, Esquire of Sprenger & Lang shall be the Administrators and Trustees of the Settlement Fund.

25.    "Claim Form" means the written description of Claimant's Claims served by a

7

Claimant on the Administrator to initiate the Claim Resolution Process.

26.    "Claim Form Submission Date" or "Job Relief Election Form Date" means the post-marked date of the respective form that has been mailed to the Administrator or Class Counsel, respectively.

27.    "Reduction in Force" or "RIF" means the removal of an employee or group of employees from a position or positions, as the result of the elimination of a position or positions or the reorganization of positions, and shall not include individual employment actions (including terminations, demotions, or transfers) because of discipline or poor performance or other reasons related to the individual employee, in which Amtrak intends to treat the position as vacant and place another individual in substantially the same position.

28.    "Statistically Significant" disparity shall mean a disparity measured by at least two standard deviations.

B.    Jurisdiction and Venue

The Parties agree that this Court has jurisdiction over the Parties and the subject matter of this action, and that venue is proper. This Court shall retain jurisdiction of this action for the duration of the Decree solely for the purpose of entering all orders, judgments and Decrees authorized hereunder that may be necessary to implement and enforce the relief provided herein.

C.    Effective Date and Term of Decree

This Decree and the agreements contained herein are effective as of the Injunctive and Non-Injunctive Effective Dates, as defined in Part III(A), although Amtrak has already

8

implemented or begun to implement many of the items of equitable relief provided. The Decree and the agreements contained in it shall continue to be effective and binding on the Parties and their agents and successors for a four-year period from the Injunctive Effective Date, unless extended or terminated earlier pursuant to the terms of Parts IV.A.1 or IX. The releases and bars on claims shall survive the Decree.

### D. Persons Covered By Decree

#### 1. Definition of Class

Pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3), the Parties stipulate to the certification of the following Class composed of all Named Plaintiffs and black persons who, at any time between January 1, 1995 and September 30, 1999:

> Have been employed by Amtrak in positions, not on the Amtrak Management Committee, and not subject to a collective bargaining agreement ("CBA"), ("Management positions"); and/or have applied and been rejected by Amtrak for Management positions, including Internal Applicants and External Applicants.

#### 2. Opt Out

If this Decree is approved by the Court, all persons within the Class are bound by its terms, except that Class Members, other than Named Plaintiffs, who have elected to opt out of the Class and the settlement described herein following and on Court approval. Class Members who elect to opt out must do so in writing no later than the date specified in the notice provisions contained herein. Elections to opt out must be submitted pursuant to the procedure set forth in the Notice and must be approved by the Court. If more than ten (10) Class Members are permitted to opt out of this Decree, Amtrak may withdraw from this

9

Decree and void this settlement.  Amtrak shall have fifteen (15) days from the day that it receives notice that more than 10 Class Members have been permitted to opt out, and of the identity of such individuals, to withdraw from the Decree and to void the settlement.

       E.    **Denial of Liability**

      Amtrak expressly denies any wrongdoing or liability whatsoever. This Decree represents the compromise of disputed claims.  It reflects the Parties' recognition that litigation of these claims would severely burden all concerned and require a massive commitment of time, resources, and money.  The Decree does not constitute, and is not intended to constitute, and shall not under any circumstances be deemed to constitute an admission by either Party as to the merits, validity, or accuracy, or lack thereof, of any of the Plaintiffs' allegations or claims in this case.  Neither this Court nor any other court has made any findings or expressed any opinion concerning the merits, validity or accuracy of any of the allegations or claims alleged in this action.

      Nothing in or related to this Consent Decree, including any action taken to implement it or any statements, discussions, communications, or any materials prepared, exchanged, issued or used during the course of the mediation or negotiations leading up to the Consent Decree may be introduced or used or admitted in any way, in any other judicial, arbitral, administrative, investigative or other proceeding of any kind or nature whatsoever as evidence of discrimination, retaliation, or any violation of Title VII, Section 1981, the common law of any jurisdiction, or any other federal, state or local law, statute, ordinance, regulation, rule or executive order, or any obligation or duty at law or in equity.  Documents, data, and

1-WA:1236256.2

information exchanged by the Parties since the inception of the lawsuit may be used in this case

solely with respect to enforcement of the Decree, in the event necessary, and/or in the Job

Relief Process, as provided in Part XI below.

In the event that Final Approval of this Decree is not obtained, nothing herein shall be

deemed to waive any of Amtrak's objections and defenses, including but not limited to

objections to Class certification, and neither this Decree nor the Court's preliminary or

provisionally final approval hereof shall be admissible in any court regarding the propriety of

Class certification or regarding any other issue or subject of this case.

F.    Release/Bar of Claims

The provisions of this Decree shall resolve finally and forever hereafter any and all

Class Claims and Mandatory Joinder Claims as defined in Part III(A) of this Decree, in law or

in equity, of the Named Plaintiffs and Class Members, other than persons who have been

allowed by the Court to opt out of this Decree, which any of them, their representatives,

agents, heirs, assigns, executors, administrators, successors or assigns, may have, may have

had, or in the future may have against Amtrak insofar as any claims arise from or relate to

events that occurred prior to September 30, 1999.  Named Plaintiffs and Class Members shall

further be barred from submitting evidence in any proceeding, other than Claim or Job Relief

proceedings under this Consent Decree, concerning any Class Claim or Mandatory Joinder

Claim, in support of any claim arising after September 30, 1999.

*Res judicata* shall apply to all Named Plaintiffs and Class Members (except those who

have been allowed by the Court to opt out under the provisions of this Decree) with respect to

11

all Class Claims and Mandatory Joinder Claims, which are known or unknown, actual or potential.

As a condition precedent to the receipt of any relief under the terms of this Decree, Named Plaintiffs and Class Members shall, in consideration thereof, execute Amtrak's Release and the Administrators' Release, exactly as they appear in Exhibits B and D, respectively. The Named Plaintiffs and Class Members shall execute Amtrak's Release and the Administrators' Release before receiving any Job Relief provided under the terms of the Decree or monetary payment from the Settlement Fund, whichever comes first; however, in the event a Named Plaintiff or Class Member does not receive monetary and Job Relief simultaneously, the execution of Amtrak's Release and the Administrators' Release at the time the first form of relief is awarded shall not extinguish his or her claim for the other form of relief if he or she is also entitled to such other form of relief under the terms of this Decree.

The Complaint in this action against Amtrak shall be dismissed in its entirety, with prejudice, on the Non-Injunctive Effective Date, pursuant to the Joint Stipulation of Dismissal, attached hereto as Exhibit C. Within three weeks following the Non-Injunctive Effective Date, Class Counsel shall make good faith efforts to secure the prompt withdrawal or dismissal of any other pending lawsuits, appeals, administrative charges or other proceedings with respect to any Class Claims brought against Amtrak by the Named Plaintiffs, any of their other clients, and any Class Members (except those who have been allowed to opt out), that have been identified to Class Counsel by Amtrak.

1-WA:1236256.2

### G.    Conflicts/Confidential Information

Due to Class Counsel's continuing representation of the Class, their receipt of confidential information regarding Amtrak during this litigation, and their continuing receipt of such confidential information during the term of the Decree, Class Counsel agree during the term of the Consent Decree not to undertake any representation that would create a conflict of interest or involve the use of Amtrak's confidential information for purposes unrelated to the enforcement of the Decree.

Class Counsel further agree that during the term of the Decree they will not represent any Class Member who is allowed to opt out of the provisions in this Decree, in any litigation against Amtrak which arises out of, or is related to, Class Claims asserted in this case prior to the expiration of the Decree, if such representation would create a conflict of interest.

This provision shall not be interpreted to prohibit Class Counsel's continuing representation in *Thornton v. Amtrak*, Civil Action No. 98cv00890.

## IV.    GENERAL INJUNCTIVE MEASURES

### A.    General Provisions

#### 1.    Target Dates

The Parties recognize the importance of timely implementation of the injunctive relief provided under this Decree. The schedule set forth in this Decree is the schedule for implementing the injunctive relief, and is based on the Parties' current best estimates of the time required for such implementation. Amtrak will make good faith efforts to meet that schedule. The Parties recognize, however, that notwithstanding Amtrak's good faith efforts, it

13

may become necessary to extend the implementation schedule for some elements of the

injunctive relief. Amtrak agrees to provide reasonable advance notice, in no case fewer than

30 days, to Class Counsel in the event that Amtrak is unable to meet any aspect of the

implementation schedule, and the Parties agree to cooperate in good faith in seeking to agree

on necessary changes. Except with respect to the Compensation Study and the changes in

compensation required by Part IV.D, if the Parties are unable to reach agreement and the

extension contemplated by Amtrak for action on any item, in conjunction with any prior

extensions for that item, exceeds thirty (30) percent of the total time permitted under this

Decree for that item, Class Counsel may bring the matter to the Court's attention for resolution

pursuant to Section XI(B) of this Decree. In the event that Amtrak does not meet its

implementation target dates under this Decree, as extended pursuant to the procedures above,

for any such item, the expiration of the Decree for the provisions corresponding to the

implementation of such injunctive relief shall be delayed by the identical length of time.

Except with respect to Part IV.D of the Decree, the Parties shall notify the Court of any

agreed modification of the schedule set forth herein that exceeds thirty (30) percent of the total

time permitted for any item, and of the corresponding extension of the term for the relevant

Consent Decree part. The Parties shall not be required to notify the Court of any such

modification that is less than thirty (30) percent of the total time permitted under this Decree

for implementation of any item.

With respect to the compensation study and required changes in compensation, the

above procedures shall not apply. If the target date required under Part IV.D is not met, then

14

on agreement of Class Counsel, not to be unreasonably withheld, an extension shall be

granted; however any extension so implemented shall result in an identical extension in the

term of Part IV.D of the Decree.

## 2.    Joint Retention of Neutral Expert

Class Counsel and counsel for Amtrak jointly have retained Economic Research

Services, Inc. and Joan G. Haworth, Ph.D. of Economic Research Services, Inc. as a Neutral

Expert to assist in the implementation of this Decree. This Neutral Expert shall assist the

Parties in developing: (1) statistical tests for monitoring compliance with this Decree; and (2)

databases necessary for implementing such statistical tests. Amtrak shall be responsible for all

fees and expenses relating to the Neutral Expert.

