IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ALVIA LACY,                          :
                                     :
        Plaintiff,                   :
                                     :
    v.                               :  Civil Action No. 06-68-JJF
                                     :
NATIONAL RAILROAD PASSENGER          :
CORPORATION ("AMTRAK"),              :
                                     :
        Defendant.                   :

---

ALVIA Lacy, pro se Plaintiff.


Darrell R. VanDeusen, Esquire, and Clifton R. Gray, Esquire, of
KOLLMAN & SAUCIER, P.A., Maryland.
Virginia A. Zrake, Esquire, of LAW OFFICE OF VIRGINIA A. ZRAKE,
LLC, Delaware.

Attorneys for Defendant.

---

**MEMORANDUM OPINION**










July 23, 2007,
Wilmington, Delaware

**Farnan, District Judge.**

Pending before the Court is Defendant National Railroad Passenger Corporation's ("Amtrak") Motion For Summary Judgment (D.I. 17). For the reasons discussed, the Motion will be granted.

## I. BACKGROUND

This lawsuit arises from allegations of racial and sexual discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 200e et seq. ("Title VII"). Specifically, Plaintiff, Alvia Lacy, an African-American female, alleges that she was denied promotions, subjected to a hostile work environment, and retaliated against for her past participation in a class action suit against Amtrak.[1] Ms. Lacy further contends that she was deprived of job relief detailed in the class action lawsuit's consent decree.

An understanding of Ms. Lacy's employment history with Amtrak is helpful to provide a context for her current claims. Ms. Lacy has been employed by Amtrak since 1983. Initially, she worked in the Perryville, Maryland, facility as a "Trackman," maintaining and repairing railroad tracks. While working at the Perryville facility, Ms. Lacy earned a bachelors degree in

---

[1] McLaurn v. Amtrak, 1:98-cv-2019-EGS (D.D.C. 1998).

1

Business Management from the University of Maryland.[2]  In 1988, Ms. Lacy transferred to the Bear, Delaware, facility, taking the unionized position of "Car Repairman," a position that she holds today.  As a car repairman, Ms. Lacy maintains and repairs Amtrak's railroad cars.

In 1998, Ms. Lacy was selected for training as a Foreman II, which would have given her limited supervisory authority over other Car Repair employees.  However, Ms. Lacy was dismissed from this program after sixty-six days, and returned to her Car Repair position.  This incident led Ms. Lacy to sue Amtrak, alleging that her removal from the Foreman II program was discriminatory. Lacy v. NRPC, 2:99-cv-03529-JW (E.D. Pa. 1999).  Though her case was dismissed, Ms. Lacy had already joined a class action filed by Amtrak employees in the United States District Court for the District of Columbia alleging race discrimination in promotions. McLaurn v. National Railroad Passenger Corp., 1:98-cv-2019-EGS (D.D.C. 1998).  The McLaurn class action settled in 1999, with class members being given the option of a monetary settlement or possible "job relief" whereby the class member could be promoted to an available position for which she was qualified.  The

---

[2] The parties disagree about whether Ms. Lacy earned a "Business Management" or "Business Administration" degree.  No evidence has been submitted to conclusively resolve the issue. Accordingly, the Court will construe the degree in the light most favorable to the Plaintiff, and refer to it as a "Business Management" degree.

2

consent decree required the option to be exercised by December 31, 2003. Ms. Lacy contends that she sought monetary relief, then job relief, but ultimately neither was received.

Further, Ms. Lacy contends that she has consistently applied for management positions since being hired by Amtrak in 1983. Specifically, she contends that she applies for those positions for which she meets the mandatory requirements listed in the job description. Between November 2003 and October 2004, Ms. Lacy contends that she applied for thirty different positions. (D.I. 2). Ms. Lacy has not been hired for any of the management positions to which she has applied since 1983.

On October 20, 2004, Ms. Lacy completed and submitted a charge information questionnaire to the Equal Employment Opportunity Commission ("EEOC"), resulting in a charge being filed on March 4, 2005. This lawsuit relates to this charge. Upon being issued a "Right To Sue" letter from the EEOC relating to this charge, Ms. Lacy filed this lawsuit.