## 3.    Outside Consultants

Wherever this Decree provides that Class Counsel shall review the credentials and

qualifications of, or be consulted with respect to, an outside consultant that Amtrak intends to

retain in connection with the injunctive provisions of this Decree. the following procedures

shall govern: (1) Amtrak shall provide Class Counsel with the names and curricula vitae of

individuals responding to its request for proposal ("RFP") or otherwise under consideration by

Amtrak; (2) Amtrak shall identify its consultant of choice, taking into account suggestions, if

any, by Class Counsel, and shall provide Class Counsel with the identity of the selectee and

documentation or other information concerning the consultant's qualifications, credentials, and

experience; (3) Class Counsel shall review Amtrak's selection and provide any comments

concerning the selection to Amtrak within 10 days of receiving such information; (4) Amtrak

15

shall consider the comments of Class Counsel in moving forward with the retention of the outside consultant; and (5) if Class Counsel raises concerns about Amtrak's consultant of choice, and Amtrak, having considered such concerns, decides to proceed with the retention of such consultant, Amtrak shall so notify Class Counsel.

### 4.    Computation of Time

In computing any period of time prescribed or allowed under this Decree, the period of time shall be computed in terms of calendar days unless otherwise specified.

### B.    Job Placements

#### 1.    Application Forms and Applicant Flow Database

Within 6 months after the Injunctive Effective Date, Amtrak shall revise its existing application form as follows and implement use of the new form. Amtrak will continue to use the Job Opportunity Application Form, or similar form, for Internal Applicants for Management positions. With respect to External Applicants for Management positions, Amtrak will revise its application form to include a portion that requests External Applicants voluntarily to provide information on their race, and will revise the structure of the form as necessary, on consultation with the Neutral Expert, such that the revised form will request information concerning all matters recommended by the Neutral Expert to be included in the applicant flow computerized records.

In conjunction with the Neutral Expert, within nine (9) months after the Injunctive Effective Date, Amtrak shall develop and implement a computerized applicant flow system for recording the demographic information received from Internal and External Applicants for

16

purposes of tracking the job placement process for Management positions at Amtrak and for monitoring purposes as described in Section IV(B)(3) below.

## 2. Employment Interviews

Within 6 months after the Injunctive Effective Date, Amtrak shall develop and implement standardized interview procedures and assessment forms to be used for employment interviews for Management positions as follows.

Amtrak shall develop standardized questions to be used for all applicants for a specific Management position. Interviews shall be conducted using the same questions for all candidates for the same position, insofar as feasible. The use of standardized questions shall not preclude reasonable follow-up questions by the interviewer. Standardized questions shall not be required for parallel positions across Amtrak's Strategic Business Units ("SBUs") or locations, or for parallel positions filled at different times.

Amtrak shall develop standardized interview assessment forms to be used for employment interviews for Management positions. The interview panels or individuals who interview applicants for a specific Management position shall record their assessments on the standardized interview assessment form.

Amtrak shall interview at least five (5) qualified Internal Applicants, or shall interview all qualified Internal Applicants if fewer than five (5) qualified Internal Applicants apply, for each Management position that Amtrak seeks to fill. Amtrak shall document in writing the criteria for deciding which of the qualified Internal Applicants to interview, and the rationale for selecting them. Such documentation shall be maintained by Amtrak's Human Resources

17

Department.  The requirement that at least five (5) qualified Internal Applicants be interviewed for each Management position that Amtrak seeks to fill shall not preclude Amtrak from also interviewing qualified External Applicants, and considering both Internal and External Applicants as part of the same applicant pool.

If the entire applicant pool for a particular Management position is fewer than 100, Amtrak shall notify all applicants not selected for such position of that fact within a reasonable period of time after the hiring decision has been made.  All applicants who interview for a Management position, but who are not selected shall be notified of that fact within a reasonable period of time regardless of the number of applicants interviewed.  Amtrak shall maintain records of applications, interviews, and selections for Management positions for a minimum of 2 years.

### 3.    Monitoring of Job Placements

Amtrak shall record in computer-readable format the race of applicants selected for interviews for Management positions that it seeks to fill, and the race of the persons ultimately selected to fill such positions, to the extent that applicants provide information concerning their race to Amtrak.  Amtrak shall commence recording this data on or before July 1, 2000. Beginning with the six-month period that begins on July 1, 2000, Amtrak shall review this placement data every six months to determine whether there is a Statistically Significant disparity between the offer rate for qualified white applicants and the offer rate for qualified African American applicants, or the rate at which qualified African Americans are selected for interviews and the rate at which qualified whites are selected for interviews, controlling for

18

appropriate factors. The Neutral Expert shall assist the Parties in determining the factors to be controlled for, and the formula to be used to determine if Statistically Significant disparities exist.

If, according to the formula devised by the Neutral Expert, Amtrak finds that its interview selection process has Statistically Significant adverse impact on African Americans during the previous six-month period, and if its hiring process has a Statistically Significant adverse impact on African Americans, then for Management positions that Amtrak seeks to fill during at least the next two consecutive six-month periods, Amtrak will ensure that the percentage of African Americans among those interviewed equals or exceeds the percentage of African Americans in the qualified applicant pool until there is no Statistically Significant disparity between the rate at which African Americans are offered jobs and their presence in the qualified African American pool.

C.     Reductions in Force and Priority Consideration

During the term of this Decree, if Amtrak intends to implement a reduction in force ("RIF"), Amtrak will perform an analysis of the RIF to determine if it will have a disparate impact on African American Management employees. This analysis shall be provided to Class Counsel at least 30 days prior to Amtrak's issuance of the notice of RIF. This disparate impact analysis shall be distinct from any analysis that is performed by the Amtrak Law Department in the course of its normal duties.

The analysis shall consist of a comparison of the percentage of African American Management employees whose jobs are scheduled for elimination by the RIF, to the percentage

19

of African American Management employees in the pool of employees potentially affected by

the RIF. If the percentage of African American Management employees in the group of

employees whose jobs are scheduled for elimination by the RIF exceeds the percentage of

African American Management employees in the pool of employees potentially affected by the

RIF (as defined by organizational unit and level), then the following shall apply:

1.    Amtrak shall prepare a written justification for the racially disparate
      impact of the RIF, which shall be provided to Class Counsel at least 25
      days prior to implementation of the RIF;

2.    For a period of six months from the date of the notice of the RIF,
      African American Management employees whose jobs were eliminated
      as a result of the RIF, and who meet the criteria set forth in Paragraph
      2(b) below, shall receive "priority consideration" for posted
      Management positions for which they apply.

      a.    "Priority consideration" shall mean that African American
            Management employees whose jobs were eliminated as a result of
            the RIF shall be interviewed for any Management position for
            which that person applies, and for which that person meets the
            minimum job qualifications.

      b.    African American Management employees whose jobs were
            eliminated as a result of the RIF shall qualify for "priority
            consideration" as defined above only if:

20

(1)     they have worked for Amtrak for at least one year prior to the date of the notice of the RIF;

(2)     they have not received an unsatisfactory overall score (or the functional equivalent) on either of their two most recent performance appraisals (except that if they have not been employed at Amtrak long enough to have received two performance appraisal ratings, any unsatisfactory rating shall preclude the employee from "priority consideration"); and

(3)     within the past two years they have not received any discipline more severe than a written warning.

3.     Four months from the date of the notice of RIF, Amtrak shall conduct an analysis of the rates at which African American Management employees whose jobs were eliminated by the RIF were offered jobs and the rate at which white Management employees whose jobs were eliminated by the same RIF were offered jobs. This analysis shall be a simple percentage analysis based on a review of employees in "comparable positions." "Comparable positions" shall be defined based on pay rates at Amtrak, which are currently defined in terms of "bands" and "zones." An offer for a non-Management position within Amtrak following a RIF shall not be considered an offer for a replacement job for purposes of the racial

21

impact analysis conducted under this provision. If the analysis conducted pursuant to this provision shows that the offer rate for white Management employees whose jobs were eliminated by the RIF exceeds the offer rate for African American Management employees whose jobs were eliminated by the RIF, then the African American Management employees whose jobs were eliminated as a result of the RIF shall receive "enhanced priority consideration" for Management positions for which they apply during the 6 to 12 month period following the date of the notice of the RIF.

a.    "Enhanced priority consideration" shall mean that African American Management employees whose jobs were eliminated by the RIF shall continue to receive "priority consideration" with respect to interviews for Management positions as described in Section 2 (a)-(c) above and, in addition, they shall be selected for the Management position for which they interviewed if: (1) they are the best qualified African American applicant; and (2) no "clearly superior" white applicant is selected for the position.

b.    "Clearly superior" shall mean that Amtrak can demonstrate that the successful white candidate's overall qualifications significantly exceed those of the African American candidate entitled to enhanced priority consideration based on a comparison

22

> of reasonable and objective selection factors for the specific
>
> position, including relevant experience, work history, relevant
>
> education, relevant expertise, and additional relevant
>
> qualifications beyond the minimal qualifications for the position.

Amtrak shall allow Class Counsel to have access to all non-privileged documentation

relating to Amtrak's final selection of the positions that will be eliminated as a result of a RIF.

Class Counsel may challenge a RIF in advance of the implementation of the RIF on the ground

that it will have a disparate impact on African American Management employees, or on the

ground that Amtrak's selection of the positions to be eliminated by the RIF is racially

motivated, by referring the matter in writing to the Court within 10 days of receiving Amtrak's

disparate impact analysis referenced above.  Amtrak shall have 10 days to file a response to

Class Counsel's submission.  If Class Counsel's challenge to the RIF is upheld, Amtrak shall

not implement the RIF as planned.

      D.     Compensation

           1.     Compensation Study

Within 60 days of the completion of the revisions to the job descriptions, as set

forth in Section IV(E) of this Decree, Amtrak shall hire an outside consultant to perform a

study of the salaries of all employees in Management positions, which shall consider, if

appropriate, the experience, prior salary, abilities, performance appraisals, geographic

location, SBU, and longevity of each employee, and other generally accepted factors relied on

by compensation specialists.  The study shall also consider market rates of compensation for

23

persons holding similar positions, if appropriate. Market rates, however, shall be considered only for the purposes of internal comparisons between various Amtrak positions, and shall not be considered for the purposes of general or overall increases in the compensation of Amtrak Management employees. Class Counsel shall have the opportunity to meet with the consultant before the consultant completes his or her report to discuss the factors the consultant intends to take into account in analyzing the appropriateness of salaries, how the consultant intends to take those factors into account, and how the consultant will identify comparable positions. The compensation study, and any reports or recommendations concerning the same, shall be completed within 6 months of the completion of the revisions to the job descriptions, as set forth in Section IV(E) of this Decree. Amtrak does not commit through the compensation study: (1) to adjust the salaries of Amtrak Management employees to market rates; (2) to limit starting salaries of new Management employees based on compensation paid to existing Amtrak Management employees; or (3) to increase periodically the salaries of Amtrak's Management employees.