## II. LEGAL STANDARD

In pertinent part, Rule 56© of the Federal Rules of Civil Procedure provides that a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to

judgment as a matter of law. Fed. R. Civ. P. 56©. In determining whether there is a triable dispute of material fact, a court must review all of the evidence and construe all inferences in the light most favorable to the non-moving party. Valhal Corp. v. Sullivan Assocs., Inc., 44 F.3d 195, 200 (3d Cir. 1995). However, a court should not make credibility determinations or weigh the evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). To properly consider all of the evidence without making a credibility determination or weighing the evidence, a "court should give credence to the evidence favoring the [non-movant] as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" Id. at 151 (2000).

> To defeat a motion for summary judgment, the non-moving party must:
>
> > do more than simply show that there is some metaphysical doubt as to the material facts . . . . In the language of the Rule, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial."

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). However, the mere existence of some evidence in support of the non-movant will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-movant on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249

(1986). Thus, if the evidence is "merely colorable, or is not significantly probative," summary judgment may be granted. Id.

### III. DISCUSSION

Consistent with its initial burden on summary judgment, Amtrak has set forth the basis for its motion and contends that Ms. Lacy has not come forward with specific, timely, facts showing that there is a genuine issue for trial.

   A.   Whether Portions Of Ms. Lacy's Claim Are Time Barred

As a threshold matter, Amtrak contends that parts of Ms. Lacy's claims are time barred. In order to proceed under Title VII, a plaintiff who alleges employment discrimination must file a charge of discrimination with the EEOC within 300 days of the occurrence of the alleged unlawful act. 42 U.S.C. §§ 2000-e-5(e). Ms. Lacy filed her EEOC charge on March 4, 2005.[3] (D.I. 2). Thus, Ms. Lacy's Title VII claims based on events occurring more than 300 days earlier, i.e. before May 8, 2004, are time barred. Accordingly, the Court concludes that Ms. Lacy's claims with regard to non-promotion, harassment, and retaliation are limited to events occurring on or after May 8, 2004.

---

[3] In her response to Amtrak's Motion For Summary Judgment (D.I. 22), Ms. Lacy contends that she filed a charge with the EEOC on July 20, 2004. However, no evidence has been presented to the Court that such a charge was filed. Additionally, at her deposition, Ms. Lacy could not point to the existence of such a charge. The only charge presented to the Court is a charge dated March 4, 2005. Accordingly, this is the charge the Court considers in determining which events referenced in the Complaint are time barred.

5

B.  Whether Summary Judgment Is Appropriate As To Plaintiff's Failure-To-Promote Discrimination Claim

When a plaintiff does not present direct evidence of discriminatory animus, courts analyze that plaintiff's claims pursuant to a pretext theory of discrimination. In Title VII employment discrimination actions invoking the pretext theory of discrimination, courts apply the McDonnell Douglas burden shifting analysis. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Pursuant to McDonnell Douglas, a plaintiff has the initial burden to establish a prima facie case of discrimination. Id. at 802. To establish a prima facie case of discrimination, the Plaintiff must provide evidence that: (1) she was a member of a protected class; (2) she was qualified for the position(s) applied for; and, (3) another person outside of the protected class was treated more favorably. Scheidemantle v. Slippery Rock Univ. State Sys. of Educ., 470 F.3d 535, 539 (3d Cir. 2006)(citing McDonnell Douglas, 411 U.S. 792 at 802-03).

If the Plaintiff succeeds in establishing her prima facie case, the burden shifts to the defendant employer to proffer "legitimate non-discriminatory" reason for the non-promotion. See Woodson v. Scott Paper Co., 109 F.3d 913, 920 n. 2 (3d Cir. 1997). If the Defendant meets this burden, the burden again shifts to the Plaintiff to demonstrate, by a preponderance of the evidence, that the employer's rationale is pretextual. Id. at 804. To do this, the Plaintiff must "point to some evidence,

6

direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).

   1.   Scope of Timely Events

Ms. Lacy first contends that Amtrak has discriminated against her by not giving her job relief pursuant to the consent decree in McLaurn. Ms. Lacy contends that, after the case settled in 1999, she was contacted by the lawyers who represented the Plaintiffs, who told her she "was awarded 300 points on [her] claim form information package." (D.I. 2, Ex. B at 9). Initially, Ms. Lacy requested her points in a monetary reward, but subsequently agreed to receiving job relief instead. Id. Ms. Lacy received neither money nor job relief before the consent decree expired in December 2003. Id. She contends that, because she was the only claimant not to receive relief pursuant to the consent decree, Amtrak discriminated against her on the basis of sex and race. (D.I. 1, ex. A at 10). Because Ms. Lacy's exclusion from job relief was cemented in December 2003, and because no action has occurred since that time, the Court concludes this claim is time-barred.