Amtrak shall maintain a computerized database of all salaries of Management employees. The computerized database shall be maintained by the Human Resources Department.

### 2. Adjustments to Salaries if There Are Race-based Disparities

If the compensation study shows that there are disparities in salaries between African American Management employees and white employees in comparable positions, to the disadvantage of African American Management employees, Amtrak will increase the

24

compensation of African American Management employees to eliminate any racial disparities. Prospective salary adjustments, if any need to be made, shall be made within 3 months of the completion of the compensation study. Within 30 days after completing the adjustments, Amtrak shall provide Class Counsel with a final report identifying all such disparities and adjustments and justifications for them. The report containing this information, as well as the race of the employees, shall be in computer-readable format. Class Counsel may challenge the adjustments, or lack thereof, pursuant to the procedures set forth in Part XI of this Decree.

### E.    Job Descriptions and Qualifications

#### 1.    Revision of Job Descriptions

Within 2 years after the Injunctive Effective Date, Amtrak shall review and revise all job descriptions for Management positions. At least forty percent (40%) of all job descriptions for Management positions shall be reviewed and revised within 1 year of the Injunctive Effective Date.

Amtrak shall hire an employee ("internal analyst"), or an outside consultant, to review and revise the job descriptions for Management employees. If Amtrak decides to hire an internal analyst it shall so notify Class Counsel. Class Counsel may provide Amtrak's counsel with a list of job analysts who may serve as a source for referrals for the internal analyst position. Amtrak shall consider any referrals that it receives from Class Counsel or from the job analysts identified by Class Counsel. Prior to hiring an internal analyst, Amtrak shall provide Class Counsel with a copy of the resume of the person that Amtrak has decided to hire as an internal analyst and permit them a reasonable period for comment. If Amtrak decides to

25

hire an internal analyst, Amtrak will also hire sufficient staff and/or short term consultants to be able to complete the review and revision of job specifications within the 2-year requirement under this Decree. If Amtrak decides to retain an outside consultant to review and revise the job descriptions of Management employees, the procedures for hiring outside consultants that are set forth in Section IV(A)(3) shall apply.

The revised job specifications or descriptions shall contain requirements or qualifications that Amtrak believes are necessary to satisfactory job performance. No specifications or job descriptions shall include provisions that are crafted to make only one or several favored persons qualified to fill the position. Amtrak shall allow Class Counsel to have access to the revised job specifications.

### 2.    Job Postings

Job descriptions shall be posted with any notice of a position to be filled, and shall be available for review by any applicants for a position. Vacancies will be posted for a full 7 days, pursuant to Amtrak procedures. If an accretion in job duties for a position results in a job moving to a new salary band and zone, the position must be reposted and refilled and incumbents in such position shall remain in the position pending the refilling of the position.

The first time that a position is posted based on a revised job description, the posting notice, and the telephone message on the Amtrak job line shall: (a) include a statement that indicates that the posting is based on a revised job description; (b) include a summary of any changes in the job qualifications included in the revised job description; (c) identify a location where the revised and old descriptions may be reviewed, and a telephone number that an

1-WA:1236256.2

employee may call to obtain copies of the revised and old descriptions; and (d) include a message that informs the caller that within 24 hours of a request, the new job description and posting will be faxed or emailed to an employee, or if the employee is in a location where a facsimile or email is not available, the new job description and posting will be read to the employee over the telephone.  Amtrak shall act in conformity with such message.

3.    Appeal Process

An Internal Applicant for a position and an incumbent employee in a position may challenge a job description in the following circumstances.

Internal Applicants shall have the ability to challenge a job description on the ground that it was crafted to make only one or several favored persons qualified for the position covered by the job description.  Absent informal resolution of claims, the procedure for asserting a challenge to the description shall be as follows:

        a.     The Internal Applicant must file a written challenge with the Vice President of Human  Resources ("VP of HR") within the 7-day period provided by Amtrak for responding to a posted job vacancy.

        b.     The VP of HR shall have 10 business days from the date that the challenge is received to resolve or rule on the challenge.

        c.     If the VP of HR cannot resolve the challenge or overrules the challenge, and the Internal Applicant's claim is that the crafting of the job description was racially motivated, then the Internal

27

Applicant shall have 7 business days from the day that he/she receives notice of the ruling by the VP of HR to file a written appeal with the Senior Director, EEO Resolution. If the Internal Applicant's claim is not based on an allegation of racial motivation, the decision of the VP of HR shall be the final decision.

d.    The Senior Director, EEO Resolution shall have 20 business days from the day that the written appeal is received to resolve or decide the appeal.

e.    If the VP of HR or the Senior Director, EEO Resolution determines that the challenged job description was crafted to make only one or several favored persons qualified for the position covered by the job description, Amtrak shall revise the job description, and vacate, repost, and refill the position.

f.    At any time during the course of the procedures set forth above, the employee and Amtrak may settle the employee's claims without exhausting such procedures.

If a job description for a position is revised, the incumbent employee in that position may challenge the revised job description. Absent informal resolution of such claims, the procedure for an incumbent employee to challenge a revised job description shall be as follows:

28

a.   Amtrak shall notify an incumbent in a position whenever the job description for that position has been revised.  Such notice shall be in writing and shall be mailed to the incumbent, along with a copy of the revised job description, within 30 days after the revision in the job description has been made.

b.   The incumbent may challenge the revised job description by filing a written challenge with the VP of HR within 7 days of receiving the notice of, and a copy of  the revised description.

c.   The VP of HR shall have 10 business days from the day the challenge is received to resolve or rule on the challenge.

d.   If the VP of HR cannot resolve the challenge, or overrules the challenge, an incumbent who claims that the revisions to the job description for the incumbent's position were racially motivated shall have 7 business days from receiving the ruling by VP of HR to file an appeal with the Senior Director, EEO Resolution.   If the incumbent employee's claim is not based on an allegation of racial motivation, the decision of the VP of HR shall be the final decision.

e.   The Senior Director, EEO Resolution will have 20 business days from receiving the appeal to resolve or to rule on the appeal.

f.   If the VP of HR or the Senior Director, EEO Resolution upholds

29

the challenge, the old job description shall remain in effect until any revisions to such job description can withstand challenge by the incumbent employee.

g.    At any time during the course of the procedures set forth above, the employee and Amtrak may settle the employee's claims without exhausting such procedures.

## F.    Performance Appraisal System

### 1.    Revising The System

Within 1 year of the Injunctive Effective Date Amtrak shall develop and implement a revised performance appraisal system. The performance appraisal system shall be revised with the assistance of an outside consultant. Amtrak has selected an outside consultant in connection with its Service Standards initiative and intends to use this consultant to perform the requirements of this section of the Decree. Amtrak has provided Class Counsel with information and materials concerning the consultant that Amtrak has selected. If, however, Amtrak decides to use another consultant to perform the requirements of this part of the Decree, the selection of such consultant shall be governed by the provisions in part IV(A)(3) of this Decree.

### 2.    The Revised System

The revised performance appraisal system may, but need not, include elements of the current system and/or proposals for change made before the Injunctive Effective Date. The revised system shall include at least annual reviews of Class Members. Interim reviews are

30

also permissible. A component of the performance appraisal shall be an assessment of an employee's performance with respect to equal employment opportunity issues ("EEO component"). No supervisor shall be eligible for a promotion for a period of one-year following the unsatisfactory appraisal if he/she has an unsatisfactory rating (or functional equivalent) on the EEO component of his/her performance appraisal. The new Amtrak EEO Resolution Unit shall review all ratings of those managers or supervisors who have had complaints filed against them in the last year to ensure that the performance appraisals fairly and accurately reflect EEO complaints that have been investigated by the Unit and found not to be frivolous. In conjunction with the implementation of the revised performance appraisal system, Amtrak shall train all managers who conduct performance appraisals regarding the new system.

### 3.    Review for Statistically Significant Disparity

Amtrak shall computerize the revised performance appraisal system. The Parties will work with the Neutral Expert to develop the fields that should be included in the system for statistical monitoring.

Using the formula and fields devised by the Neutral Expert, Amtrak's Director, Diversity Monitoring shall supervise an annual review of performance evaluation scores of Management employees to determine whether there is a Statistically Significant disparity between the overall scores of African American and white Management employees, controlling for appropriate factors, if any, that are used in the database. In performing the review itself, the Director, Diversity Monitoring may request assistance from the Neutral Expert. Based on

31

this review, the Director, Diversity Monitoring may make recommendations to the VP of

Business Diversity, and the President of Amtrak for reducing disparity. The results of this

review, and any recommendations regarding the same, shall be provided to Class Counsel.

Based on a review of such information, Class Counsel may make recommendations to Amtrak

for further remedial action. If Class Counsel makes recommendations to Amtrak for further

remedial action, Amtrak shall have 30 days to respond to such recommendations. If Amtrak

and Class Counsel do not reach agreement on resolution of such recommendations, Class

Counsel may petition the Court for enforcement pursuant to the provisions in Section X of this

Decree.

### G.    Training

#### 1.    Internal and External Training Opportunities

In addition to any other training specified in this Decree, Amtrak shall implement the

following training policies and programs with respect to Management positions. Amtrak shall

provide comparable opportunities for internal and external training to Management employees

who hold positions in the same department with similar job duties. In allocating training

opportunities, Amtrak may give weight to qualifications, experience, education, performance,

and other reasonable, non-discriminatory factors.

In order to assess whether comparable training opportunities are being provided, within

6 months of the Injunctive Effective Date, Amtrak shall develop an authorization form for all

training requests (on-site and off-site) that must be filled out and signed by any Management

employee requesting to attend a training program. The Management employee shall submit the

form to his/her supervisor. The form shall direct the supervisor to indicate whether the request for training is approved or disapproved. If a supervisor disapproves a request for training, the form shall also direct the supervisor to indicate the reasons for disapproval. The completed forms shall be maintained by the Human Resource Department.

Within 9 months of the Injunctive Effective Date, Amtrak shall implement and maintain a computerized database of all requests made by employees for internal and external training and all training actually provided to Management employees. Management employees shall receive an annual printout of the training database for themselves and for all Management employees under their supervision.

In order to ensure that all employees are made aware of training opportunities, within 6 months after the Injunctive Effective Date, Amtrak shall distribute to all Management employees and all non-Management supervisors copies of the Amtrak booklet, or similar publication, that summarizes available training courses, and a written schedule that shall be updated and redistributed every six (6) months until Amtrak institutes an on-line version of the booklet and schedule. Other non-Management employees may obtain a copy of the training booklet from the Human Resources Department on request.