Ms. Lacy also contends that Amtrak's failure to promote her

7

to positions for which she has applied demonstrates racial and sexual discrimination. Ms. Lacy has provided the Court with a list of thirty management positions to which she allegedly applied between November 2003 and October 2004. (D.I. 2, Ex. B, pg. 2). Based on her submissions and interrogatory responses, however, it is apparent to the Court that she is only asserting discrimination in regard to ten positions. Because hiring decisions were made for five of those decisions before May 8, 2004, any claims concerning those positions are time-barred. Thus, Ms. Lacy is limited to claiming Amtrak discriminated against her by failing to promote her to the remaining five positions: Engineer Road Maintenance Services (#50146328)(posted on September 3, 2004); Field Environmental Specialist (#50146672)(posted on September 8, 2004); Administrator Support Specialist (#50183697)(posted on October 7, 2004); Senior Analyst Operating Practices (#50183713)(posted on October 7, 2004) and Administrative Inventory-High Speed (#50183771)(posted on October 7, 2004).

      2.    <u>Whether Ms. Lacy Has Made Out A Prima Facie Case Of Failure-To-Promote Discrimination</u>

Considering the elements of a <u>prima facie</u> case of failure-to-promote discrimination, there is no dispute that Ms. Lacy is a member of a protected class under Title VII. With regard to the second element, whether Ms. Lacy was qualified for the positions for which she applied, Ms. Lacy contends that she only applied

8

for those jobs for which she met the mandatory requirements. She contends that Amtrak Human Resources told her to always meet the "must have" requirements on any given position "and to apply for positions to which Plaintiff may have an interest." (D.I. 22 at 7). Ms. Lacy further contends that she believed her Business Management degree qualified her for those positions requiring a business degree, and her tenure and union position at Amtrak trumped the other explicit job requirements. (D.I. 19 at A173-74 (Plaintiff's Deposition)). She offers no additional evidence of her qualifications in relation to any of the five positions.

Amtrak contends that Ms. Lacy was not qualified for any of the positions at issue. According to Amtrak, the posting for the Engineer Road Maintenance Services position (#50146328) required applicants to have a "Bachelor's Degree in Engineering or the equivalent combination of education, training, and/or experience. (Id. at A305). Ms. Lacy does not have a background in engineering or equivalent experience. The posting for the "Field Environmental Specialist position (#50146672) required applicants to have "some environmental compliance or related experience." (Id. at A317). Ms. Lacy's application reflected no such experience nor was Ms. Lacy able to point to any substantive experience during her deposition. (D.I. 18 at 10). The Administrator Support Specialist position (#50183697) required applicants to have "demonstrated experience and understanding of

9

mainframe and PC operating systems, communications and business applications." (D.I. 19 at A335). Again, Ms. Lacy's application reflected no such experience. (Id. at A347-48). The Senior Analyst Operating Practices position (#50183713) required that applicants "must be currently or formerly qualified in T&E, Block Operator, Yardmaster or Train Dispatcher." (Id. at A349). At Plaintiff's deposition she admitted that she was did not meet this requirement. (Id. at A248). Finally, the Administrative Inventory position (#50183771) required applicants to have "experience in materials management, production planning, lead times (internal and vendor), forecasting & distribution." (Id. at A367). Ms. Lacy's application reflected no such experience, and she has not presented any evidence suggesting she meets this requirement. (Id. at A369, 378-79).

The final element of a prima facie case is whether another person outside of the protected class was treated more favorably. In attempting to establish this element, Ms. Lacy has offered a list of twenty-one white males who have been hired for various positions that Ms. Lacy has also allegedly applied for. However, this list does not include any information about when these males were hired, nor about their education and qualifications, nor does it include any information that Ms. Lacy actually applied for the positions to which the men on the list were allegedly

10

hired.[4]  Moreover, Ms. Lacy does not respond to Amtrak's contentions that, for the five positions in contention, three white males, one African-American male, one white female, and one African-American female were hired. (See D.I. 18, pp. 9-12).

Considering all the evidence before the Court in the light most favorable to the Plaintiff, the Court concludes that Ms. Lacy has not established a prima facie case of employment discrimination.  Ms. Lacy has failed to present any evidence that she was qualified for any of the positions at issue.  Moreover, Ms. Lacy has failed to adduce any evidence to suggest that Amtrak treated others outside of Ms. Lacy's protected classes more favorably.