Within nine (9) months after the Injunctive Effective Date, Amtrak shall implement an on-line version of the training booklet and the schedule of training classes. The booklet and on-line information shall advise employees of the possibility of external training, and shall identify an individual in the Human Resources Department who can answer questions regarding external training.

33

### 2.    Career Counseling

Amtrak shall implement a career counseling program for Management employees.
Within one year after the Injunctive Effective Date, Amtrak shall implement one half-time
position responsible for career counseling of Management employees. Within two years of the
Injunctive Effective Date, Amtrak shall implement one full-time position responsible for career
counseling for Management employees. The position shall be located in the Human Resources
Department in Amtrak's Corporate headquarters, but such position shall be available to
provide career counseling to Management employees nationwide through telephone, on-line,
and personal communications. The position shall require familiarity with Amtrak's job
specifications and shall be responsible for identifying appropriate training needed by employees
for advancement to and within Amtrak Management positions.

### 3.    Statistical Review

Beginning on January 1, 2002, Amtrak's Director, Diversity Monitoring (or the outside
consultant responsible for monitoring as described in Section IV(I)(1) of this Decree) shall
supervise an annual review of the training data from the prior year, and as described above, to
determine whether there is a Statistically Significant disparity between the training
opportunities provided to African American Management employees and white Management
employees, controlling for appropriate factors that are used in the database, including the
number of requests made by employees in each category. The statistical analysis shall be
performed on a company-wide basis and shall also be conducted separately within the 3 SBUs
of Amtrak, as well as within the Corporate Service Center. Amtrak shall conduct the review

34

pursuant to the formula and fields devised by the Neutral Expert. The Neutral Expert may also be consulted with regard to and/or retained by Amtrak to conduct the actual review.

Based on the review of training data described above, the Director, Diversity Monitoring may make recommendations for reducing any disparity that disadvantages African American Management employees to the VP of Business Diversity. The results of this review and any recommendations shall be provided to Class Counsel. Based on a review of this information, Class Counsel may make recommendations to Amtrak for further remedial action with respect to training. If Class Counsel makes any recommendations for further remedial action with respect to training, Amtrak shall have 30 days to respond to such recommendations. If Amtrak and Class Counsel do not reach agreement on resolution of such recommendations, Class Counsel may petition the Court for enforcement pursuant to the provisions of Section X of this Decree.

      H.    Discipline

           1.    Creation of an Appeal Board

Within 6 months after the Injunctive Effective Date, Amtrak shall create an Appeal Board, and implement procedures related to such Board, to handle appeals from African American Management employees who are terminated from their employment at Amtrak through formal or informal disciplinary actions and allege that the termination was based on race. "Formal disciplinary action" refers to disciplinary termination. "Informal disciplinary action" includes, but is not limited to, a request for resignation or retirement, or constructive discharge. The Appeal Board shall be composed of Amtrak's Vice Presidents of Business

35

Diversity and Human Resources, and the Vice President and General Counsel.

### 2.    Appeal Procedures

The procedure for requesting an appeal with the Appeal Board to review a termination based on a formal or informal disciplinary action and an allegation that such termination was based on race shall be as follows. A Management employee shall initiate an appeal to the Board to challenge formal or informal disciplinary action involving termination by forwarding a written request for review of the disciplinary action to the Board. The time for requesting an appeal runs from the date that the employee receives notice of the termination, until 10 days after the effective date of the termination. After receiving notice of the appeal, the Board shall provide the employee with an opportunity to present his/her position to the Board in person, or through a representative, within 30 days of the filing of the appeal. The employee shall have the right to submit documents and written statements to the Board in support of his/her position, and shall have the right to make a presentation before the Board in person or through a representative. This process shall provide for an opportunity to be heard, but shall not be an evidentiary hearing. The Board may use investigators from the EEO Resolution Unit to conduct an investigation of the facts presented by the employee in the course of the Appeal. The Board shall make a decision on the appeal within 60 days of receiving the written request for appeal. The Board can affirm, modify or reverse any disciplinary action involving termination. The Board shall also have the power to award back pay. Amtrak shall develop procedures and guidelines consistent with the above to govern the deliberations of the Appeal Board.

36

1-WA:1236256.2

The Board decision shall be final Amtrak action with respect to the challenged discipline. The Board process shall be confidential. There shall be no negative consequences to an employee for using the Appeal Board process, although Amtrak may make as a condition of payment of severance, the execution of a waiver of the Appeal Board process by the employee. The waiver form and the substantive content of the waiver shall be approved by Amtrak's Vice Presidents of Business Diversity and Human Resources and by the Vice President and General Counsel before it is presented to an employee for signature.

### 3. Monitoring of Impact of Disciplinary Process

Amtrak shall maintain a computerized database of all disciplinary actions taken against Management employees. Amtrak shall allow Class Counsel to have access to this database. Amtrak shall also maintain a computerized database and copies of the records of all cases filed before the Appeal Board. Amtrak shall allow Class Counsel to have access to this database and the copies of the records.

### I. Equal Employment Opportunity

#### 1. Reorganization of the Amtrak EEO Function

Amtrak has reorganized the management of its equal employment opportunity ("EEO") complaint function and has advised Class Counsel of the changes that have been made. This Decree embodies the commitments relating to the maintenance of certain aspects of the new organizational structure.

Amtrak shall maintain a Director position, entitled Senior Director, EEO Resolution or similar title (e.g. Director, Employee Resolution), which shall have responsibility for

37

1-WA:1236256.2

managing the internal EEO complaint procedure within Amtrak. Amtrak shall use an Amtrak Director position, entitled Director, Diversity Monitoring or similar title, or an outside consultant, to monitor specific EEO functions identified in this Decree. If Amtrak decides to retain an outside consultant to be responsible for this monitoring position, the outside consultant shall be selected in accordance with the provisions in Section IV(A)(3) of this Decree. The Director, Diversity Monitoring, or the outside consultant (if one is selected) may also be given broader duties with respect to compliance with this Decree.

The Senior Director, EEO Resolution and the Director, Diversity Monitoring (or the monitoring consultant, if one is selected) shall report to a Vice President, titled Vice President, Business Diversity and Strategic Initiatives or similar title ("VP Business Diversity"), which shall have responsibility for Amtrak's EEO and diversity functions. The VP Business Diversity; the Senior Director, EEO Resolution; and Director, Diversity Monitoring shall have the power to develop and implement, on the approval of the President of Amtrak, recommendations with respect to EEO and diversity issues.

Amtrak shall implement a protocol for referral of employee relations complaints to the EEO Resolution Unit, when the employee relations complaint presents potential discrimination issues. Responsibility for defending Amtrak against discrimination complaints or charges filed with federal, state, or local agencies ("external EEO complaints") shall remain in the Amtrak Law Department. EEO investigators in the Law Department shall be responsible for conducting privileged investigations of external EEO complaints. Amtrak shall develop a protocol for the communication of information between the EEO Resolution Unit and the Law

1-WA:1236256.2

Department, for purposes of: defining permissible communications; defining the scope of the attorney-client privilege or work product protection; and ensuring the independence of the EEO Resolution Unit investigations.

Amtrak shall staff the EEO Resolution Unit with a sufficient number of investigators to meet all time lines under this Decree relating to internal EEO functions.

2.    **Internal Complaint Procedure**

Amtrak shall revise its internal EEO complaint procedure to provide for prompt investigation and resolution, where possible, of internal EEO complaints. Amtrak and Class Counsel shall agree on a policy statement of rights of employees to be distributed annually to all employees, which shall include a description of the internal complaint procedure. Amtrak shall implement procedures for the filing of internal EEO complaints in writing, in person, by e-mail, or by telephone. Amtrak shall provide employees with written confirmation of the filing of an internal EEO complaint, and shall provide them with notice of the applicable deadlines for processing internal and external claims.

All complaints filed under the internal EEO complaint procedure or referred from the Employee Relations Department, shall be investigated and processed to closure within 90 days of the date that the internal complaint is filed. Internal EEO investigators in the Employee Resolution Unit shall attempt the early resolution of all complaints, within 30 days of the complaint being filed, through discussions with the affected employee and their department supervision.

Within 90 days of the complaint being filed, the complaint shall be closed. The closed

39

complaint file shall include: (1) a record of facts that were developed by the investigation conducted by the internal EEO investigator, (2) a summary of resolution efforts, and (3) any recommendations for resolution or further action. Recommendations for resolution may include recommendations for sanctions and discipline, up to and including termination, of employees for performance or conduct related to EEO issues. Such recommendations shall be made to those managers who have the authority to impose such sanctions on the employees involved in the situation or circumstances that are the subject of the complaint. The EEO Resolution Unit shall make no findings of a violation or non-violation. The EEO Resolution Unit shall provide a written notice of the closure, including a summary or recommendations for action to the complainant. The internal EEO Office will maintain a confidential, non-privileged written record of all investigations.

On closure, the complainant and Class Counsel may review a complete copy of the EEO Resolution Unit record, on the condition that they sign a confidentiality agreement that will preclude the use of the information for purposes other than case processing of the employee's claim, or for compliance with this Decree. Within 10 days of the notice of closure, an employee who is dissatisfied with the processing of a complaint may request a review by the Senior Director, EEO Resolution Unit. Upon request by the complaining employee, the Senior Director, EEO Resolution shall conduct a review of the employee's complaint and meet with the complainant. For complainants located at the Corporate Service Center or in the Northeast Corridor, such meeting shall be in person. For Amtrak West or Intercity complaints, the meetings may be conducted via conference call. The Senior Director,

40

EEO Resolution shall have the authority to make recommendations for resolution of complaints. The Senior Director, EEO Resolution shall conduct the meeting and review, and make any recommendations for resolution or further action within 60 days of the date of closure of the claim by the internal EEO investigator.

A manager who receives a recommendation from the EEO Resolution Unit for discipline of a subordinate employee as a result of an internal EEO investigation shall have 10 days to accept or reject the recommendation. If the recommendation is rejected, the manager will provide his/her reasons for rejecting the recommendation in writing to the VP Business Diversity, the Vice President of Human Resources, and the Vice President and General Counsel. If the manager fails to act within the 10-day period, the Senior Director, EEO Resolution will so report to the three Vice Presidents referenced above. The three Vice Presidents shall have 15 days from the date they receive a manager's written notice of rejection of a recommendation, or where the manager has not taken any action, 15 days from receiving a report from the Senior Director, EEO Resolution, to take whatever action they deem appropriate.