      3.    Whether Amtrak Has Articulated A Legitimate Nondiscriminatory Reason For The Adverse Employment Decisions

Assuming that Ms. Lacy could establish a prima facie case of failure-to-promote discrimination, Amtrak has offered a legitimate, non-discriminatory reason for refusing to promote her; specifically, Amtrak contends she was not as qualified as the other applicants. (D.I. 18).  Ms. Lacy has failed to present any evidence from which a reasonable jury could either disbelieve

---

[4] Ms. Lacy contends that this information is lacking because "Amtrak has not provided any information in relationship to their positions, qualifications, related experience, education, training, and application." (D.I. 22 at 3).  However, because Ms. Lacy did not make any discovery requests to Amtrak, she cannot now complain that Amtrak failed to provide her with this information. (D.I. 24 at 3).

this reason or could find intentional discrimination. Ms. Lacy has offered no evidence to suggest that she was more qualified than those persons hired for the positions, and she also has failed to establish that race or sex played any role in the decision-making process. Finally, Amtrak has provided the hiring forms for each position that explain the reasons for each hiring decision, and those forms demonstrate that one African-American male, one African American female, and one white female were hired for the positions at issue. (See D.I. 19, pp. 9-12). For this reason, the Court concludes that Ms. Lacy has not offered evidence sufficient to avoid summary judgment on her discrimination claim.

    C.   <u>Whether Summary Judgment Is Appropriate As To Plaintiff's Hostile Work Environment Claim</u>

To establish a <u>prima facie</u> case for a hostile work environment claim based upon racial or sexual discrimination, the Plaintiff must demonstrate five elements: (1) she suffered intentional discrimination because of her sex or race; (2) the discrimination was sufficiently severe or pervasive to constitute an objective change in the conditions of employment; (3) she was detrimentally affected by the discrimination; (4) the discrimination would have adversely affected a reasonable person of the same sex or race; and (5) the existence of <u>respondeat superior</u> liability. <u>Jenson v. Potter</u>, 435 F.3d 444, 449 n. 3 (3d Cir. 2006).

1. <u>Scope of Timely Events</u>

Ms. Lacy's response to Defendant's Motion For Summary Judgment expands upon the assertions of her Complaint by identifying three discrete incidents, the "F.O.A.D." incident, the Pipefitter incident and the Attendance incident, as well as "incidents which occurred during the period of September 25, 2003 through July 21, 2004." (D.I. 22 at 8). However, after a consideration of the record, the Court concludes that Ms. Lacy has failed to describe, let alone substantiate, any of the "general" incidents she alleges occurred through July 21, 2004. Additionally, the Attendance incident occurred on April 28, 2004, and was effectively resolved on May 4, 2004. Therefore, it is time-barred. Accordingly, Ms. Lacy's hostile work environment claim is limited to the "F.O.A.D.," and Pipefitter, incidents. <u>Allen v. AMTRAK</u>, 2005 U.S. Dist. LEXIS 19624 at *19 (aff'd <u>Allen v. AMTRAK</u>, 2007 U.S. App. LEXIS 2216 (3d Cir. 2007).

1. <u>The Incidents Comprising Ms. Lacy's Hostile Work Environment Claim</u>

With respect to the "F.O.A.D." incident, the parties agree that a white male co-worker, Mr. Koppel, became upset with Ms. Lacy after she came into possession of an item from Mr. Koppel's refrigerator. (D.I. 2, Ex. B at 10; D.I. 18 at 16). After Ms. Lacy offered Mr. Koppel a dollar to pay for the item, he allegedly attempted to burn her dollar bill, telling her, "Here's

how I feel about your dollar Alvia." Id. Mr. Koppel then asked Ms. Lacy if she knew what "F.O.A.D." meant. Id. When Ms. Lacy said she did not, Mr. Koppel told her that it meant "Fuck Off And Die." Id.