At the close of each investigation, the internal EEO Office will provide each complainant with an evaluation form to determine the complainant's level of satisfaction with the processes and performance of the EEO Office.

The EEO Resolution Unit shall have the authority and the responsibility to investigate patterns and practices of conduct by individuals or departments based on complaints or other information that comes to the attention of the EEO Resolution Unit. An employee's

1-WA:1236256.2

involvement in three or more separate incidents resulting in non-frivolous EEO complaints within any two-year period, regardless of whether the employee was alleged to be the principal wrongdoer in any complaint, shall be grounds for initiating an investigation.

Every three years the EEO Resolution Unit shall conduct an audit of each department or organizational unit within Amtrak based on the history of EEO complaints from employees in the department or organizational unit and other EEO-related information. The EEO Resolution Unit shall report the results of the audit to the manager responsible for the organizational unit or department. Further, pursuant to the power of the Vice-President, the Office of Business Diversity may make recommendations and/ or implement changes in the department on approval of Amtrak's President with respect to EEO and diversity issues.

3.    Training

Managers and supervisors of Class employees shall be trained on EEO issues within one year after the Injunctive Effective Date. Such managers and supervisors shall be given a refresher training course at least once every 3 years. Subjects for the training course shall include applicable EEO laws, Amtrak's internal and external EEO complaint procedures, and Consent Decree obligations. EEO Resolution Unit investigators shall be given initial and annual training concerning EEO laws, Consent Decree requirements, investigation, and mediation techniques.

1-WA:1236256.2

## V.    SETTLEMENT FUND

### A.    Creation and Administration of Fund

#### 1.    Creation and Purpose

For the purpose of satisfying and settling all of the Eligible Claims of all named Plaintiffs, Class Members, and Class Counsel, as those terms are defined in Part III of the Decree, Amtrak shall deposit into the Settlement Fund (the "Fund"): 1) the sum of Four Million Dollars ($4,000,000), on or before October 15, 1999; and 2) the sum of Four Million Dollars ($4,000,000), plus six percent (6%) interest compounded monthly from October 15, 1999 until the date of deposit, on or before November 15, 2000. The Fund shall be established as a qualified Settlement Fund under Section 468B of the Internal Revenue Code and shall be administered by Michael Lieder and Lawrence Schaefer ("the Administrators") under the Court's supervision in accordance with Administrative Order No.1.

The two above deposits are the sole payments that Amtrak shall be required to make to settle this case and the foregoing Claims, except with respect to: 1) published notice (Section VIII.C); 2) consulting fees requisite to implementation of the Decree including for the Neutral Expert; 3) fees for mediators and/or arbitrators relating to Job Relief Process (Section VII.B) and enforcement matters (Section XII); and 4) employer taxes (Section II.C of Implementation Order No. 1). Nothing in the foregoing sentence, however, shall release Amtrak from expending the necessary resources to implement internally the injunctive measures mandated by Section IV of the Decree. From the deposits and any income earned thereon, Plaintiffs and Class Members may receive payments, Class Counsel shall be paid all fees and reimbursed for expenses

43

incurred, except as set forth immediately above. Tax reserves and an appeal Fund shall be created and set aside before allocating the Fund among eligible Claimants or Payees, all in accordance with Administrative Order No. 1, previously approved by the Court and the terms of which are incorporated herein and made a part of this Decree.

The Portion of the Fund designated to pay the Claims of the Plaintiffs and Class Members shall consist of Five Million Dollars ($5,000,000) and any income thereon and shall be known as the "Claims Fund." The Portion of the Fund designated to pay to and reimburse Class Counsel their reasonable fees, expenses and costs, shall be known as the "Monitoring Fund." The Monitoring Fund shall by agreement consist of Three Million Dollars ($3,000,000) and any income thereon. Such income as to both Portions shall include both the interest payable by Amtrak as provided above and the income earned by the Fund pending distribution from the Fund. Both Portions shall be governed by Administrative Order No. 1. The Administrators shall invest both Portions of the Fund in interest-bearing United States Treasury securities, securities of agencies of the United States backed by the full faith and credit of the United States, and/or Repurchase Agreements, pending distribution from the Fund.

The Monitoring Fund shall cover fees, costs, and expenses, whether previously incurred in connection with this litigation or to be incurred at any time including, but not limited to, those relating to: (1) the administration of the Claims Resolution Process and the Claims Fund, including distribution of the Claims Fund to Plaintiffs and Class Members and related matters; (2) administration of the Monitoring Fund and distributions to Payees; (3) Plaintiffs' half of all past fees, costs and expenses of ADR Associates incurred during the mediation of this dispute;

44

(4) all attorneys' fees, costs and expenses incurred or to be incurred by Class Counsel for any

purpose in connection with the case, including, but not limited to, those relating to (a)

finalization of the Decree, (b) obtaining approval of the Decree by the Court and in any related

appeal proceedings or defense of the Decree, (c) monitoring of implementation of the Decree, (d)

resolution of unresolved Decree issues, including Class Members' Job Relief, by the Parties, the

Court, an arbitrator or otherwise, and (e) enforcement of the Decree. Notwithstanding the above,

attorneys' fees, costs and expenses incurred by any person objecting to, or making a collateral or

direct attack on the Decree or on the actions of the Administrators of the Fund, shall be borne by

that person and shall not be chargeable to either Amtrak or the Fund.

The Fund, including both of its subparts, shall irrevocably vest in the Court, through its

agents the Administrators, as defined in Administrative Order No. 1 on the Non-Injunctive

Effective Date. If, by whatever means, the Decree does not become a final judgment, the entire

Fund and any interest thereon shall revert to Amtrak.

2.    **Administrators' Administrative Responsibilities**

In administering the Fund, the Administrators shall be bound by the terms of the Court's

Administrative Order No. 1, submitted on the date of preliminary approval of the Decree, as

those orders may in the future be supplemented or amended by the Court to administer and carry

out the purposes of the Decree, provided that no such supplementation or amendment shall alter

the terms of the Decree, including Amtrak's payment obligations.

45

**B .    CLAIMS FILING PROCEDURES FOR SETTLEMENT OF
CLAIMS OF PLAINTIFFS AND CLASS MEMBERS**

Following preliminary approval of the Decree, Class Counsel was obligated to mail a

Claim Form to every known Class Member at his/her last known address, if available.  Class

Counsel also has been obligated to make Claim Forms available to other Class Members at their

request.

The signed Claim Forms submitted in accordance with the procedures set forth on the

Claim Form to the Administrators by Class Members as defined in the Decree, Section III.A &

D, and, including named Plaintiffs, and postmarked or hand delivered by October 29, 1999, shall

be processed and reviewed by the Administrators.  The Administrators shall recommend

monetary awards from the Fund to the Court under seal, with a copy to outside counsel for

Amtrak.  Underlying Claim Forms prepared by Class Members may be provided to Amtrak only

if so ordered by the Court, or by consent of Class Counsel, to Amtrak's outside counsel.

In order to promote both fairness and efficiency, each Claim will be awarded points after

review and after such verification as the Administrators deem appropriate of the information

provided on the Claim Form.  Verification may include, among other things, checking the

relevant information on computerized databases maintained by the Administrators and

Claimants' tax returns.  The details of the point system to be applied shall be provided to

Amtrak, and are subject to Court approval on recommendation by Class Counsel after Claims are

received.  The point system shall be applied uniformly, will not be discretionary after approval

and may be amended only by Court Order.  The total points awarded to all Claimants will be

aggregated, and each Claimant's proportionate share of the total points will be determined.  The

46

Claimant shall then be allocated a commensurate proportion of the Claims Fund. Subject to Court approval, a Claimant may be required to obtain a minimum number of points to qualify for a monetary award. All monetary awards shall be subject to the review and approval of the Court before disbursement. All Class Members receiving awards will be required to keep the amount of the awards confidential from everyone except Class Counsel, or any attorney, tax or financial advisor representing them or members of their immediate family.

Points will be awarded to Plaintiffs and Class Members who qualify as Management employees, based on such factors as: (1) length of service with Amtrak; (2) strength of Claim and amount of damages from alleged denial of advancement opportunity (Claims based on initial assignment, promotion and transfer decisions); (3) strength of Claim and amount of damages from alleged denial of compensation (Claims based on disparities in pay); (4) strength of Claim and amount of damages from discipline imposed (Claims based on suspension or termination decisions); (5) strength of Claim and amount of damages from alleged racially offensive conduct or language; and (6) contributions to the prosecution of the litigation. Claimed losses resulting from alleged unfair performance appraisals, inadequate training, or disciplinary action less than suspension or termination will be treated as losses flowing from any resulting personnel actions such as lost promotions. Points will be awarded to applicants for Management positions based on such factors as: (1) pay grade of job sought; (2) demonstrated suitability and/or qualification for the job sought; (3) contribution to the prosecution of the litigation; and (4) strength of Claim. However, External Applicants shall in no circumstance receive more than ten thousand dollars ($10,000) from the Fund. The Administrators may award additional points to Claimants who

47

1-WA:1236256.2

supply corroborating documentation for their losses.

Awards shall be made from the Claims Portion of each installment paid by Amtrak to the Fund. The awards made to Plaintiffs and Class members from the first installment shall be deemed 27% compensatory, 53% backpay, and 20% pre-judgment interest. The awards made to Plaintiffs and the Class Members from the second installment shall be deemed 25% compensatory, 50% backpay, and 25% pre-judgment interest. No award paid to any Plaintiff or Class Member pursuant to the Decree shall be taken into account in determining the amount of or eligibility for any pension, retirement, or other benefits from Amtrak.

However, any Class Member who released any of his/her Claims that would otherwise be covered by this Decree, or obtained a final judicial determination of any of his/her Claims that would otherwise be covered by this Decree, is not eligible to receive an award from the Fund for those Claims under these procedures.

## VI.    JOB RELIEF

### A.    ASSERTIONS OF CLAIMS FOR JOB RELIEF

Plaintiffs and Class Members shall be entitled to assert claims for specific Job Relief as defined below, and shall be awarded such relief as the Parties may agree to. In the event the Parties are unable to agree to resolve any such claims, the Plaintiffs or Class Members shall be entitled to mediate, and thereafter to arbitrate, their claims for Job Relief in accordance with the procedures set forth below. The Job Relief Process is interrelated with the monetary awards procedure in that participants in the Job Relief Process shall receive reduced monetary awards as set forth below. A negative arbitration ruling controlling a participant's claim, however, shall

48

not affect that person's right to accumulate points relating to other types of claims in the Claims

Resolution Process set forth in Section V.B.