With respect to the Pipefitter incident, Ms Lacy alleges that in "June 2004," a white co-worker, Mr. White, told Ms. Lacy's supervisor, Mr. Gill, an African-American male, that he could not work with Ms. Lacy. Id. Ms. Lacy does not take issue with Mr. White's refusal to work with her; rather, she takes issue with Mr. Gill's handling of the situation. (D.I. 19 at A122-23). After Mr. White refused to work with Ms. Lacy, she allegedly asked Mr. Gill for another pipefitter to work with. (D.I. 2, Ex. B at 10; D.I. 18 at 17). Mr. Gill allegedly told Ms. Lacy that he would see what he could do; however, after an hour, Mr. Gill still had not assigned a pipefitter to work with Ms. Lacy. Id. Ms. Lacy went back to Mr. Gill to ask about getting a pipefitter to work with, and Mr. Gill allegedly responded: "Goddamn it. What do you want me to do? Why don't you just go home, and I'll do your fucking job." (D.I. 19 at A122-23). When asked at her deposition whether Mr. Gill's comments were made because of her sex or race, Ms. Lacy responded, "I can't define why Mr. Gill talked to me like that. All I know is it's inappropriate, and to me it's harassment, and it's a hostile work environment." Id.

On this record, the Court concludes that Ms. Lacy has not demonstrated that these alleged incidents were motivated by race or sex. See Allen, 2005 U.S. Dist. LEXIS 19624 at *22 (citing James v. Allentown Bus. Sch., 2003 U.S. Dist. LEXIS 12046 at *17 (E.D. Pa. June 2, 2003)(refusing to consider harassing behavior at work part of harassment claim when plaintiff presents no evidence other than own conclusory allegations, to suggest that facially-neutral incidents were motivated by racial animus)). Though stating in her response to Amtrak's Motion For Summary Judgment that there is "an abundance of evidence" to support her hostile environment claim, Ms. Lacy has not provided that evidence to the Court to aid its decision at this juncture. Further, Ms. Lacy contends that future evidence from her union representative, Mr. Carlton, "can and will address" her hostile work environment claim. (D.I. 22 at 8), but she does not provide the Court with any indication of how this will be done, or with what evidence.  Therefore, after considering the evidence before the Court, the Court concludes that, Ms. Lacy's attempt to establish a prima facie case of a hostile work environment fails because there is nothing to establish that the "F.O.A.D." and Pipefitter incidents, while offensive to Ms. Lacy, were motivated because of Ms. Lacy's race or sex.  For this reason, the Court concludes that Ms. Lacy has not offered evidence sufficient to avoid summary judgment on her hostile work environment claim.

   D.   Whether Summary Judgment Is Appropriate As To
        Plaintiff's Retaliation Claim

To establish a prima facie case of retaliation under Title VII, the Plaintiff must demonstrate that: (1) she partook in an activity protected by Title VII; (2) the employer took adverse action against the plaintiff either after or contemporaneous with the protected activity; and (3) a causal relationship exists between the protected activity and the adverse employment action. Kachamar v. SunGard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997). If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Williams v. Philadelphia Housing Authority Police Dept., 380 F.3d 751, 760 (3d Cir. 2004). Finally, should the defendant carry this burden, the plaintiff then has an opportunity to prove by a preponderance of the evidence that the allegedly legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. Id.

     The Court concludes that Ms. Lacy has established the first prong of a prima facie case, because she engaged in protected activity in 1999 when she sued Amtrak for removal from the Foreman II program, and also because she joined the McLaurn class action. (D.I. 2). With regard to the second element, Ms. Lacy's protected activity took place in 1999. Ms. Lacy's allegations of retaliation, which cover the same incidents as her hostile work

environment claim, took place in 2004. Thus, the Court concludes that Ms. Lacy has established the second element of the prima facie case. (See D.I. 18 at 19).

However, the Court concludes that Ms. Lacy's attempt to establish a prima facie case of retaliation fails because there is nothing in the record to suggest a causal relationship between her prior lawsuits against Amtrak and the "F.O.A.D." and Pipefitter incidents. Ms. Lacy has failed to present any evidence that would establish that these incidents had a retaliatory motivation rather than an interpersonal motivation. See Gomez v. Allegheny Health Services, Inc., 71 F.3d 1079, 1085-86 (3d Cir. 1995) (Title VII does not protect employees from "personality conflicts unrelated to invidious discrimination."). Moreover, Ms. Lacy has not suggested that these incidents were materially adverse to her employment situation. In fact, she still remains in the same facility and position. For these reasons, the Court concludes that Ms. Lacy has not offered evidence sufficient to avoid summary judgment on her retaliation claim.

**IV. Conclusion**

For the reasons discussed, the Court will grant Defendant's Motion For Summary Judgment (D.I. 17) with regard to all claims in the Complaint (D.I. 2).

An appropriate Order will be entered.