### 1.    Limitations on Individual Participation

In order to participate in the Job Relief Process, Job Relief Claims must: (a) involve

discrimination in hiring, promotion, demotion or termination; (b) entail a demonstrable increase

in the Claimant's current annual salary of at least five thousand dollars ($5,000); and (c) if a

hiring claim, be submitted by an Internal Applicant rather than an External Applicant.

### 2.    Consultation Period and Voidability of Settlement

Class Counsel shall have thirty (30) days following the deadline for filing Claim and Job

Relief Election Forms (the "Claims Consultation Period") to evaluate the Eligible Job Claims

and, consistent with their attorney-client obligations, counsel persons filing Job Relief Election

Forms concerning the strength of their Job Relief and monetary claims and the desirability of

pursuing the former.

Within 10 days of the Consultation Period described in Section VII(A)(2) above, Class

Counsel shall notify Amtrak of the number of Class Members who have chosen to participate

in the Job Relief process under this Decree.  If more than 45 Class Members have elected to

participate in the Job Relief process, Amtrak may, within fifteen days of receiving such notice,

withdraw from this Decree and declare the Settlement null and void.

### 3.    Reduction in Monetary Relief

Job Relief Claimants shall have deducted from their monetary claim, if any, all points

allocated to the claim for which Job Relief is sought, plus twenty-five percent (25%) of all points

49

allocated for other claims under the procedure set forth in Administrative Order No. 1.

B.    JOB RELIEF PROCEDURES

    1.    Negotiation

Within ten (10) days after the Consultation Period, Class Counsel shall notify Amtrak of all individuals seeking Job Relief and the nature of their claims. Thereafter, Class Counsel and counsel for Amtrak shall consult to discern which claims are susceptible to resolution through negotiation. Within thirty (30) days thereafter, Amtrak and Class Counsel shall attempt negotiation of each such claim.

    2.    Mediation

If unsupervised negotiation of a claim does not succeed within sixty (60) days after the expiration of the Claims Consultation Period, or is deemed unlikely to succeed by either Party at any time following thirty (30) days after the expiration of the Claims Consultation Period, the claim shall proceed to mediation. Amtrak shall pay all reasonable fees and costs of the mediator, which shall be ADR Associates or, in the event of unavailability, a mutually selected substitute. Each side shall pay its own fees and costs, with the fees and costs of Class Counsel paid from the Monitoring Fund.

    3.    Arbitration

If one of the Parties determines after one or more mediation sessions that the mediation is unlikely to be fruitful, or if the mediator concludes at any time that mediation is unlikely to be fruitful, the claim shall proceed to arbitration. Amtrak shall pay all reasonable fees and costs of the arbitrator, which shall be a principal of ADR Associates who did not conduct any of the

50

mediation sessions, or in the event of unavailability, a mutually selected substitute. Each side shall pay its own fees and costs, with the fees and costs of Class Counsel paid from the Monitoring Fund.

### (a)    Hearings

An arbitration hearing on each such claim shall be set for an agreed date no later than one hundred eighty (180) days after the expiration of the Claims Consultation Period. The location of the hearing shall be by agreement of counsel. If no agreement is reached, location shall be determined by the arbitrator on consideration of location of documents, witnesses, and other factors concerning relative convenience to the Parties. Each side shall be entitled to present testimony and other evidence and argument for a maximum of four (4) hours per side. The arbitrator may grant additional time at his or her discretion, particularly when a Party's time has been consumed inordinately by objections, legal argument or uncooperative adverse witnesses. Following the hearing, the arbitrator shall render a written decision stating the result reached. Copies of the decision shall be sent to the Parties.

### (b)    Evidence

The Federal Rules of Evidence shall control in determining admissibility of evidence, except as set forth below. Requirements for establishing foundation and authenticity of documentary evidence, and hearsay objections to documentary evidence (although not double hearsay objections), are waived, although such considerations may be considered by the arbitrator in determining the weight of the evidence. Written and notarized statements from persons who are not currently Amtrak employees, and prior deposition testimony from persons

51

who are not currently Amtrak employees, may be admitted into evidence for any purpose at the discretion of the arbitrator and giving weight to the fact that the individual is not available for cross-examination. Oral testimony shall be under oath. The arbitrator may request either Party to submit additional written or documentary information that the arbitrator considers necessary to reach a correct result. The arbitrator shall determine whether to request written briefs or memoranda prior to the hearing, following the hearing, and/or with respect to any issues raised during the hearing.

### (c)    Pre-hearing production of evidence

At least sixty (60) days before the arbitration, Class Counsel shall describe the specific Job Relief to be arbitrated and provide a written summary to Amtrak's counsel of why they contend the request meets the standards for favorable decision set forth in subsection (d) below. There shall be no depositions taken in connection with these arbitration proceedings. However, no later than thirty (30) days before the hearing, the Parties may by letter request from each other the production of specific, clearly defined relevant documents or information. Responsive documents or information shall be supplied within fifteen (15) days. At least ten (10) days prior to the hearing, counsel shall exchange the documents that they plan to use as exhibits at the hearing. No document may be used in any fashion in the arbitration if it has not been supplied to the other Party. No witness may be called at the hearing unless his/her name has been supplied to the other Party at least five (5) working days prior to the hearing. If a witness is currently an Amtrak employee, Amtrak shall make him or her available to testify at the hearing at no cost to the Job Relief Claimant. In the event the Parties are unable to resolve

52

any disputes about the production of documents or information, they shall jointly confer with the arbitrator by telephone or in person to seek a resolution. In resolving any such disputes, the arbitrator's determination shall be guided by the principle of providing both Parties with a fair opportunity to present their respective positions and to respond to the other's presentation.

(d)    Standards for decisions

If the Job Relief Claimant proves by a preponderance of the evidence that the Job Relief requested is necessary to make him or her whole from conduct that was the result of race discrimination, such Claimant shall be entitled to an award of Job Relief. The arbitrator may seek additional information from the Parties about the nature of adequate or available Job Relief.

C.    **DEFINITION OF JOB RELIEF**

"Job Relief," as that term is used herein, includes a prospective remedial change in a person's job title, including a promotion, transfer, hiring or reinstatement. Job Relief may not include any request for monetary relief, including front or back pay, but may include a prospective change in pay rate. Unless the arbitrator decides otherwise, a successful Job Relief Claimant shall be entitled to the rate associated with the new position as of the date of the ruling establishing his or her right to relief, even if he or she is not placed into the new position until some time in the future, for example, until the position becomes vacant

VII.   **NOTICE**

Prior to final approval of this Decree, and pursuant to Court Order, Class Counsel has provided mailed and published notice of the Settlement, the fairness hearing, and other matters. The costs of Published Notice shall be borne by Amtrak. The cost of postage for and

53

distribution of Mailed Notice and the Forms shall be borne by the Settlement Fund, though

Amtrak shall bear all costs relating to preparation of address lists.

## VIII.  RECORDKEEPING AND REPORTS

### A.    PERIODIC REPORTS

Amtrak shall provide semiannual reports, unless another period is specified below, to Class

Counsel on each of the following subjects (to the extent they occurred during the period in question).

The semiannual reports shall cover a six-month period (January 1 – June 30 and July 1 – December

31). Reports shall be provided within one month of the close of the period covered.  The subjects

to be covered are as follows:

1.    Counts of the number of employees in Management positions for the company as a whole, for headquarters and each SBU, and for each compensation group (currently defined in terms of "bands" and "zones"), with subcounts for African Americans;

2.    Counts of the number of new hires, transfers or promotions into Management positions for the company as a whole, for headquarters and each SBU, and for each compensation group, with subcounts for each racial group and for whether the new Management employees were Internal or External Applicants;

3.    The results of the statistical analyses of interviews and placements required under section IV.B.3;

4.    The average salary of employees in Management positions for the company

54

pursuant to section IV.B.2 and any revisions to such forms;

4.    Any RIF analysis and justification for any racially disparate impact as provided in section IV.C, in the time frames required by that section;

5.    Any analysis of the placement rates of employees whose jobs were eliminated by a RIF as provided in section IV.C, to be provided within seven days after its completion;

6.    A preliminary report as part of the compensation study as provided in section IV.D.1 that identifies the proposed means for taking into account factors such as experience, abilities, performance appraisals, and geographic location, to be provided within seven days after its delivery to Amtrak;

7.    The final report and recommendations of the compensation study as provided in section IV.D.1, to be provided within seven days after its delivery to Amtrak;

8.    A list of all employees whose compensation will be increased as a result of the compensation study, as provided in section IV.D.2;

9.    The revised performance appraisal system, as provided in section IV.F.2;

10.   Any recommendations to reduce any observed disparities in performance appraisal ratings as provided in section IV.F.3, to be

57

provided within seven days after the completion of the report containing such recommendations;

11. The authorization form for training requests, as provided in section IV.G.1;

12. Any recommendations to reduce any observed disparities in training, as provided in section IV.G.3 to be provided within seven days after the completion of the report containing such recommendations;

13. Procedures for the Appeal Board, as provided in section IV.H.1 and 2;

14. Any recommendations of the VP Business Diversity with respect to EEO and diversity issues that have been approved by the President of Amtrak as provided in section IV.I.1, within seven days after such approval;

15. Protocols for referral of employee relations complaints to the EEO Office and for the communication of information between the EEO Resolution Unit and the Law Department as provided in section IV.I.1;

16. The policy statement of rights of employees to be distributed annually to employees as provided in section IV.I.1;

17. The procedures for filing internal EEO complaints as provided in section IV.I.1;

58

18.   The form on which complainants may indicate their level of satisfaction with the EEO Office's performance and any revisions thereto, as provided in section IV.I.2; and

19.   Any audit conducted by the EEO Office of a department or organizational unit as provided in section IV. I.2, to be provided within seven days after the completion of the audit.

## C.    ACCESS TO RECORDS

Amtrak will provide Class Counsel access for sufficient time to inspect the following records on twenty days written notice to Amtrak's counsel; provided, however, that Amtrak may require Class Counsel to specify the particular positions or persons for which Class Counsel seeks information if the documents responsive to any request are sufficiently voluminous to make the provision of access unduly burdensome.

1.   Completed applications of Internal and External Applicants for positions, as provided in section IV.B.1;

2.   Completed interview assessment forms of candidates, as provided in section IV.B.2;

3.   The written criteria for deciding which qualified Internal Applicants to interview and the rationale for selecting them, as provided in section IV.B.2;

4.   Non-privileged documentation relating to Amtrak's final selection of positions to be eliminated in a RIF, as provided in section IV.C;

59

5.  Revised job specifications and descriptions, as provided in section IV.E.1;

6.  Postings, as provided in section IV.E.2;

7.  All written appeals of job descriptions and the records relating to the review and disposition of such appeals, as provided in section IV.E.3;

8.  Performance appraisals of employees, as provided in section IV.F.2;

9.  Annual printouts of training requests and training provided, as provided in section IV.G.1;

10.  The booklet describing training courses, and any revisions thereof, as provided in section IV.G.1;

11.  The written or on-line log of training courses, as provided in section IV.G.1;

12.  The proceedings and records of the Appeal Board, as provided in section IV.H.3;

13.  EEO Resolution Unit records for any complaint, under the conditions set forth in section IV.I.2;

14.  The evaluation forms filled out by complainants indicating their level of satisfaction with the processes and performance of the EEO Office, as provided in section IV.I.2; and

15.  The materials used in all training courses given to EEO Resolution Unit investigators or Management employees that have as a subject EEO issues, as provided in section IV.I.3.

60

### D.   REPORTS TO THE COURT

Class Counsel shall file a written report with the Court every six months concerning the implementation of the provisions of the Decree, and shall serve a copy of such report on counsel for Amtrak. If requested by the Court, Class Counsel and Amtrak's Counsel shall appear before the Court to provide any additional information requested by the Court.

### IX.   MONITORING

#### A.   Monitor Roles

Amtrak's internal monitor shall be the VP Business Diversity. The VP Business Diversity may delegate monitoring tasks to the Director, Diversity Monitoring (or an outside consultant as described in Section IV(I)(1) of the Decree) and the Senior Director, EEO Resolution.

#### B.   Periodic Meetings

Class Counsel and the VP Business Diversity will meet every 90 days during the period of this Decree to discuss and resolve any outstanding issues with respect to implementation of and compliance with this Decree. Any issues that may arise during the term of the Decree with respect to individual Class Members shall be handled according to the applicable procedures and processes included in the injunctive provisions of this Decree; however nothing in the foregoing shall prohibit Class Counsel and the VP Business Diversity from resolving such matters informally if they are willing and so able. One Class Representative who is an employee is entitled to attend each meeting, but may be recused for employee-specific discussions. Any information obtained by Class Counsel or the participating Class Representative during these

61

meetings shall be treated as confidential and shall not be used for any purpose except for enforcement of this Decree. Amtrak shall not be required to pay transportation or lodging expenses for the Class Representative, though it may elect to do so.

X.    **ENFORCEMENT**

A.    **Negotiation and Mediation**

Prior to instituting any proceedings to enforce the provisions of this Decree, with the exception of proceedings relating to Sections IV(A)(1) and IV(A)(3) above, Class Counsel shall provide written notice to the VP Business Diversity, with a copy to Amtrak's counsel, that specifically sets forth the ways in which Class Counsel believes that Amtrak is in violation of the Decree and the evidence in support thereof. If such notice is provided at least 10-30 days prior to a meeting scheduled pursuant to Section X(B) above, the issues that are set forth in the notice shall be placed on the agenda for discussion during that meeting. If notice is provided more than 30 days prior, then the Parties shall hold a meeting within 20 days. If such notice is provided within 10 days prior to a meeting scheduled pursuant to Section X(B) above, then at Amtrak's election, the issues that are set forth in the notice may be placed on the agenda for discussion at the regularly scheduled meeting or at a meeting to be held within 20 days of such notice.

The Parties will in good faith attempt to resolve all enforcement issues through discussion and negotiations. If the Parties are unable to resolve an issue raised in a written notice through discussion and negotiations, then Amtrak will provide a formal written response to Class Counsel within 15 days of the periodic meeting at which the issue will be discussed. The Parties will submit any unresolved enforcement issues to mediation within 30 days of the date that a

62

discussion is held on the issue.  Mediation will be discontinued if the issue is not resolved within 30 days of submission of the issue to mediation.

### B.    Procedures for Enforcement Proceedings

Enforcement proceedings, if any, shall be brought on written motion to the Court.  If such proceedings are brought, Amtrak shall have 20 working days to file its response, unless such period is shortened by Court order.

### XI.    CONFIDENTIALITY AND RETURN OF DOCUMENTS

Class counsel acknowledge that during the course of this litigation they have received, and may hereafter receive under this Decree in connection with the monitoring, confidential information regarding Amtrak and its personnel, including without limitation, personnel files, internal memoranda, personnel plans, programs, policies and procedures, computerized data and other information.  Amtrak's counsel acknowledges that they have received confidential information regarding the Named Plaintiffs.  The Parties, their retained experts, their consultants and their attorneys shall continue to be bound by the terms of the Stipulated Protective Order filed December 28, 1998, throughout the term of this Decree and thereafter.  Plaintiffs, Class Counsel, and their experts and consultants and others retained by them hereby agree not to disclose any confidential information that may be received from Amtrak during the term of the Decree.  Class Counsel shall be responsible for advising their experts, outside consultants, and any other individual acting for or on behalf of Class Counsel, of the confidentiality provisions of this Decree and shall require that each such individual sign a confidentiality agreement in a form similar to the form that was used in connection with the Mediation in this case.

63

Each Party shall, within sixty (60) days after the Injunctive Effective Date of this Decree, make available to the other Party all documents (and copies of documents) that were produced by the other Party in the course of the litigation, including all copies thereof that have been provided to or are in the possession of the Party's expert(s) or consultant(s). However, Class Counsel may retain in their possession their merged copy of Amtrak's HRIS/EIS computer disks for purposes of claims administration, Job Relief actions and allocation of the Settlement Fund. Class Counsel may also retain such documents as they reasonably deem appropriate for use in connection with the individual Plaintiffs' Job Relief actions. Plaintiffs shall provide an inventory of documents retained to Amtrak's counsel. The HRIS/EIS disks and documents that may be retained under this Section shall be made available for return to Amtrak no later than thirty (30) days after the conclusion of the Job Relief and claims-administration procedures set forth herein.

## XII.    PUBLICITY

In addition to the promises of confidentiality expressly set forth in Section XII, the Parties agree that they shall negotiate and issue Joint Press Releases consistent with the Press Release in connection with the Agreement in Principle, which shall be made available to the news media following the Court's preliminary and final approval of this Decree, subject to any necessary revision agreed on after final approval to reflect final approval dates, proceedings, and provisions. No counsel shall make any written or oral statements at any time that are inaccurate and/or inconsistent with the Joint Press Release (and any revision thereto on final approval) and with the joint press release that was made available to the news media in connection with the Parties' June 24, 1999 Agreement in Principle, nor shall Class Counsel advise or in any manner

64

promote a Plaintiff or Class Member to make an inconsistent statement.

## XIII.  SEVERABILITY

Except as set forth below, if any term or provision of this Decree, or the application thereof to any person or circumstances, is held to any extent to be invalid or unenforceable, the remainder of this Decree, or the application of such term or provision to persons or circumstances other than those as to which it is held to be invalid or unenforceable, shall not be affected thereby, and each term and provision of this Decree shall be valid and enforceable to the fullest extent permitted by law. Notwithstanding the above, if all of the injunctive provisions in section IV. the entire monetary Claims Process, or the entire Job Relief Process is held to be invalid or unenforceable, the entire Decree shall be null and void.

## XIII.  GOVERNING LAW/ENTIRE AGREEMENT

The Parties agree that the validity, construction and enforcement of this Decree shall be governed by federal law. To the extent that it is determined that the validity, construction or enforcement of this Decree or any release executed pursuant to its terms is governed by state law, the law of the District of Columbia shall apply.

This Decree, including the Exhibits hereto, contains the entire agreement and understanding of the Parties with respect to the settlement of this litigation. This Decree does not impose any obligations on the Parties beyond the terms and conditions stated herein. Accordingly, this Decree shall not prevent or preclude Amtrak from revising its employment practices and policies or taking other personnel actions during the term of the Decree that do not violate specific requirements of the Decree.

65

Except as specifically provided for in this Decree, this Decree may not be amended or modified except with the express written consent of the Parties and the approval of the Court.

All Parties to this Decree acknowledge that this Decree is final and binding in all respects.

*[Signatures appear on following page.]*

66

AGREED AND CONSENTED TO BY:

**FOR THE PLAINTIFFS AND MEMBERS
OF THE SETTLEMENT CLASS:**

Michael D. Lieder (Bar #444273)
Maia Caplan (Bar #422798)
Sprenger & Lang, PLLC
1614 Twentieth Street, N.W.
Washington, D.C. 20009
(202) 265-8010

Roderic V.O. Boggs (Bar #090688)
Avis E. Buchanan (Bar #365208)
Susan Huhta (Bar #453478)
Washington Lawyers' Committee for
  Civil Rights and Urban Affairs
11 Dupont Circle, N.W., Suite 400
Washington, D.C. 20036
(202) 319-1000

**FOR THE DEFENDANT:**

Thomas E. Reinert, Jr. (Bar #336867)
Grace E. Speights (Bar #392091)
Morgan, Lewis & Bockius LLP
1800 M Street, N.W.
Washington, D.C. 20036
(202) 467-7084

Carol Ann Buckley (Bar #407405)
Acting Deputy General Counsel
National Railroad Passenger Corporation
60 Massachusetts Avenue, N.E.
Washington, D.C. 20002
(202) 906-2066

Date:  August 24, 1999

SO ORDERED, this _____ day of _____, 1999:

_____
The Honorable Emmet G. Sullivan
United States District Court Judge

67

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WILLIAM H. HERRMANN
ASSOCIATE RECEIVED COUNSEL

NOV  2 1999

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

|  |  |
|---|---|
| LEON McLAURIN, et al., | ) |
| Plaintiffs, | ) |
| v. | ) Civil Action No. 98CV2019 (EGS) |
| NATIONAL RAILROAD PASSENGER CORPORATION ("AMTRAK"), | ) CLASS ACTION |
| Defendant. | ) |

## ORDER FINALLY APPROVING CONSENT DECREE

Having considered the Plaintiffs' Motion for Issuance of Order Finally Approving Consent Decree; all other documents submitted along with the Consent Decree and the motion; the record of this case; and the memoranda and arguments of counsel; and

Having been advised by Class Counsel and Amtrak that the proposed Consent Decree is intended to effect a full and final settlement of all claims that were or could have been asserted by Plaintiffs and other members of the proposed settlement Class defined in Section III of the proposed Consent Decree (the "Class") with respect to Amtrak's employment actions and practices that affected their selection for positions covered by the Class, the terms and conditions of their employment in such positions, and the termination of their employment in such positions;

The Court makes the following findings:

1.     This settlement was reached after more than six months of complex mediation, conducted by Linda Singer of ADR Associates at this Court's direction. The mediations were attended by multiple lawyers for Plaintiffs, including Class Counsel

from Sprenger & Lang, PLLC (lead counsel) and the Washington Lawyers' Committee for Civil Rights & Urban Affairs ("WLC"), as well as Amtrak's internal counsel and outside counsel from the firm of Morgan Lewis & Bockius LLP. Counsel also conferred from time to time by telephone to resolve the dispute. Several Plaintiffs also regularly attended the mediation sessions and shared with counsel their observations and views on settlement options.

2.    During the course of the mediation, the Parties reviewed and analyzed virtually all aspects of Amtrak's personnel practices including, but not limited to: job placement, including applications and interview processes as well as data retention and flow records; RIFs; compensation; position descriptions; performance appraisals; training; discipline; and EEO complaints and investigations. In addition, the Parties have jointly retained an expert labor economist to assist them in fashioning mechanisms to monitor the neutrality of procedures to be adopted pursuant to the Consent Decree prospectively.

3.    In addition to the mediation, the Parties undertook substantial discovery. To this end, Class Counsel analyzed, with the assistance of their expert statistician, extensive computer-readable employment data produced by Amtrak. Such data included information concerning advancement, compensation, performance appraisal, termination and disciplinary decisions and/or disparities. Extensive anecdotal information from Plaintiffs and Class Members was also assembled by Class Counsel.

4.    On July 1, 1999, the Parties informed the Court that, through the mediation process, the attorneys had reached an agreement in principle to settle the entire litigation and that Amtrak's Board had approved it.

5.      The proposed settlement was negotiated in good faith at arms length by competent and experienced counsel for the Parties and with the assistance of a skilled mediator, and appears to be fair, reasonable and adequate under Fed. R. Civ. P. 23, and consistent with Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), and the Civil Rights Act of 1866, 42 U.S.C. § 1981.

6.      All of the requirements set forth in Fed. Civ. P. 23(a) appear to be satisfied by the proposed Class as defined in the Consent Decree.

7.      Equitable relief appears to predominate under the terms of the proposed settlement, making appropriate approval of the proposed Class under Fed. R. Civ. P. 23(b)(2).

8.      Common issues concerning the various personnel practices that have been employed by Amtrak and their impact on African-American employees and applicants for employment appear to exceed in importance solely individual issues associated with the claims of Plaintiffs and class members, alternatively making appropriate approval of the proposed Class under Fed. R. Civ. P. 23(b)(3).

9.      The proposed settlement does not provide for any class-wide preferential treatment via racial quota. Nor does the relief entail displacement of any incumbent from a job.

10.     The proposed settlement does not violate any collective bargaining agreement as the Class encompasses only employees who are not subject to a collective bargaining agreement, or who are claiming discrimination in reference to an application for a Management position.

ACCORDINGLY, IT IS ORDERED:

1.    Following a Fairness Hearing on October 25, 1999 at which no objections to the proposed settlement were proffered, and following compliance with the requirements for published, mailed and internet notice Ordered by this Court on September 2, 1999, the Consent Decree which incorporates the terms of the settlement is finally approved;

2.    The Class is established pursuant to Fed. R. Civ. P. 23(b)(2), and / or alternatively 23(b)(3) and may be maintained for the purpose of the Consent Decree;

3.    Although the Class is established under Fed. R. Civ. P. 23(b)(2), in view of the provisions for monetary awards and job relief, it is appropriate to permit Class Members to opt out to the extent permitted under the Consent Decree. One member has preliminary indicated his intent to opt-out, however, Class Counsel shall have until November 10, 1999, to seek his withdrawal of the opt-out request; and

4.    Any member of the Class who had a right to opt out of the Class under the proposed Consent Decree and did not avail him/herself of that right as provided therein is barred from opting out.

Dated: _/_/_/_/_ , 1999

_____
The Honorable Emmet G. Sullivan
Judge, United States District Court
for the District of Columbia

- 4 -

cc: Thomas E. Reinert, Jr., Esq.
Grace E. Speights, Esq.
Morgan, Lewis & Bockius LLP
1800 M Street, N.W.
Washington, DC 20036

William Hermann, Esq.
Associate General Counsel
National Railroad Passenger Corporation
60 Massachusetts Avenue, N.E.
Washington, D.C. 20002

Roderic V.O. Boggs, Esq.
Avis E. Buchanan, Esq.
Susan Huhta, Esq.
Washington Lawyers' Committee For
 Civil Rights and Urban Affairs
11 Dupont Circle, N.W. Suite 400
Washington, D.C. 20036

Andrew A. Rainer, Esq.
Shapiro Haber & Urmy, LLP
75 State Street
Boston, MA 02109

Michael D. Lieder, Esq.
Maia Caplan, Esq.
Sprenger & Lang, PLLC
1614 20th Street, N.W.
Washington, D.C. 20009-1001

## CERTIFICATE OF SERVICE

I, the undersigned, on this 25th day of October, 1999, caused the accompanying

proposed *Order Finally Approving Consent Decree* to be served, via first-class mail,

postage prepaid, on the following counsel for defendant:

> Thomas E. Reinert, Jr., Esq.
> Morgan, Lewis & Bockius LLP
> 1800 M Street, N.W.
> Washington, DC 20036

> William Hermann, Esq.
> Associate General Counsel
> National Railroad Passenger Corporation
> 60 Massachusetts Avenue, N.E.
> Washington, DC 20002

Maia Caplan

MEMORANDUM

To:        Amtrak
From:      Maia Caplan; Clayton Athey
Date:      December 28, 1999
Re:        Alvia Lynn Lacy

Introduction

Ms. Lacy, a 43 year-old black female, seeks an entry-level Management position, or the position of Foreman I, from which she was demoted in 1988.

Facts

Ms. Lacy began working for Amtrak in August 1983 as a trackman. Principally, she worked in the Bear Delaware facility, where she was repeatedly subjected to discriminatory language and conduct including offensive cartoons and racial epithets, like "you people," "niggers," and "house niggers." (Ms. Lacy reported this hostile conduct to her General Manager Vince Nesci, but no remedial action was taken.)

Ms. Lacey unsuccessfully applied for several Management positions during the liability appeared. Sought-after job titles include Administrator Material Planning, Supervisor Customer Service, Service Manager NE Direct, Trainmaster, Administrative Assistant and Crew Management Representative.

Finally, after several complaints of race discrimination, in 1988 Ms. Lacy entered training for a Foreman I job at Amtrak's Bear, Delaware Maintenance Facility. However, on the 67th day of the 90 day training period, following additional prosecution of her prior claim by Ms. Lacy, Amtrak's John Moore discriminatorily expelled her from the training – effectively

demoting her from the Foreman I position. Following this, she became again a Car Repair Journeyman.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALVIA L. LACY | * | |
| Plaintiff | * | |
| v. | * | Civ. No. 99-3529 |
| NATIONAL RAILROAD PASSENGER CORPORATION | * | |
| | * | |
| Defendant | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

DISTRICT OF COLUMBIA:  ss.

AFFIDAVIT OF CHRISTINE TURNBLACER
IN SUPPORT OF
NATIONAL RAILROAD PASSENGER CORPORATION'S
MOTION TO DISMISS

Christine Turnblacer, being duly sworn, states and deposes as follows:

1.    I, Christine Turnblacer, am over 18 years of age. I make this affidavit in support of the National Railroad Passenger Corporation's ("Amtrak") Motion to Dismiss.

2.    I am a Legal Assistant for the Labor and Employment Group, Law Department at Amtrak. In that position, I am responsible for assisting the attorneys in the Law Department regarding applicants seeking job relief pursuant to the provisions of the court-approved Consent Decree issued in <u>Leon McLaurin et. al. v. National Railroad Passenger Corporation ("Amtrak")</u>, Civil Action No. 98CV2019 (EGS), United States District Court for the District of Columbia.

3.    Pursuant to notice received from Class Counsel dated January 3, 2000, attached

hereto as Exhibit 1, Alvia Lacy is seeking job relief for numerous positions

including the foreman training position at issue here.

Subscribed and
Sworn to before me this _3rd_ day of March, 2000

Christine Turnblacer

_Anita J. Martin_
Anita Martin
Notary Public
My Commission expires: _April 14, 2002_

2

# SPRENGER & LANG

A PROFESSIONAL LIMITED LIABILITY COMPANY
ATTORNEYS AT LAW

WRITER'S ADDRESS:

1614 TWENTIETH STREET, N.W.
WASHINGTON, D.C. 20009-1001
(202) 265-8010
FAX (202) 332-6652

Maia Caplan
District of Columbia Office

325 RIDGEWOOD AVENUE
MINNEAPOLIS, MINNESOTA 55403
(612) 871-8910
FAX (612) 871-9270

January 3, 2000

## VIA FAX & HAND DELIVERY

Thomas E. Reinert, Jr., Esq.
Grace E. Speights, Esq.
Morgan, Lewis & Bockius
1800 M Street, N.W.
Washington, DC 20036-5869

[JAN 1 2 2000

Re:    *McLaurin v. Amtrak*

WILLIAM H. HERRMANN
ASSOCIATE GENERAL COUNSEL

Dear Tom and Grace:

This confirms our agreement to extend the counseling period until January 1 (3), 2000. There is one change from the list last sent to you. After further consultation, Leslie Dunning opted *not* to participate in the Job Relief process and to pursue exclusively instead her monetary claim.

Pursuant to the Consent Decree, we would have 10 additional days to forward individual claim summaries. I'm not certain whether that was Tom's intent, or whether he intended for the negotiation period to commence immediately on January 3. Because of this ambiguity, we forward the summaries today. We should, however, clarify intent here.

To recapitulate, the Job Relief claimants are:

Douglas Bell
Charles Granger
Michael Shane Latiff
Alvia Lynn Lacey
Lamonte E. Turner
Kathelyne Whilhite and
Donald Williams

Sincerely,

Maia Caplan

CC:    Bill Hermann, Esq.
Enclosures

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of January 2007, a copy of the foregoing Response and document were mailed first class postage prepaid to  Virginia A. Zrake, ~~Northern Steel Business Center~~ 1518 Savannah Rosd, P.O. Box 247, Lewes, Delaware  19958, counsel for the Defendant.

Alvia Lacy pro se
Plaintiff

From:
ALVIA L. LACY
1306 JERVIS SQ.
BELCAMP, MARYLAND  21017





ReadyPost.

Utility Mailer



To:
UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE
LockBox 27
844 KING STREET U.S. COURTHOUSE
WILMINGTON, DELAWARE 19801